IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT BOSCH LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 08- 542-SLR ) |
| PYLON MANUFACTURING CORP., | ) ) ) |
| Defendant. | ) ) ) ) |

**PYLON MANUFACTURING CORPORATION'S MOTION TO DISMISS
ROBERT BOSCH, LLC'S FALSE ADVERTISING CLAIM**

Defendant, Pylon Manufacturing Corporation ("Pylon"), by and through its attorneys, respectfully moves the Court pursuant to Fed. R. Civ. P. 12(b)(6) for entry of an Order dismissing the false advertising claim brought by Plaintiff, Robert Bosch LLC ("Bosch") in its First Amended Complaint (the "Amended Complaint"). Pylon brings this motion because the allegations in Bosch's Amended Complaint fail to state a claim upon which relief can be granted under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**I.    INTRODUCTION**

Pylon manufacturers and sells windshield wiper blades under the Michelin brand name, including the Optimum, Radius, and Symphony products. (Amended Complaint ¶ 3.) The allegations in the Amended Complaint are based on Bosch's belief that these products embody the claims of certain issued U.S. patents. (Amended Complaint ¶¶ 1-9.) Bosch's Amended Complaint also includes a claim for "false advertising in violation of 15 U.S.C. § 1125(a)(1)(B)." (Amended Complaint ¶ 13.)

In this claim, Bosch challenges two statements allegedly made on Pylon's website, www.pylonhq.com: (1) that "Michelin's expertise . . . has inspired the development of a high performance, frameless all-weather wiper blade with many innovative features and benefits, including . . . Advanced Frameless Design . . . [and] Integrated High-Downforce Spoiler"; and (2) "The latest Michelin wiper blades on the market are all new and improved . . . adding functional features such as spoilers for improved wiper performance." (Amended Complaint ¶ 13.) Bosch contends that these two statements "are false and likely to mislead the trade and public into believing that the Michelin brand Optimum, Radius, and Symphony products, marketed as manufactured under license by Pylon, and the technology employed in them, are new and novel and were developed by Pylon, and not developed by Bosch." *Id.* The balance of the Amended Complaint simply parrots the elements of a Lanham Act claim for false advertising. (Amended Complaint ¶¶ 13-15.)

Pylon moves to dismiss Bosch's false advertising claim for three reasons: First, Pylon's website does not make the statements that form the basis of Bosch's claim. The first statement is from a press release, which is linked to Pylon's website, but which Bosch has edited to alter its meaning. The second statement is from a separate "FAQ" link on Pylon's website, which has also been edited by Bosch to alter its meaning.[1] Bosch's Amended Complaint presents these two altered statements together, out of context, to infer a factual conclusion that is not expressed or implied by Pylon.[2] Accordingly, Bosch's false advertising claim should be dismissed because

---

[1]  Attached as Exhibit 1 is the text of the press release and the FAQ link which Bosch has misquoted at Paragraph 13 in the Amended Complaint.

[2]  After mischaracterizing and juxtaposing two statements from a Pylon press release and the FAQ link, as if they appeared together on Pylon's website, Bosch argues that they are "likely to mislead the trade and public into believing that the Michelin brand Optimum, Radius, and Symphony products . . . , and the technology employed by them, are *new and novel* and were developed *by Pylon*, and not developed by Bosch." (Amended Complaint ¶ 13 (emphasis added).)

there are no ***well-pled facts*** from which the Court can conclude that these statements were made by Pylon or conveyed by its website (www.pylonhq.com).

Second, even treating the statements exactly as they appear in the Amended Complaint, Bosch is challenging ***puffery***, not verifiably false statements of fact. The alleged statements, even if made, fall within the realm of exaggerations or overstatements expressed in broad, vague and commendatory language. (*See* Amended Complaint ¶ 13 ("new and improved"; "new and novel"; "innovative features and benefits"; "expertise . . . inspired").) Therefore, an essential element of Bosch's false advertising claim—the need for a statement of fact—is missing.

Third, the Amended Complaint does not include any ***well-pled facts*** to support Bosch's conclusion that any statements of fact actually made by Pylon are false, or would likely mislead the public and be material to a purchasing decision. In this regard, the Amended Complaint declares that Pylon's website is misleading and actionable because it does not attribute "the products" or some unspecified "technology" employed in Michelin's wiper blades to Bosch. (Amended Complaint ¶ 13.) However, the Amended Complaint (1) never identifies the "technology" to which Pylon's statements are allegedly referring; (2) does not provide any facts to support the notion that the public would be misled in the manner suggested; (3) does not affirmatively state that Bosch developed the products or the technology employed in them; and (4) does not affirmatively state that Pylon did not develop the products and technology. (Amended Complaint ¶ 13.)

Bosch's claims also fail to recognize that the Lanham Act imposes no obligations to affirmatively disclose the source of *any* technology used in Michelin's wiper blades. Thus, not only is the ultimate conclusion reached in the Amended Complaint regarding falsity and

3

deception pure conjecture, even the predicates for the conclusion are ill-defined, unstated and unsupported.

For each of these reasons, Bosch's false advertising claim should be dismissed for failing to state a claim upon which relief can be granted under 15 U.S.C. § 1125(a)(1)(B).

## II. BOSCH'S FALSE ADVERTISING CLAIM IS GOVERNED BY A HIGHTENED PLEADING STANDARD IN LIGHT OF THE ACTUAL STATEMENTS MADE

A court may dismiss a complaint or cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for false advertising under the Lanham Act is governed by the basic pleading requirements of Federal Rule of Civil Procedure 8, the tenets of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), and the heightened pleading standards required to state a false advertising claim under 15 U.S.C. § 1125(a)(1)(B).

### A. Boilerplate Allegations And Unsupported Conclusions Fail To State A False Advertising Claim Under Fed. R. Civ. P. 8

Under Federal Rule of Civil Procedure 8, and the judicial gloss applied by the federal courts, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 127 S.Ct. at 1964-65 (citation omitted). As such, district courts need not credit "either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss." *De Benedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 216 (3d Cir. 2007) (quotation omitted); *accord Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) ("standard of review for motion to dismiss does not require courts to accept as true unsupported conclusions and unwarranted inferences or legal conclusion[s] couched as factual allegation[s].") (citation and internal quotation marks omitted).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Twombly*, 127 S.Ct. at 1964 (citation omitted). "Factual allegations must be enough to raise a right to relief *above the speculative level*, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted; emphasis added).

### B. Bosch Must Plead Specific Factual Details Regarding The Alleged False Statements To State A False Advertising Claim

In addition to alleging a factual and non-speculative basis for relief, to state a false advertising claim under 15 U.S.C. § 1125(a)(1)(B), either the additional requirements of Federal Rule of Civil Procedure 9 must be met, or some intermediary standard should be applied.

Certain courts have imposed the pleading specificity requirements of Rule 9(b) on Lanham Act false advertising claims. *See, e.g., Conditional Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) ("Claims that allege ... false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b)."), *but see John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997 ("a claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be subject of any heightened pleading requirement"). However, the Third Circuit has not decided the issue, "nor does it appear that any other federal appellate court has decided the applicability of Rule 9(b) to a Lanham Act false advertising claim." *Wellness Publishing v. Barefoot*, C.A. No. 02-3773 (JAP), 2008 WL 108889, at *14 (D.N.J. Jan. 9, 2008); *see also Nutrition & Fitness, Inc.*, 202 F. Supp. 2d 431, 434 (M.D.N.C. 2002) (noting that some district courts have applied the heightened pleading standard but no appellate court has opined on the issue).

Certain courts in this circuit have decided that, based on the nature of a claim under 15 U.S.C. § 1125(a)(1)(B), a heightened pleading requirement is appropriate. *Max Daetwyler Corp.*

*v. Input Graphics, Inc.*, 1549 F. Supp. 1549, 1556 (E.D. Pa. 1985). Under such a requirement, the complaint must not only provide a factual and non-speculative basis for the false advertising claim, but also include "sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow [the defendant] to make a proper defense." *Max Daetwyler Corp.*, 1549 F. Supp. at 1556. The court explained that:

> [a]lthough Federal Rule of Civil Procedure 8 requires a party to plead only a "short and plain statement of the claim," Rule 9 requires that fraud and mistake be pleaded with greater specificity. The Lanham Act claim in the present case is not a pure "fraud" claim and, thus, need not satisfy all of the pleading requirements which have been imposed under Rule 9. But the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim.

*Id.*

Still other courts in this circuit have "applied an 'intermediate' pleading requirement to false advertising claims asserted under section 43(a)(1)(B) that imposes a pleading standard between those standards required under Federal Rules of Civil Procedure 8 and 9." *Trans USA Products, Inc. v. Howard Berger Company, Inc., a/k/a HBC*, C.A. No. 07-5924 (JAP), 2008 WL 852324, at *5 (D.N.J., March 28, 2008) (citing *Wellness Publishing*, 2008 WL 108889, at *15 ("The Court finds that, at a minimum, this intermediate standard is the appropriate standard to apply in this case, and further finds that the SAC falls short of meeting this requirement.") and *EVCO Technology & Development Co. v. Buck Knives, Inc.*, No. 05-cv-6198, 2006 WL 2773421 (E.D. Pa. Sept. 22, 2006) (to ensure consistency and "fairness for parties forced to respond to quasi-fraud Lanham Act false advertising claims, this Court deems it appropriate to adopt the standard articulated by Judge Pollak in *Max Daetwyler Corp.*"). A "heightened pleading requirement is necessary in Lanham Act claims because, '[i]n litigation in which one party is charged with making false statements, it is important that the party charged be provided with

sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense.'" *Trans USA Products, Inc.*, 2008 WL 852324, at *5.

Thus, for example, in *Trans USA Products*, the court dismissed a false advertising claim premised on the allegation that Defendants sold Wiring Devices bearing counterfeit UL Marks because the complaint failed to provide adequate notice of the alleged false statements. Plaintiff specifically alleged that, "[a]t various times relevant hereto, [Defendants] knowingly and/or negligently acquired and re-sold products that bear counterfeit UL Marks and/or products bearing UL Marks which . . . they knew or should have known [to] have been 'de-listed.'" 2008 WL 852324, at *1. Plaintiff further claimed that Defendants, "by selling products bearing counterfeit or 'de-listed' UL Marks, 'communicated a false endorsement of its products and falsely cloaked them with safety characteristics [that] they do not and have not possessed in . . . their advertising of these products.'" *Id.*

Nevertheless, the court dismissed the false advertising claim because the complaint failed "to adequately notify Defendants of 'the nature of the alleged falsehoods.'" For example, "Plaintiff [did] not identify the Wiring Devices Defendants allegedly sold that bore counterfeit marks, the time period in which these products were sold, how the marks were counterfeit or 'de-listed,' or whether Defendants sold the products in interstate commerce." *Id* at *6 (citation omitted). The court therefore held that plaintiff had "not sufficiently pled any claim arising under section 43(a) of the Lanham Act" because "[p]laintiff's Complaint [did] not make any specific factual allegations to support a Lanham Act claim, but rather merely proffer[ed] 'unsupported conclusions and unwarranted inferences' insufficient to meet the standard set forth in *Twombly, supra*." *Id.* (citing *Baraka*, 481 F.3d at 195).

### C. The Actual Text And Context Of The Statements That Are Quoted By Bosch And Form The Subject Of The False Advertising Claim May Be Considered As Part Of The First Amended Complaint

Generally, in deciding a Rule 12(b)(6) motion to dismiss, a district court will limit its consideration to matters within the four corners of the pleading. *See* Fed. R. Civ. P. 12(c). However, on a motion to dismiss, the district court may consider documents quoted in and integral to the complaint as part of the pleading. *See* Fed. R. of Evid. 201; *Palmer v. City of Harrisburg, PA*, 276 Fed. Appx. 105, 108 (3d Cir. 2008) ("The court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, such as when a document is integral to or explicitly relied upon in the complaint"); *Pension Benefit Guaruanty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (A court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *see also Wyster-Pratte Management. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (on motion to dismiss court may consider "materials that are integral to the complaint . . . , or are otherwise appropriate for the taking of judicial notice.").

The Court should review the statements that Bosch attributes to Pylon that allegedly form the basis of the Lanham Act claim. Considering the actual text of the challenged statements, and whether the statements were made in different advertisements or documents, is particularly appropriate in cases where, as here, the complaint distorts the challenged statements and tries to suggest that they where made together, in close proximity, when they were not. *See, e.g., Cytyc Corp. v. Neuromedical Systems, Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) ("Notwithstanding NSI's abbreviated and misleading recounting of Cytyc's statements, the sufficiency of the Counterclaim is to be judged on the basis of the challenged statements read in their entirety and in context.").

## III. BOSCH'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)

### A. The Law Governing False Advertising Claims Under The Lanham Act

Under 15 U.S.C. § 1125(a)(1)(B), a claim may be brought to challenge a "commercial advertising or promotion" if the commercial statement or message is false, or is literally true but is ambiguous and conveys a false message, and has the tendency to deceive consumers into buying a product. *Norvartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002). Such a claim has five elements; the plaintiff must properly plead and prove that: "(1) the defendant made false or misleading statements about the plaintiff's or [defendant's] own product; (2) there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3d Cir. 2001) (internal editing marks omitted).

As to the first element, district courts must make the threshold determination whether the plaintiff is challenging an actionable statement of fact, or puffery. *American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) ("Puffery and statements of fact are mutually exclusive."). "Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statement, not that the statement is true." *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del. 2008).

There are two general categories of puffery: (1) "an exaggeration or overstatement expressed in broad, vague, and commendatory language"; and (2) "general claims of superiority." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993); *Pizza Hut, Inc. v.*

*Papa John's International, Inc.*, 227 F.3d 489, 496-97 (5th Cir. 2000). The test for puffery is straightforward: "If a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, *i.e.,* one capable of verification, the statement is one of fact. Conversely, if the statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained, the statement constitutes puffery." *American Italian Pasta Co.*, 371 F.3d at 391. "Defining puffery broadly provides advertisers and manufacturers considerable leeway to craft their statements, allowing the free market to hold advertisers and manufacturers accountable for their statements, ensuring vigorous competition and protecting legitimate commercial speech." *Id.*

Here, Bosch has not properly alleged the elements of a false advertising claim because each alleged misstatement constitutes puffery, was not made by Pylon, and is not supported by any well-pled facts that would state a claim under 15 U.S.C. § 1125(a)(1)(B).

### B. The Alleged Statement That The Latest Michelin Wiper Blades Are "New And Improved" Is Puffery And Not Actionable

The alleged statement that "[t]he latest Michelin wiper blades on the market are all *new and improved . . . adding functional features such as spoilers for improved wiper performance*" is not actionable. (Amended Complaint ¶ 13 (emphasis added).) Indeed, statements about product features being "new and improved" are classic puffery. *See Laitram Machinery, Inc. v. Carnitech A/S*, 884 F. Supp. 1074, 1083 (E.D. La. 1995) ("statements by Laitram that its machines have *new and improved elements [and] features* that make its machines superior" is "certainly . . . puffery") (emphasis added); *Outdoor Technologies, Inc. v. Vinyl Visions*, LLC, 83 U.S.P.Q.2d 1418, 2006 WL 2849782, at *4 (S.D. Ohio 2006) (phrases such as "new and improved," or "redesigned and improved," are puffery); *Cytyc Corp. v. Neuromedical Systems, Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) (statement describing "ThinPrep as 'the new

10

"Gold Standard" for cytology laboratories'" is "nonactionable opinion or puffing."); *Tobin Wolf & Schaper Manufacturing. Co. v. Louis Marx & Co.*, 203 U.S.P.Q. 856, 859 (S.D.N.Y. 1978) (advertising product as "new and novel" is mere puffing).

Moreover, through the use of an ellipsis, Bosch distorts how Pylon actually promotes the Michelin wiper blades on its website. Pylon does ***not*** advertise that "[t]he latest Michelin wiper blades on the market are all *new and improved . . . adding functional features such as spoilers for improved wiper performance.*" Pylon simply puffs that "[t]he latest Michelin wiper blades on the market are all new and improved."[3] Later, Pylon states that some of the features include "functional features such as spoilers for improved wiper performance."[4]

Rather than quote what the FAQ link in Pylon's website actually represents, Bosch chose to delete information, collapse two separate sentences into one, and provide a misleading recounting of the cited promotional material. Significantly, Bosch *never alleges* that the latest Michelin wiper blades do not include functional features such as spoilers for improved wiper performance. Nor does Bosch allege that prior Michelin wiper blades had this technology, or that the latest Michelin wiper blades are not "new" or "improved" as a result of differing designs. Distorted statements, omitted text and misleading conclusions fail to meet the pleading requirements of a false advertising claim under the Lanham Act. *See, e.g., Cytyc Corp.*, 12 F. Supp. 2d at 300 (noting at outset of court's analysis that plaintiff's "recounting of purportedly false, misleading, or deceptive assertions . . . distorts many of [defendant's] statements through omitting crucial text, taking statements out of context or otherwise misleadingly excerpting them.").

---

[3] *See* Exhibit 1.
[4] *See Id.*

C.  **The Alleged Statement That "Michelin's Expertise . . . Has Inspired The Development Of" A Wiper Blade With "Innovative Features And Benefits" Is Puffery And Not Actionable**

The alleged statement that *"Michelin's expertise . . . has inspired the development of a high performance, frameless all-weather wiper blade with many innovative features and benefits"* is puffery and not actionable. (Amended Complaint ¶ 13 (emphasis added).) Whether Michelin's expertise "inspired" the development of a product, or whether a product feature or benefit is "innovative," is not a specific or measurable claim, and does not provide "a benchmark by which the veracity of the statement [could] be ascertained . . ." *American Italian Pasta Co.*, 371 F.3d at 391. Rather, a claim that a product is "inspired by" or includes "innovative" features or benefits, like a claim that a product is "new and improved," falls within the realm of protected commercial speech for general and vague exaggerations, overstatements and commendatory language. *See id.; Castrol Inc.*, 987 F.2d at 944; *Pizza Hut, Inc.*, 227 F.3d at 496-97. Whether a product is "new," "improved," "innovative," or "inspired by" is not the type of inquiry into commercial speech authorized by the Lanham Act.[5] *See, e.g., Laitram Machinery, Inc.*, 884 F. Supp. at 1083; *Cytyc Corp.*, 12 F. Supp. 2d at 300; *Outdoor Technologies, Inc.*, 2006 WL 2849782, at *4.

Furthermore, the additional text that appears in the press release—but was deleted by Bosch—undermines the false advertising claim. The press release plainly states that Michelin's expertise is *"**in creating a rubber compound** that allows your tires to grip the road in all kinds of weather . . ."*[6] and lists Proprietary M-Guard Advanced Rubber Technology™ as one of its

---

[5] Bosch's rephrasing of the FAQ link's use of the phrase "new and improved," and Pylon's press release's use of the phrase "innovative features and benefits," to mean that Michelin wiper blades have "new and novel" technology does not support a claim either. *See Tobin Wolf & Schaper Manfuacturing Co.*, 203 U.S.P.Q. at 859 (advertising product as "new and novel" is puffery).

[6] *See* Exhibit 1.

12

product features (emphasis added).[7] Bosch's Amended Complaint does not challenge Michelin's expertise in creating rubber compounds or dispute the use of any particular type of rubber in its wiper blades.

The press release also cites several other features and benefits, including Symmetrical/Reversible Blade, Advanced Frameless Design, EZ-LOK® Connector System, which fits over 95% of passenger cars and light trucks in North America, Integrated High-Downforce Spoiler, Easy-Open/Reclosable Clear Package, and a Satisfaction Guarantee.[8] Bosch does not allege that Michelin wiper blades do not have these features or benefits, or allege that prior Michelin wiper blades had all of these product features and benefits. Once again, Bosch's selective quotation of statements, coupled with its failure to challenge the veracity of the actual statements being made, reveals Bosch's false advertising claim to be unsustainable.

### D. Bosch's Conclusion That Pylon's Website Is False And Misleading Because It Fails To Attribute Technology To Bosch Does Not State A False Advertising Claim Under The Lanham Act

Bosch's false advertising claim stems from Bosch's erroneous belief that it is somehow globally responsible for Michelin's wiper blades and the technology employed in them. Consequently, Bosch's false advertising claims are actually veiled patent claims based on the premise that Pylon's statements are false and likely to mislead the public into believing that the "products" and the "technology employed in them" were "developed by Pylon" and "not developed by Bosch." (Amended Complaint ¶ 13 (emphasis added)). This conclusion fails to state a claim for several reasons.

As an initial matter, the Amended Complaint does not affirmatively state that ***Bosch*** actually developed the Michelin products or the technology employed in them. Similarly, the

---

[7] *See Id.*

[8] *See Id.*

Amended Complaint does not affirmatively state that Pylon did not develop the Michelin products or the technology employed in them. Absent these affirmative statements, Pylon's statements cannot be labeled as "false." Indeed, based on the claim as it stands, there is nothing to suggest that the public would be incorrect in concluding that Pylon developed the products and technology employed in the Michelin wiper blades.

With respect to Bosch's reference to "the technology," Bosch fails to identify it *at all*, much less with a sufficient degree of specificity. Absent this most basic information, the Amended Complaint is not well-pled, cannot rise above the speculative level, and does not place Pylon on proper notice because it is impossible to ascertain (i) what technology Pylon is purporting to have developed (from Bosch's perspective); (ii) what the public would perceive the developed technology to be; (iii) whether the public would perceive Pylon to be the developer of the referenced technology; or (iv) whether Bosch could even claim to be the actual developer.

Even more glaringly, the Amended Complaint contains **no well-pled facts** to support the bald conclusion that Pylon's advertising would mislead the public in the manner suggested. In particular, Bosch provides no factual support for its contention that the public would be deceived into attributing the (unspecified) technology in the Michelin wiper blades to Pylon, not Bosch. To the contrary, on this point, the Amended Complaint is hopelessly vague, contains telling omissions and, like the Complaint in *Trans USA Products, Inc.*, relies on "unsupported conclusions and unwarranted inferences" that fail to meet the applicable pleading standards. *Trans USA Products, Inc.*, 2008 WL 852324, at *6 (citing *Baraka*, 481 F.3d at 195).

Even assuming, *arguendo*, that some (unspecified) technology employed in Michelin's wiper blades is attributable to Bosch,[9] ***Pylon has no duty to disclose the origin of the technology embodied in its products***. *Agency Development, Inc. v. Med. America Insurance Co. of New York,* 310 F. Supp. 2d 538, 547 (W.D.N.Y. 2004) ("Plaintiff's proposed [false advertising] claim must fail because it cannot base a Lanham Act claim on the Defendant's failure to disclose a fact."), *aff'd on other grounds,* 142 F. App'x 545, 546 (2d Cir. 2005) (*per curiam*); *Avon Products, Inc. v. S.C. Johnson & Son, Inc.,* 984 F. Supp. 768, 798 (S.D.N.Y. 1997) ("Avon cannot be held liable under the Lanham Act for failing to state publicly that [Skin-So-Soft] is not an effective insect repellent."); *Internatiaonl Paint Co. v. Grow Group, Inc.,* 648 F. Supp. 729, 730 (S.D.N.Y. 1986) ("[T]he Lanham Act ... impos[es] no affirmative duty of disclosure.").[10]

What Bosch fails to appreciate is that Section 1125(a)(1)(B) of the Lanham Act concerns the "nature," "characteristics," and "qualities" of the goods at issue—***not the origin of an idea***. *Baden Sports, Inc. v. Molten USA, Inc.,* 556 F.3d 1300, 1308 (Fed. Cir. 2009). The *Baden* case is instructive. There, the district court found that Molten's advertising that its "Dual Cushion Technology" was "innovative" or "new" related to the "nature, characteristics, [or] qualities" of the product itself. *Id.* at 1306-1307. The Federal Circuit disagreed and reversed the district court's denial of judgment as a matter of law. *Id.* at 1308. Applying *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S.Ct. 2041 (2003), the Federal Circuit held that because Baden's false advertising claim was entirely based on its claims that Baden, not Molten,

---

[9] Pylon is not aware of any such technology and there are insufficient facts in the Amended Complaint to glean whether Pylon would even be precluded from practicing it.

[10] Nearly every commercial product includes features developed by another entity, many of which have been known in the art for years, decades or longer. Common sense dictates that Pylon is not required to identify the original source of "the technology" in Michelin's wiper blades because this would touch on materials, processes, or other untold developments encountered during the evolution of the product.

had "developed the technology," such claims did not "go to the 'nature, characteristics, [or] qualities' of the goods, and are therefore not actionable under section 43(a)(1)(B)." *Id.* (citing *Dastar* 539 U.S. at 37 and *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008)).

Another strikingly similar situation was presented in *Tobin Wolf & Schaper Manufacturing. Co. v. Louis Marx & Co.*, 203 U.S.P.Q. 856 (S.D.N.Y. 1978). There, the district court rejected the argument that a "statement in [defendant's] catalogue that its toy is 'new and novel' . . . implied [a] representation that [the defendant] did not steal the toy design but rather invented it itself. . . ." 203 U.S.P.Q. at 859. Putting aside the issue of puffery (discussed, *supra*), the defendant was under no duty to disclose the source of its toy design and the failure to do so did not create any representation that was not expressly stated. Thus, the plaintiffs in *Tobin Wolf* could not "bootstrap their state law claims of trade secret misappropriation into a federal cause of action." *Id.* By analogy, Bosch cannot "bootstrap" its patent infringement claims into a false advertising claim under the Lanham Act.

IV. **CONCLUSION**

For all of the foregoing reasons, Bosch's Lanham Act claim for false advertising should be dismissed. Accordingly, Pylon respectfully requests an Order dismissing this claim and striking paragraphs 13, 14 and 15 of the Amended Complaint relating thereto.

OF COUNSEL:

FELDMAN GALE, P.A.
Gregory L. Hillyer
Javier Sobrado
1420 Montgomery Lane
Suite 400
Bethesda, MD 20814
Tel: (800) 489-9814
ghillyer@feldmangale.com
jsobrado@feldmangale.com

James A. Gale
One Biscayne Tower, 30th Floor
2 S. Biscayne Blvd.
Miami, FL 33139
Tel: (305) 358-5001
jgale@feldmangale.com

BAYARD, P.A.

_/s/ Ashley B. Stitzer_
Ashley B. Stitzer (as3891)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000
astitzer@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys for*
*Pylon Manufacturing Corporation.*