REDACTED
DOCUMENT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT BOSCH LLC,                )
                                 )
          Plaintiff,             )
                                 )          C.A. No. 08-542-SLR
     v.                          )
                                 )          **REDACTED VERSION**
PYLON MANUFACTURING CORP.,       )
                                 )
          Defendant.             )


**PYLON MANUFACTURING CORPORATION'S OPPOSITION TO
ROBERT BOSCH LLC'S MOTION FOR SUMMARY JUDGMENT OF
NO INEQUITABLE CONDUCT AND NO INVALIDITY FOR DERIVATION
WITH RESPECT TO U.S. PATENTS 6,292,974, 6,944,905 AND 9,675,434**

Dated: December 14, 2009
Redacted Version: December 22, 2009

OF COUNSEL:

Gregory L. Hillyer
Javier Sobrado
FELDMAN GALE, P.A.
4720 Montgomery Lane
Suite 400
Bethesda, MD 20814
Tel: (800) 489-9814
Fax: (301) 560-8677
ghillyer@feldmangale.com
jsobrado@feldmangale.com

James A. Gale
FELDMAN GALE, P.A.
One Biscayne Tower, 30th Floor
2 S. Biscayne Blvd.
Miami, FL 33139
Tel: (305) 358-5001
Fax: (305) 358-3309
jgale@feldmangale.com

BAYARD, P.A.

Ashley B. Stitzer (as3891)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000
astitzer@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys for Defendants*,
*Pylon Manufacturing Corporation.*

REDACTED
DOCUMENT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. iv

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL BACKGROUND ...................................................................................4

III.    APPLICABLE LAW ................................................................................................13

      A.     Summary Judgment Is Only Proper If The Record, When Viewed In The Light Most Favorable To Pylon, Demonstrates No Dispute Of Material Facts ....................................................................................................13

      B.     Pleading Affirmative Defenses .........................................................14

      C.     A Claim of Improper Inventorship May Be Corroborated By Contemporaneous Documents, the Testimony of Another, and Other Circumstantial Evidence ....................................................................14

      D.     The Law of Inequitable Conduct .......................................................16

IV.    ARGUMENT ...........................................................................................................18

REDACTED
DOCUMENT

A.      Pylon's Properly Pled The Defenses Of Derivation And Inequitable
        Conduct In Its Second Amended Answer, Affirmative Defenses and
        Counterclaims ...........................................................................................18

        1.      Pylon Provided Bosch with a Detailed Factual Basis for its Improper
                Inventorship and Derivation Defense ...................................................... 19

        2.      Pylon Exercised Diligence in Investigating and Asserting its Improper
                Inventorship and Derivation Defense and Timely Asserted Same ........... 21

B.

                2.

REDACTED
DOCUMENT

V.    CONCLUSION..................................................................................................40

REDACTED
DOCUMENT

## TABLE OF AUTHORITIES

Page(s)

CASES

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970)...........................................................................................................14

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)...........................................................................................................14

*Baxter Int'l, Inc. v. McGaw Inc.,*
    149 F.3d 1321 (Fed. Cir. 1998).........................................................................................17

*Burroughs Wellcome Co. v. Barr Labs., Inc.,*
    40 F.3d 1223 (Fed. Cir. 1994)...........................................................................................24

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
    120 F.3d 1253 (Fed. Cir. 1997).........................................................................................18

*Daiichi Pharm. Co. v. Apotex, Inc.,*
    Case No. 2:03-cv-00937-SDW-MCA, D.I. 130 ................................................................20

*Digital Control Inc. v. Charles Machine Works,*
    437 F.3d 1309 (Fed.Cir.2006)...........................................................................................17

*Elk Corp. of Dallas v. GAF Bldg. Materials Corp.,*
    168 F.3d 28 (Fed. Cir. 1999).............................................................................................16

*Ethicon, Inc. v. U.S. Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998)...................................................................................14, 15

*Fox Indus., Inc. v. Structural Pres. Sys., Inc.,*
    922 F.2d 801 (Fed. Cir. 1990)...........................................................................................16

*Hebert v. Lisle Corp.,*
    99 F.3d 1109 (Fed. Cir. 1996)...........................................................................................17

*Horowitz v. Fed. Kemper Life Assurance Co.,*
    57 F.3d 300 (3d Cir. 1995)................................................................................................13

*IGT v. Bally Gaming Int'l Inc.*
    610 F. Supp. 2d 288 (D. Del. 2009)..................................................................................13

*Impax Labs., Inc. v. Aventis Pharm. Inc.,*
    468 F.3d 1366 (Fed.Cir.2006)...........................................................................................17

*In re Omeprazole Patent Litigation*,
    483 F.3d 1364 (Fed. Cir. 2007)...........................................................................18

*In re Wands*,
    858 F.2d 731 (Fed.Cir.1988)..............................................................................25

*In re Wright*,
    999 F.2d 1557 (Fed.Cir.1993)............................................................................25

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005).........................................................................14

*Kingsdown Med. Consultants v. Hollister Inc.*,
    863 F.2d 867 (Fed. Cir. 1988).....................................................................16, 17

*Martech Biosciences Corp. v. Nutrinova, Inc.*,
    579 F.3d 1364 (Fed. Cir. 2008).........................................................................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................................13

*McKesson Information Solutions, LLC v. The Trizetto Group, Inc.*,
    2005 WL 914776 (D. Del. April 20, 2005)........................................................14

*Medtronic Vascular Inc. v. Advanced Cardiovascular Systems*,
    2005 WL 46553 (D. Del. Jan 5, 2005)...............................................................14

*Merck & Co., Inc. v. Danbury Pharmacal, Inc.*,
    873 F.2d 1418 (Fed. Cir. 1989).........................................................................17

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995).......................................................16, 17, 37, 39

*Monon Corp. v. Stoughton Trailers, Inc.*,
    239 F.3d 1253 (Fed. Cir. 2001).........................................................................16

*N.V. Akzo v. E.I. DuPont de Nemours*,
    810 F.2d 1148 (Fed.Cir.1987).............................................................18, 34, 35, 37

*Oracle Corp. v. Parallel Networks, LLP*,
    588 F.Supp. 2d 549 (D.Del. 2008).....................................................................19

*Pennsylvania. Coal Ass'n v. Babbitt*,
    63 F.3d 231 (3d Cir. 1995).................................................................................14

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993).............................................................14, 15, 23

REDACTED
DOCUMENT

*Proctor & Gamble Co. v. Nabisco Brands, Inc.*,
    697 F.Supp. 1360 (D. Del.1988) ................................................................14

*Robinson v. Johnson*,
    313 F.3d 128 ...........................................................................................21

*Salcer v. Envicon Equities, Corp.*,
    744 F.2d 935 (2d Cir. 1984)......................................................................14

*Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*,
    264 F.3d 1344 (Fed. Cir. 2001)............................................................15, 23

*Takeda Pharmaceutical Co. v. Teva Pharmaceuticals USA, Inc.*,
    542 F.Supp.2d 342 ...................................................................................17

*Trovan, Ltd v. Sokymat SA, Irori*,
    299 F.3d 1292 (Fed. Cir. 2002)..................................................................16

*University Of Rochester v. G.D. Searle & Co., Inc.*,
    358 F.3d 916 (Fed. Cir. 2004)....................................................................19

*Virginia Electronic & Lighting Corp. v. Nat'l Service Industries, Inc.*,
    230 F.3d 1377, 2000 WL 12729 (Fed. Cir. 2000) ................................15, 16, 23, 28

**STATUTES**

35 U.S.C. § 102...................................................................................... Passim

**OTHER AUTHORITIES**

37 C.F.R. § 1.56 (1990) ........................................................................... Passim

Federal Rule of Civil Procedure 8 ...............................................................21

Federal Rule of Civil Procedure 56 .............................................................13

REDACTED
DOCUMENT

## I.      INTRODUCTION

Robert Bosch LLC ("Bosch") has selected the most fact intensive, complex, and disputed issue on which to move for summary judgment.  In order to even address Bosch's Motion for Summary Judgment of No Inequitable Conduct and No Invalidity for Derivation with Respect to U.S. Patent Nos. 6,292,974 ("the '974 Patent"), 6,944,905 ("the '905 Patent") and 9,675,434 ("the '434 Patent") ("Bosch's Motion"), the Court will have to review scores of documents, read hundreds of pages of testimony, and consider the subjective viewpoints of various witnesses, from which it will likely emerge with the following impression—there is compelling, corroborated evidence that Robert Bosch GmbH misappropriated the inventions claimed in the '974, '434 and '905 Patents.  At the very least, it will become clear that Bosch's Motion suffers from the fundamental defect that it cannot be resolved without the Court making factual determinations that it will be disinclined to make at this stage in the proceedings.

In an effort to provide some of the factual context the following summary is offered.

REDACTED
DOCUMENT

REDACTED
DOCUMENT

1

Nonetheless, Bosch has asked the Court to ignore the thorny, bramble bush of factual

issues that surround the questions of proper inventorship, derivation and fraud, including those

---

[1] These declarations, and the documentary evidence contained therein, are exhibits to the depositions of Messrs. Fehrsen, Swanepoel and Olivier, which were conducted by Pylon pursuant to this case.  Pylon also conducted a deposition of Trico.  Because of the extensive facts surrounding the misappropriation of the inventions claimed in the '974, '434 and '905 Patents, and the numerous record citations, Pylon has attached the depositions in their entirety as exhibits to this Opposition.  (Brauerman Decl., Exhibit 1 (Fehrsen Deposition); Exhibit 2 (Swanepoel Deposition); Exhibit 3 (Olivier Deposition); and Exhibit 10 (Trico Deposition).  It is an understatement to say that the extensive facts, and corroboration, offered in these depositions and declarations, preclude a finding of summary judgment on the basis that *no* genuine issues of material fact.

REDACTED
DOCUMENT

presented in the brief background below, in an effort to find that there are no genuine issues of material facts *as a matter of law*, even when those facts must be viewed in the light most favorable to Pylon.

## II.   FACTUAL BACKGROUND

### A.

### B.

REDACTED
DOCUMENT

1.

REDACTED
DOCUMENT

**2.**

**C.**

REDACTED
DOCUMENT

**D.**

**1.**

REDACTED
DOCUMENT

**2.**

REDACTED
DOCUMENT

      **3.**

   **E.**

---

[2]  The '974 Patent issued on September 25, 2001 from U.S. Application Serial No. 09/284,398 ("the '398 Application"), filed June 11, 1999.   The '398 Application was the U.S. national filing of PCT/DE98/01893, filed July 9, 1998, which in turn, claimed priority to foreign application DE 197 36

5

368 A1 ("the DE '368 Application"), filed August 21, 1997.  (J.A., Ex. 2, JA00009-00293 (incorporated herein by reference in its entirety).)

[3]  The '434 Patent issued on January 13, 2004, from U.S. Application Serial No. 09/763,070 ("the '070 Application), filed June 11, 1999.   The '070 Application was the U.S. national filing of PCT/DE99/01880, filed June 30, 1999.  Although the '070 Application does not claim priority to DE 198 02 451 A1 ("the DE '451 Application"), the DE '451 Application is listed on the filing receipt for the '070 Application as a foreign application.  This fact, coupled with the subject matter of the DE '451 Application, establishes that the DE '451 Application was intended to be the priority document for PCT/DE99/01880 and the '070 Application.  (J.A., Ex. 4, JA00306-00545 (incorporated herein by reference in its entirety).)

[4]  The '905 Patent issued on September 20, 2005, from U.S. Application Serial No. 10/048,202 ("the '202 Application), filed April 22, 2002.   The '202 Application was the U.S. national filing of PCT/DE01/01304, filed April 4, 2001, which in turn, claimed priority to foreign applications DE 100 26 419 and DE 100 44 913, filed May 29, 2000 and September 12, 2000, respectively.  (J.A., Ex. 6, JA00560-00924 (incorporated herein by reference in its entirety).)

[5]  With respect to the '974 Patent, on or about June 7, 1999, a Declaration and Power of Attorney for National Stage of PCT Patent Application was filed in the USPTO in the '398 Application.  This declaration reflected Wilfried Merkel, Wolfgang Leutsch, Thomas Kotlarski and Don Friedrich as the alleged inventors.  Each of these alleged inventors averred that he believed that he was the original, first and joint inventor of the claimed subject matter.  These alleged inventors further averred that this and other statements regarding inventorship were true and that willful false statements were punishable by fine, imprisonment, or both under Section 1001 of Title 18 of the United States Code, and may jeopardize the validity of the application or any patent issued thereon.

REDACTED
DOCUMENT



REDACTED
DOCUMENT

---

[7]

Accordingly, as issued, the '974, '434 and '905 Patents name improper inventors, omit the true inventors, and were procured through fraud, deception and false statements. Under such circumstances, these patents are unenforceable for inequitable conduct. Furthermore, because the named inventors did not themselves invent the subject matter sought to be patented, the '974, '434 and '905 Patents are invalid under 35 U.S.C. 102(f).

III.   **APPLICABLE LAW**

    A.   **Summary Judgment Is Only Proper If The Record, When Viewed In The Light Most Favorable To Pylon, Demonstrates No Dispute Of Material Facts**

A court shall grant summary judgment only if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, n. 10 (1986); *IGT v. Bally Gaming Int'l Inc.* 610 F. Supp. 2d 288 (D. Del. 2009). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302, n. 1 (3d Cir. 1995).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The Court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party

REDACTED
DOCUMENT

opposing the motion." *Pennsylvania. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Accordingly, summary judgment should be denied unless no reasonable jury could find for the non-moving party, and *any* doubts in this regard should be resolved against the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "Of course, in assessing a putative dispute, the judge's function is not to …weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Invitrogen Corp. v. Clontech Labs., Inc.,* 429 F.3d 1052, 1076 (Fed. Cir. 2005).

### B.    Pleading Affirmative Defenses

Federal Rule of Civil Procedure 8 requires a party to set forth affirmative defenses in a responsive pleading with a "short and plain statement." *McKesson Information Solutions, LLC v. The Trizetto Group, Inc.*, 2005 WL 914776, *1 (D. Del. April 20, 2005). Motions to strike affirmative defenses are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F.Supp. 1360, 1362 (D. Del.1988). When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party...and deny the motion if the defense is sufficient under the law." *Id.* Courts prefer not to grant a motion to strike "unless it appears to a certainty that...[the movant] would succeed despite any state of the facts, which could be proved in support of the defense." *Salcer v. Envicon Equities, Corp.*, 744 F.2d 935, 939 (2d Cir. 1984).

### C.    A Claim of Improper Inventorship May Be Corroborated By Contemporaneous Documents, the Testimony of Another, and Other Circumstantial Evidence

An inventor's claim that they are a co-inventor on a patent, or that a claimed invention was derived from their prior work, "must supply evidence to corroborate his testimony." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993); *Medtronic Vascular Inc. v. Advanced Cardiovascular Systems*,

2005 WL 46553 (D. Del. Jan 5, 2005).  However, there need not be corroboration for every factual dispute between the parties.  *Ethicon* 135 F.3d at 1464.  Only the inventor's testimony requires corroboration before it can be considered.  *Price*, 988 F.2d at 1195.  The factors to be considered in assessing corroboration include:

> (1) the relationship between the corroborating witness and the alleged prior user, (2) the time period between the event and trial, (3) the interest of the corroborating witness in the subject matter in suit, (4) contradiction or impeachment of the witness' testimony, (5) the extent and details of the corroborating testimony, (6) the witness' familiarity with the subject matter of the patented invention and the prior use, (7) probability that a prior use could occur considering the state of the art at the time, [and] (8) impact of the invention on the industry and the commercial value of its practice.

*Woodland Trustv. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998); *Price*, 988 F.2d at 1195, n.3.

"Whether the inventor's testimony has been sufficiently corroborated is evaluated under a 'rule of reason analysis,'" which requires that "an evaluation of *all* pertinent evidence must be made so that a sound determination of the credibility of the alleged inventor's story may be reached." *Ethicon* 135 F.3d at 1461 (quoting *Price*, 988 F.2d at 1194) (emphasis in original) "*Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated*." *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001). "Circumstantial evidence about the inventive process may also corroborate" the inventor's testimony. *Ethicon* 135 F.3d at 1461 (citing *Knorr v. Pearson*, 671 F.2d 1368).

Additionally, "the oral testimony of someone other than the alleged inventor may corroborate."  *Id.*; *Virginia Electronic & Lighting Corp. v. Nat'l Service Industries, Inc.*, 230 F.3d 1377, 2000 WL 12729, *6 (Fed. Cir. 2000) (Unpublished).  "In the context of summary judgment, the district court [is] required to accept all testimonial assertions of [the nonmoving

party's] witnesses and to draw all reasonable inferences in favor of … the nonmovant." *Id*. at *5. ***Conflicting testimony over who is the true inventor "create[s] a genuine issue of material fact regarding the identity of the true inventor*."** *Id*.   Finally, when the construction of the claim terms may affect inventorship, a district court must properly construe the claims before evaluating issues of inventorship.  *Trovan, Ltd v. Sokymat SA, Irori*, 299 F.3d 1292, 1304 (Fed. Cir. 2002).

### D.      The Law of Inequitable Conduct

Applicants for patents and their legal representatives have a duty of candor, good faith, and honesty in their dealings with the United States Patent and Trademark Office ("USPTO"). *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); 37 C.F.R. § 1.56(a).  The duty of candor, good faith, and honesty includes the duty to submit truthful information and the duty to disclose to the USPTO information known to patent applicants or their attorneys which is material to the examination of a patent application.  *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999).  A breach of this duty constitutes inequitable conduct. *Molins*, 48 F.3d at 1178.  A finding of inequitable conduct is "an equitable determination" and, therefore, "is committed to the discretion of the trial court."  *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1261 (Fed. Cir. 2001).

If it is established that a patent applicant engaged in inequitable conduct with respect to one claim, then the entire patent application is rendered unenforceable. *Kingsdown Med. Consultants v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988).  Additionally, "[a] breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." *Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 803-04 (Fed. Cir. 1990).

REDACTED
DOCUMENT

In order to establish unenforceability based on inequitable conduct, a defendant must establish by clear and convincing evidence that: (1) the omitted or false information was material to patentability of the invention; (2) the applicant had knowledge of the existence and materiality of the information; and (3) the applicant intended to deceive the USPTO. *Molins*, 48 F.3d at 1178. A determination of inequitable conduct follows a two-step analysis. The withholding of information must first meet threshold findings of materiality and intent. *Id*.

There are several tests for determining whether information is material to patentability. *Impax Labs., Inc. v. Aventis Pharm. Inc.*, 468 F.3d 1366, 1374 (Fed.Cir.2006) (*Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1316 (Fed.Cir.2006)).[8] Generally, information is material if "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56 (1990).

After determining that the applicant withheld material information, the court must decide whether the applicant acted with the requisite level of intent to mislead the USPTO. *Baxter Int'l, Inc. v. McGaw Inc*., 149 F.3d 1321, 1327 (Fed. Cir. 1998). "Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for finding a deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996). That is, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown*, 863 F.2d at 876. However, a "smoking gun" is not required in order to establish an intent to deceive. *Merck & Co., Inc. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989). An inference of intent, nevertheless, is warranted "where a patent applicant knew, or should have

---

[8] See *Takeda Pharmaceutical Co. v. Teva Pharmaceuticals USA, Inc.*, 542 F.Supp.2d 342, 362-364 for a thorough discussion of the standards for inequitable conduct and the different tests for materiality.

REDACTED
DOCUMENT

known, that [the] withheld information would be material to the USPTO's consideration of the patent application.  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).

Once materiality and intent to deceive have been established, the trial court must weigh them to determine whether the balance tips in favor of a conclusion of inequitable conduct.  *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d 1148, 1153 (Fed.Cir.1987).  The showing of intent can be proportionally less when balanced against high materiality.  *Id.*

## IV.   ARGUMENT

### A.   Pylon's Properly Pled The Defenses Of Derivation And Inequitable Conduct In Its Second Amended Answer, Affirmative Defenses and Counterclaims

Bosch's allegation that Pylon failed to plead that the '974, '434 and '905 Patents ("Bosch Patents-In-Suit) are invalid under 35 U.S.C. § 102(f) has no foundation in law or fact.  Pylon's Second Amended Answer, Affirmative Defenses and Counterclaims ("Second Amended Answer") provide Bosch with more than proper notice that inventorship and derivation under 35 U.S.C. 102(f) would be pursued as affirmative defenses.  (Second Amended Answer, p. 4, 6, and 8-17 [D.I. 56]).

Specifically, Pylon (1) asserted as an affirmative defense that the Bosch Patents-In-Suit are invalid for failure to comply with the conditions for patentability set forth in Title 35, United States Code, including without limitation § 102 (which includes § 102(f)); (2) asserted an affirmative defense that one or more of the Bosch Patents "are invalid and unenforceable because the invention(s) "*were derived and/or misappropriated from the true inventors*"[9]; and (3) detailed with particularity the factual basis for these defenses in Count III of its Counterclaim

---

[9]   A violation of Section 102(f) is often referred to as "deriving" the invention from another.  *In re Omeprazole Patent Litigation*, 483 F.3d 1364 (Fed. Cir. 2007) ("35 U.S.C. § 102 provides that novelty is negated if the invention was 'derived from another, § 102(f).'")

REDACTED
DOCUMENT

including a *ten (10) page*, factual recitation describing the unenforceability of the Bosch Patents-In-Suit.  (*Id.* at 4 (Second Affirmative Defense), 6 (Fourteenth Affirmative Defense), and 8-17 (Count III of Pylon's Counterclaim, ¶16-52).)

Each of these defenses and counterclaims center on the same issue—whether the named inventors "actually invented the subject matter claimed in the [Bosch Patents-In-Suit] as required by 35 U.S.C. § 102(f)."  *University Of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916 (Fed. Cir. 2004).  It is difficult to imagine why citing the applicable statutory provision, stating that the inventions were "derived" from the true inventors, and providing excruciating factual detail as to how they were derived, failed to put Bosch on adequate notice regarding 102(f).

          **1.**        **Pylon Provided Bosch with a Detailed Factual Basis for its Improper Inventorship and Derivation Defense**

Bosch cites *Oracle Corp. v. Parallel Networks, LLP*, 588 F.Supp. 2d 549 (D.Del. 2008) for the proposition that Pylon's "conclusory allegations" are insufficient to raise an issue of material fact.  As a preliminary matter, *Oracle* dealt with the narrow issue of whether conclusory statements in an expert report were sufficient to raise issues of material fact as to infringement under the doctrine of equivalents.  *Id.*  The *Oracle* court did not consider whether affirmative defenses were properly pled.  *Id.*  Thus, Bosch's argument applies a test for whether a factual issue has been raised under the summary judgment standard rather than the appropriate notice pleading standard.  *Id.*  Notwithstanding the foregoing, Count III of Pylon's Counterclaim, provides an exhaustive a ten (10) page recitation of factual allegations (*complete with multiple graphics*) that form the basis of Pylon's improper inventorship and derivation defenses.  (Second Amended Answer, at 8-17 (Count III of Pylon's Counterclaim, ¶16-52); Brauerman Decl., Ex. 9, Pylon's Fourth Supplemental Response to Bosch's First Set of Interrogatories; Response to Interrogatory No. 3, p. 4.)

REDACTED
DOCUMENT

Bosch also cites to *Daiichi Pharm. Co. v. Apotex, Inc.*, Case No. 2:03-cv-00937-SDW-MCA, D.I. 130, p. 9, (D.N.J. Nov. 1, 2005) for the proposition that a defendant can be precluded from arguing a 102(f) defense for failing to provide specific justifications for its belief that the [plaintiff] was not entitled to [its patent] on the basis of § 102 (f) in its response to a contention interrogatory.  (Brauerman Decl., Ex. 11, *Daichi* Opinion, at 9.)[10]  In *Daiichi*, however, the defendant did not provide a factual basis for the §102 (f) defense *until after the close of discovery*, at the hearing to set the date for trial.  *Id.* at 12.  *Daiichi* is factually distinguishable, and certainly not applicable to the current case, because Pylon provided Bosch with a detailed *factual* basis for its 102(f) defense as soon as it became aware of it.

Specifically, on July 3, 2009, well before the close of discovery, Pylon supplemented its response to Bosch's contention interrogatory by stating in pertinent part that "[w]ith respect to invalidity under 35 U.S.C. § *102 (f)* and *116*, Pylon refers Bosch to Count III of Pylon's Second Amended Answer, Affirmative Defenses and Counterclaims *and* the declaration and deposition of Johannes Fehrsen (and exhibits).  (Brauerman Decl., Ex. 9, Pylon's Fourth Supplemental Responses to Bosch's First Set of Interrogatories, Response to Interrogatory No. 3, p. 4.)  Bosch was therefore directed to three, distinct sources of facts, each of which is independently sufficient to give Bosch notice of Pylon's positions regarding these defenses (which have not changed since then).

Bosch's "lack of notice" argument is also misplaced in view of the fact that Bosch provided the *fact* sources identified by Pylon

---

[10] Bosch cites to *Daiichi* as 2005 U.S. Dist. Lexis 26059, but this Opinion does not appear to be available through Westlaw.  Consequently, the Opinion is attached hereto for the Court's convenience.

REDACTED
DOCUMENT

2.    **Pylon Exercised Diligence in Investigating and Asserting its Improper Inventorship and Derivation Defense and Timely Asserted Same**

Bosch challenges Pylon's diligence in asserting this defense, and claims that it has been prejudiced and denied an opportunity to address it.  (Motion at 18.)  Nothing could be further from the truth.  Bosch notes that the Third Circuit construed Fed. R. Civ. P. 8(c)(1) to require that affirmative defenses must be pled in the answer or "raised at the earliest practicable moment thereafter."  *Robinson v. Johnson*, 313 F.3d 128, 137.  Here, it was.

The extent of this investigation begs a single question: what factual or legal grounds does *Bosch have* to represent to this Court that Pylon (1) failed to conduct an inadequate investigation; (2) failed to exercise proper due diligence in corroborating the facts; and (3) fail to timely asserting its improper inventorship and derivation defenses, because none is apparent.

**B.**

Bosch's argument that Pylon's claims are uncorroborated lack merit, particularly in view of the overwhelming amount of evidence Pylon has compiled.

Although Bosch argues that Pylon has provided ***no*** evidence corroborating Mr. Fehrsen's testimony, a fraction of the above described evidence would be sufficient to survive summary judgment.

**1.**

REDACTED
DOCUMENT

REDACTED
DOCUMENT

**2.**

In support of its argument, Bosch cites *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994), where the Court held that proving conception requires "corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." Bosch misreads the corroboration requirement. *Burroughs* does not require each individual piece of corroborative evidence to be enabling, but instead requires that the sum total of the corroborating evidence be an enabling disclosure.

REDACTED
DOCUMENT

Furthermore, "to meet the enablement requirement, 'the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.'" *Martech Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1364, 1378 (Fed. Cir. 2008) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed.Cir.1993)). "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *Id.* (quoting *In re Wands*, 858 F.2d 731, 737 (Fed.Cir.1988

REDACTED
DOCUMENT

[11]  With respect to diverging legs on the wind deflection strip, such elements were well known in the art at the time of the disclosure to Bosch.  (J.A., Ex. 2, JA00164-00166; JA00083-95) (U.S. Patent Nos. 3,088,155 and 3,881,214) (shown below).

---

[11]

REDACTED
DOCUMENT

**3.**

**4.**

Here, Bosch attacks a

REDACTED
DOCUMENT

solitary piece of evidence, while ignoring the combined weight of the evidence, relying on *Woodland Trust*.  While *Woodland Trust* discusses that there is "a very heavy burden to be met by one challenging validity [under a theory of prior invention] when the *only evidence* is the oral testimony of interested persons and their friends."  *Woodland Trust*, 148 F.3d at 1371.  The facts in this matter are easily distinguishable. *Id.*  First, Pylon is presenting documentary evidence in addition to oral testimony, which overcomes the concerns *Woodland Trust* was addressing.  Furthermore, contrary to Bosch's suggestion, nothing in *Woodland Trust* forecloses the use of a document to refresh a witness's recollection, particularly when the facts took place seventeen (17) years ago.  The mere fact that this occurred does not eliminate the testimony.

---

12

REDACTED
DOCUMENT

**5.**

Bosch argues, incorrectly, that there is no support or testimony that establishes Mr.

Fehrsen's claim of prior conception of the inventions of the '434 Patent.

_____

REDACTED
DOCUMENT

                                                                    In combination with

the Fehrsen declaration, and when viewed in the light most favorable to Pylon, as is appropriate

under the summary judgment standard, Bosch's arguments cannot prevail.

        **6.**

        When these facts, and those discussed above, are viewed in the light most favorable

to Pylon, Mr. Fehrsen's testimony is sufficiently corroborated because Pylon can establish both

prior conception and disclosure of the inventions claimed in the Bosch Patents-In-Suit.  At the

least, there are numerous, complex genuine issues of material fact exist which preclude summary

judgment.  In view of the foregoing, the aspect of Bosch's Motion for summary judgment of no

invalidity under § 102 (f) cannot stand.

    **C.**     **Sufficient Facts Exist for a Jury to Find Bosch GmbH Committed
Inequitable Conduct**

        **1.**

REDACTED
DOCUMENT

a.

**b.**

Claim 1 of the '974 Patent reads as follows:

1. A wiper blade for windows of motor vehicles, comprising a curved, band-shaped, spring-elastic support element which distributes a pressure applied by a wiper arm and has a concave and a convex surface which defines corresponding planes; an elongated rubber-elastic wiper strip placeable on a window to be wiped and mounted to said concave surface of said support element which faces the window, substantially longitudinally parallel to said concave surface; a connection device provided for a wiper arm and arranged directly on a convex side of said support element; and a component which is separate from said wiper strip and is mounted directly to the convex surface of said support element so as to form a leading-edge face extending in a longitudinal direction of the support element and forming, as seen crosswise to its longitudinal extension, an acute angle with a plane which extends parallel to a plane formed by said convex surface.

J.A. Ex. 1, the '974 Patent, Claim 1.

REDACTED
DOCUMENT

REDACTED
DOCUMENT

REDACTED
DOCUMENT

**c.**

In the Summary of the Invention, the '974 Patent describes two, distinct embodiments.

In one embodiment, a compact wiper strip is obtained by having the leading edge face ***disposed on the face of the support element*** facing away from the window.

> A compact wiper strip is obtained if the leading-edge face is *disposed on the face of the support element* facing away from the window. …

('974 Pat., col. 2, lns. 11-15) (emphasis added).

In another embodiment, the leading edge face is on a separate, elongated component.

> The embodiment of a leading-edge face can advantageously b[e] attained in that it is *embodied on a separate, elongated component* that is solidly joined to the support element.

(the '974 Pat., col. 2, lns. 16-19) (emphasis added).

REDACTED
DOCUMENT

---
14

REDACTED
DOCUMENT

**2.**

REDACTED
DOCUMENT

**a.**

15

REDACTED
DOCUMENT

b.      **Bosch GmbH and Its Internal Patent Counsel Breached Their Duty of Candor to the USPTO**

The legal representatives of applicants for patents have a duty of candor, good faith, and honesty in their dealings with the USPTO.  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); 37 C.F.R. § 1.56(a).   Bosch GmbH is the applicant on the foreign patent applications and PCT applications that led to the '434 Patent.[16]   As such the duty of candor applies to Bosch GmbH and its counsel in connection with the '434 Patent.  37 C.F.R. § 1.56(a).

3.      **Pylon's Evidence of AMIC's Disclosure to Bosch and Specific Intent to Deceive the USPTO by the Inventors of the '905 Patent**

As discussed above, the duty of candor applies to Bosch GmbH and its internal patent counsel.  37 C.F.R. § 1.56(a).

---

[16]   The '434 Patent stems from PCT/DE99/01880 and shares the same specification.  (J.A., Ex. 4, JA00336).  The DE '451 Patent is the prior foreign application for PCT/DE99/01880.  (J.A., Ex. 4, JA00307; JA00338).  Robert Bosch GmbH was the original applicant on the DE '451 Patent, the original applicant on PCT/DE99/01880, and the original assignee of the '434 Patent.  (J.A., Ex. 4, JA00425; JA00347; JA00294.)

REDACTED
DOCUMENT

**V.**    **CONCLUSION**

For the foregoing reasons, Pylon respectfully request that the Court deny Bosch's Motion.

REDACTED
DOCUMENT

Dated: December 14, 2009
Redacted Version: December 22, 2009

OF COUNSEL:

Gregory L. Hillyer
Javier Sobrado
FELDMAN GALE, P.A.
1420 Montgomery Lane
Suite 400
Bethesda, MD 20814
Tel: (800) 489-9814
Fax: (301) 560-8677
ghillyer@feldmangale.com
jsobrado@feldmangale.com

James A. Gale
FELDMAN GALE, P.A.
One Biscayne Tower, 30th Floor
2 S. Biscayne Blvd.
Miami, FL 33139
Tel: (305) 358-5001
Fax: (305) 358-3309
jgale@feldmangale.com

BAYARD, P.A.

 /s/ Stephen B. Brauerman (sb4952)
Ashley B. Stitzer (as3891)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000
astitzer@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys for Defendants,*
*Pylon Manufacturing Corporation.*