**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

ROBERT BOSCH LLC,                    :
                                     :
            Plaintiff,               :
                                     :
      v.                             :   C. A. No. 08-542-SLR
PYLON MANUFACTURING CORP.,           :
                                     :
            Defendant.               :

**MEMORANDUM ORDER**

Consistent with the instruction of the court, the parties filed cross-opening and

cross-responsive memoranda addressing Bosch's motion to compel production of

privileged materials allegedly waived by Pylon.  The parties filed their cross-opening

memoranda on August 6, 2009,[1] and submitted their cross-responses on August 18,

2009.[2]  Subsequently, Pylon moved for leave to file a reply in opposition to Bosch's

motion to compel.  Bosch opposed, but also filed a response, to which Pylon replied.[3]

On October 19, 2009, as a result of conference on the present issues under

consideration and other discovery matters, Bosch was to identify and produce twelve

documents produced by Pylon which purportedly supports Bosch's argument on waiver,

while Pylon was to produce the twelve documents identified by Bosch from Pylon's

privileged log list to determined whether they reflect attorney-client communications and

whether the privilege was waived.[4]  Bosch also produced twelve documents from its

---

[1] D.I. 114-115.
[2] D.I. 117-118.
[3] The end result is that the parties extended their briefing of the issue.  See D.I.
124, 132, 142, and dueling letters dated October 23, 2009.
[4] The court required the parties to produce those documents for *in camera* review
to allow it to compare what had been previously produced to what had not been

privileged log list which Pylon requested be forwarded for an *in camera* review to determine whether such documents were properly scheduled.  Those documents and further letter arguments were provided on October 21, 2009.[5]

Apparently, not satisfied with the prior submissions, Bosch submitted further comments by letter on October 23, 2009, to which Pylon objected and responded on the same date.  On October 26, 2009, the discovery matters related to the privilege issue were referred to Magistrate Judge Thynge.[6]  This is the court's decision regarding attorney-client privilege and related issues.

**Parties' Positions**

Bosch moved to compel production of certain documents, specifically communications between Pylon and its third party supplier, Unipoint, which Pylon contends are subject to a common interest privilege.  Bosch maintains that such documents are discoverable because the opinions of counsel shared between Unipoint and Pylon were not subject to the common interest or joint defense strategy.  Bosch further argues that Pylon waived any privilege with regard to all documents and testimony related to validity and infringement of the patents-in-suit because it voluntarily produced documents which reflect advice of counsel.  As a result, it claims that Pylon waived attorney-client privilege to such communications on the same subject matter,

---

produced to determine whether a waiver occurred and if so, the subject matter on which it occurred.
     [5] D.I. 150 and 151.
     [6] D.I.  152.  On October 27, 2009, the Honorable Sue Robinson also referred all discovery issues remaining as a result of the conference of October 19, 2009.  See D. I. 153.  On October 28, 2009, Bosch advised the Magistrate Judge by email that it was no longer pursuing the issues identified in items 2 and 3 of the Order of October 27, 2009.

relying on documents Pylon previously produced and the testimony of Pylon's witnesses.  It maintains that the documents which Pylon voluntarily produced contain attorney advice; that Pylon is selectively withholding communications with its suppliers; and that Pylon waived such privilege, to the extent that it ever existed.

Pylon denies that it waived any attorney-client privilege, noting that communications prepared by Unipoint or Chin Pech (suppliers of beam blades to Pylon) do not operated to destroy its attorney-client privilege; that Pylon's disclosure of documents relating to Chin Pech does not waive privilege; and, that it shares a legitimate joint-client and common interest privilege with Unipoint.  Pylon also notes that the documents identified by Bosch do not contain attorney advice, and if they do, no waiver occurred since it has not placed the advice "at issue," and previously advised that it does not intend to rely on advice of counsel as a defense.  Pylon notes that none of the documents that it produced reveal the substance of any opinion.

**Standards and Applicable Law**

<u>Attorney-Client Privilege</u>

The attorney-client privilege exists to encourage full and frank communications between counsel and their clients.[7]  Any review of the attorney-client privilege begins with the seminal case of *United States v. United Shoe Machinery Corp.,*[8] which has been almost universally adopted, and is clearly the standard applied in this jurisdiction.[9] In order to qualify for the protection, the communication must adhere to the following

---

[7] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).
[8] 89 F. Supp 357, 358-359 (D. Mass. 1950).
[9] *Helman v. Murray's Steaks, Inc.*, 728 F. Supp. 1099, 1102 (D. Del. 1990); *Hercules, Inc. v. Exxon Corp.*, 454 F. Supp. 138, 144 (D. Del. 1977).

requirements:

> The privilege applies only if (1) the asserted holder of the privilege is or
> sought to become a client; (2) the person to whom the communication was
> made (a) is a member of the bar of a court, or his subordinate and (b) in
> connection with this communication is acting as a lawyer; (3) the
> communication relates to a fact of which the attorney was informed (a) by
> his client (b) without the presence of strangers (c) for the purpose of
> securing primarily either (I) an opinion on law or (ii) legal services or (iii)
> assistance in some legal proceeding, and not (d) for the purpose of
> committing a crime or tort; and (4) the privilege had been (a) claimed and
> (b) not waived by the client.[10]

The party seeking to invoke the attorney-client privilege has the burden of

establishing the existence of an attorney-client relationship and the confidential nature

of the communication.[11]

Waiver of the attorney-client privilege occurs when voluntary disclosure to an

unrelated third party occurs, unless such disclosure is necessary to assist the client in

obtaining informed legal advice.[12]  Waiver, generally, must be clear and intentional.[13]  In

determining whether waiver ends the privilege to any related, but undisclosed

communication, the "touchstone is fairness."[14]  The court will not allow a party to take

advantage through selective disclosure in order to prevent the privilege being used as a

litigation weapon.[15]  Generally, courts will not imply a waiver that "is broader than

necessary to ensure that all parties are treated fairly."[16]  If the disclosure does not

---

[10] *Helman*, 728 F. Supp. at 1102.
[11] *Lemelson v. Bendix Corp.*, 104 F.R.D. 13, 16 (D. Del. 1984).
[12] *Hercules*, 434  F. Supp at 156.
[13] *IBM v. Sperry Rand Corp.*, 44 F.R.D. 10, 13 (D. Del. 1968).
[14] *In re Teleglobe Communications Corp. v. BCE*, 493 F.3d 345, 361 (3d Cir.
2007).
[15] *Id.*
[16] *Id.*

create an unfair advantage, then it is usually limited to the communication actually disclosed."[17]  However, when a party "takes advantage of another by selectively disclosing otherwise privileged communications, courts broaden the waiver as necessary to eliminate the advantage."[18]  The extent of any waiver is only that is "necessary to ensure that all parties are treated fairly."[19]

### Co-Client or Joint-Client Privilege

As in the single-client representation, the joint-client relationship begins when the "co-clients convey their desire for representation, and the lawyer accepts."[20]  Just because clients of the same lawyer share a common interest does not mean they are co-clients.  Whether joint representation exists depends on the understanding of counsel and the parties in light of the circumstances.[21]  It continues until it is expressly terminate or circumstances indicate to all the joint clients that the relationship has ended.  As noted in the *Restatement (Third) of the Law Governing Lawyers* § 75, a co-client relationship is limited by the "extent of the legal matter of the common interest."  In that relationship, the co-clients and their common counsel's communications are protected from disclosure to persons outside the joint representation.  Waiver of the privilege requires the consent of all joint clients.[22]  A co-client, however, may unilaterally waive the privilege regarding its communications with the joint attorney, but cannot unilaterally waive the privilege for the other joint clients or any communications that

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 362.  Joint representation may also arise by implication. *Id.*
[21] *Id.*
[22] *Id.* at 363.

relate to those clients.

Common Interest (Joint Defense) Privilege

The common interest privilege protects communications between individuals and entities and counsel for another person or company when the communications are "part of an on-going and joint effort to set up a common defense strategy."[23]  In other words, members of the community of interest "must share at least a substantially similar legal interest."[24]  The burden is on the party asserting the privilege to establish its existence by showing that "(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived."[25]  Moreover, to qualify for and to maintain continued protection, the communication must be shared between counsel.[26]  Recognizing that the common interest privilege operates in derivation of disclosure, the attorney-sharing requirement prevents abuse, such as, *post hoc* justification for a client's impermissible disclosures. Therefore, it is available when counsel share information to coordinate legal strategies.[27]  Generally, under the joint defense or common interest rule, the attorney-client privilege is not automatically waived regarding joint consultations or exchanges of information, with each party retaining the right to voluntarily waive the privilege.  Thus, a waiver by one does not automatically operate as a waiver by the other.  However, when

---

[23] *In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986), *quoting Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1984).
[24] *Teleglobe Communications*, 493 F.3d at 365.
[25] *In the Matter of Bevill*, 805 F.2d at 126, citing *In re Grand Jury Subpoena Deces Tecum Dated November 16, 1974*, 406 F. Supp. 381 (S.D.N.Y. 1975); *see also. Grand Jury Empaneled February 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979).
[26] *Teleglobe Communications*, 493 F.3d at 365.
[27] *Id.*

6

disclosure of a confidence is made to an unrelated third-party by one sharing a common interest with another and this occurs with the knowledge, awareness or consent of the other, the attorney-client privilege is waived as to the subject matter of the disclosure.

Crime-Fraud Exception

A proper assertion of the attorney-client privilege or work product immunity will be vitiated by a showing that the documents claimed to be protected were prepared in furtherance of a crime or fraud.[28]  The burden rests on the party seeking discovery to prove first, a *prima facie* case of criminal or fraudulent conduct or intent to commit such conduct, and second, that the communications were made in furtherance of the fraud.[29] Actual proof of the fraudulent conduct is not required; rather, the evidence must subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrefuted.[30]  In addition, the movant must show that the communications were made in furtherance of the fraud.  Thus, communications made before the fact or during the commission of the fraud are not protected by privilege.  To allow such protection would permit an attorney to be a principal or accessory to a fraud without fear of discovery and would authorize the client to commit fraud with the aid of legal advice.[31]  After the fact

---

[28] *Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1036, 1051 (D. Del. 1985) (which found that a patent holder's fraud precluded assertion of the attorney-client privilege or work product doctrine relating to documents prepared in furtherance of the alleged fraud and that *in camera* review of such documents was unnecessary to make such determination); *Hercules Inc. v. Exxon Corp.*, 434 F. Supp 136, 145 (D. Del. 1977).

[29] *Union Carbide Corp.*, 619 F. Supp. at 1051; *Hercules Inc.*, 434 F. Supp. at 155.

[30] *Hercules Inc.*, 434 F. Supp at 155 (relying on *Dunlap Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir. 1976)).

[31] *Id.* at 155 (citing *W.R. Grace & Co. v. P. Ballantine & Sons, Inc.*, 175 U.S.P.Q. 464 (D.N.J. 1970).

communications, or after the fraud communications, are protected.[32]

<u>At Issue</u>

One may waive the attorney-client privilege by asserting claims or defenses that places its counsel's advice in issue in the litigation.  The most common example of such waiver in a patent infringement matter is when a party, in defense of willfulness, argues that it relied on the advice of counsel.  As a result, all communications with an attorney relevant to the subject matter of that advice is waived.[33]  However, relevance alone is not enough.  Advice of counsel is at issue when "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."[34]

With these legal standards in mind, the following rulings are made.

**Bosch Documents:**

<u>Redacted Documents</u>:

Document Nos. 298, 299, 305, 324, 342, 350 and 939 were produced in redacted form.  They appear to be what they have been represented to be, that is, either internal Bosch presentations or notes and summaries of internal meetings.  The redacted portions reflect discussions regarding advice of counsel, as well as, memorialize further requests for attorney advice.  There is no evidence in the remaining unredacted portions of the documents to suggest that any waiver occurred.  Further, they do not tangentially

---

[32] *Id.* (noting that in *W.R. Grace & Co.*, the court recognized that any documents dated later than the issuance of the patent in suit remain protected under the attorney-client privilege because such documents were prepared after completion of the fraud).

[33] *Rhone-Poulenc Rorer Inc v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

[34] *Id.*

relate to nor are they relevant any crime-fraud exception.  Therefore, they are not subject to production.

Privileged Documents:

Pylon primariy relies on the crime-fraud exception to support the discovery of document Nos. 468, 484, 506, 520 and 512 which were withheld in their entirety on the basis of attorney-client privilege.  Pylon's argument for application of the crime-fraud exception is that two other individuals, Fehrsen and Swanepoel, rather than the inventors listed, conceived of the invention claimed in the '974 patent, including the use of a spoiler on a beam blade.  Fehrsen allegedly revealed to Robert Bosch GmgH (parent corporation to Bosch) a spoiler design mounted on the top of a beam surface as evidenced by his notes dated September 17, 1992, which included a wedge shaped rubber backing strip making the beam operate as an aerofoil.  Pylon argues that Figure 3 of the '974 patent is the same as Fehrsen's sketch.

Pylon further claims that the use of a plastic end clip or cap on a beam blade was invented by Fehrsen and Swanepoel, rather than just the listed inventors on the '434 patent.  It claims that as a result of disclosures made by Fehrsen during meetings which occurred with Robert Bosch GmbH on September 17, 1992, he purportedly recommended that a plastic end clip would be required to comply with safety standards. A proposed drawing was provided during those meetings which Pylon claims is the same as figure 3 in the '434 patent, and shows the use of an end clip on a beam blade. Because the '974 and '434 patents were obtained without revealing to the PTO either the inventorship or contributions of Fehrsen or Swanepoel, Pylon argues that the patents are unenforceable due to inequitable conduct, and therefore, the crime-fraud

9

exception to the alleged privileged documents applies.[35]

Bosch represents that each invention record document was prepared for non-party Robert Bosch GmbH's patent department for the purpose of obtaining legal advice.  Document no. 468 is a summary of a number of invention records, which contains a single reference to Fehrsen's inclined beam blade concept, but does not discuss anything regarding that concept, provides no description of that concept, or any alleged contributions by Fehrsen.  It was provided to Robert Bosch GmbH's patent department.  Contrary to Pylon's argument, document no. 468 does not prominently feature, and in fact, does not feature at all, nor suggest anything regarding Ferhsen or his contributions to that concept.  It contains no description of what the inclined beam concept is.  Entry no. 484, an invention report, clearly contains a request for legal advice.  Similarly, entry nos. 510 and 512 are invention reports or summaries.  Entries 484, 510 and 512 were prepared for the patent department of the parent company, and not only provide information to, but also request assistance from that department.  There are no references to Fehrsen, nor is there anything to suggest that the crime-

---

[35] Pylon also claims in its second amended answer that '905 patent is unenforceable due to inequitable conduct, again because the inventorship and contributions of Fehrsen and Swanpoel were not disclosed to the PTO during prosecution of that patent.  The apparent basis is that the "claimed subject matter is derived from one or both of the invention(s) described and/or claimed in the '974 and '434 patents." See D.I. 56 ¶¶48-50.  No other specifics are provided.  It, therefore, appears that the claim of inequitable conduct, and thus the application of the crime-fraud exception, is limited to those alleged misrepresentations made in relation to the '974 and '434 patents.  Since inequitable conduct is a claim sounding in fraud, Fed. R. Civ. P 9(b) applies.  Under that rule, the elements of inequitable conduct must be pled with particularity.  The purpose of the heightened pleadings requirements of Rule 9(b) is to "deter the filing of charges of fraud as a pretext for discovery of unknown wrongs." *See Stowe Woodward L.L.C. v. Sensor Products, Inc.*, 230 F.R.D. 463, 466 (W.D. Va. 2005) (quoting *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 161, 178 (E.D.N.Y 1988)).

fraud exception applies to these documents.  Therefore, document nos. 468, 484, 510 and 512 are not discoverable.

A comparison of document no. 506 to the '974 and '434 patents suggests that the subject matter of the document and the patents differ and does not intimate application of the crime-fraud exception.  Document 506 is an invention record provided to the patent department of the parent company, and seeks legal advice.  Therefore, it is not discoverable.

**Pylon Documents:**

Bosch contends that Pylon has waived attorney-client privilege because of its disclosure of certain documents listed as exhibit nos. C1 through C12.[36]  It claims that comparison of those documents with the twelve withheld/redacted documents[37] selected for *in camera* review, will show a relationship between the produced documents and the withheld/redacted documents, and confirm waiver of the attorney-client privilege which warrants production of all documents relating to the same subject matter.

Regarding those documents which contained exchanges between Unipoint and Pylon, Pylon represents that such documents are protected by attorney-client privilege, attorney work product, and joint-client and/or common interest privilege shared with Unipoint pursuant to a supply agreement which required attorney advice to be shared.

Documents No. C1-C12 Allegedly Constituting Waiver

The exchanges between Chin Pech and Pylon merely reference, in general,

_____

[36] Those exhibits are attached to D.I. 150.
[37] The twelve documents selected by Bosch for *in camera* review are 1, 10, 77, 98, 109, 131, 148-149, 152-153, 243 and 244 which have been produced to the court by Pylon.

infringement issues, Bosch patent issues or Bosch patent infringement matters without any description of the particular issue or patent of concern, and contain very brief comments by Chin Pech to Pylon regarding the opinion of *its* counsel on those matters. Specifically, the letter found at exhibit C6 in Bosch's submission, is an opinion from Chin Pech's attorney which it shared with Pylon.  The produced documents evidence that any patent clearance analysis was being done for Chin Pech by counsel whom it retained. Notably in exhibit C8, Chin Pech references that a patent clearance opinion had been obtained by *it* for each part of the beam blade from *its* patent attorney and offered Pylon the option to communicate directly with Chin Pech's counsel regarding those opinions. The fact that Pylon may have required such clearance information from Chin Pech does not make the opinions provided those of counsel retained by Pylon, even if Pylon relied on that information.  Therefore, if any opinion of counsel was waived, it was Chin Pech's attorney-client privilege and not Pylon's privilege in that regard.[38]

Further, only a general references is made to "Bosch patents" or "US patents" in the examples provided.  No reference is made to the Bosch patents-in-suit.  Moreover, the general terminology of "patent issues", "infringement issues" or like comments do not indicate what patent or infringement issues are being addressed, and do not show that the patents-at-issue in the present matter were discussed.

---

[38] See also C7 (dated in November 2008) where Chin Pech is advising Pylon (rather than the reverse) that the beam blade may not "overcome . . . the unexpected challenge from *unknown* companies."  No other information or any analysis is furnished or explained.  Moreover, Chin Pech suggests that a joint legal team *maybe* helpful, but its position is supported by advice obtained from its counsel.  Therefore, as late as November 2008, any opinion expressed by Chin Pech regarding infringement was based on its counsel's advice and not on any joint arrangement between Pylon and Chin Pech.

In other documents regarding communications between Unipoint and Pylon, one document upon which Bosch relies, contains a general, overview by *Unipoint* to Toyota that the "Toyota MVP Beam did not pose any material risk of infringing the issued USA patents."  As acknowledged by Bosch, the letter was not authored by Pylon or its counsel.  Rather, the letter was prepared by Unipoint.  The letter contains a general statement, without any specifics regarding which patents it references, and no analysis of why there is no material risk of infringement.  Again, if any waiver occurred, it was by Unipoint and not by Pylon.  Further, as evidenced by the deposition testimony of David Frauman (a Pylon employee),[39] the Toyota clearance letter was prompted by an unrelated patent infringement concern and not directed to the subject matter of the instant matter.  The Frauman deposition also confirms that the general reference to patent infringement issues or infringement matters discussed between Pylon and its suppliers did not involve the Bosch patents-in-dispute, or did not concern a Bosch patent at all.[40]  In other documents, there is no indication that similar general comments are based upon advice from any attorney.

Therefore, documents C1-C12 involve possible disclosure of attorney advice obtained by a third party and related to Pylon, rather than Pylon disclosing advice from its counsel.  Certain documents involve patents other than Bosch patents, or relate to patents that are not part of the present dispute.  No analysis is provided as to why the

---

[39] Both Bosch and Pylon provided limited portions of Frauman's deposition testimony.  Review of both submissions was required to discern the import of his testimony.

[40] As noted in the Frauman deposition, references to patent issues regarding the Toyota product, as in exhibit C10, concerned patents other than those owned by Bosch. D.I. 132.

proposed beam blades do not infringe a patent, and no reference is made to a particular

patent:  rather, the comments are very general, broad and nonspecific.  Therefore, the

production by Pylon of documents C1-C12 do not constitute a wavier by it of attorney-

client privilege on infringement or invalidity.

<u>Redacted or Withheld Documents</u>

Bosch primarily argues that because of waiver through the production of

documents nos. C1-C12,  the redacted/withheld documents produced for *in camera*

review are also subject to waiver. Bosch also generally contends that those documents

are not subject to attorney-client privilege independent of any waiver.

The documents in question mainly involve a series of email exchanges between

Pylon and Unipoint and Pylon and it counsel during 2006 or 2008.   From those

documents, an understanding existed between Pylon and Unipoint with Pylon's counsel

for his advice to address certain legal issues, to identify patents which either party may

be accused of infringing and to evaluate potential risks.  The understanding evident in

those documents was that attorney advice was to be shared.  Those documents

indicate that the same counsel was employed to address their joint concerns regarding

possible patent liability which could arise from their business relationship.  The fact that

this arrangement was not memorialized in written form until later does not defeat the

relationship between Unipoint, Pylon and counsel and the protection of attorney-client

privilege.  Further, nothing disclosed in the redacted documents constitutes waiver of

the attorney-client privilege in the redacted portions.  The disclosed parts of the

redacted documents do not contain any advice of counsel and do not relate to the

information redacted.  Therefore, none of the documents reviewed suggest a waiver of

the attorney-client privilege.  Moreover, the documents reviewed *in camera* meet the elements of *International Shoe Machinery Corp.* and show that a joint-client relationship existed under *Teleglobe Communications*.  Therefore,

IT IS ORDERED that:

1.  Bosch's motion to compel (D.I. 114) is DENIED.

2.  Pylon's oral motion to compel raised during hearing on October 19, 2009 is DENIED.

3.  Since the court considered everything filed by the parties in relation to the discovery issues addressed herein, including the letters filed by the parties on October 23, 2009, Pylon's motion for leave to file a reply (D.I. 124) is GRANTED.


Date:  December 23, 2009                    /s/ Mary Pat Thynge_____
                                                          UNITED STATES MAGISTRATE JUDGE