# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROBERT BOSCH LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 08-542-SLR |
| | ) |
| vs. | ) |
| | ) **JURY TRIAL DEMANDED** |
| PYLON MANUFACTURING CORP., | ) |
| | ) **PUBLIC VERSION** |
| Defendant. | ) |
| | ) |

## PLAINTIFF ROBERT BOSCH LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT AND NO INVALIDITY FOR DERIVATION WITH RESPECT TO U.S. PATENTS 6,292,974, 6,944,905 AND 6,675,434 (D.I. 173)

OF COUNSEL:

Michael J. Lennon
Mark A. Hannemann
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel: (212) 425-7200

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff Robert Bosch LLC*

Dated: January 12, 2010
Public Version Dated: January 19, 2010
950074 / 33181

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

ARGUMENT ........................................................................................................ 4

I.     PYLON DID NOT PROPERLY PLEAD ITS 102(F) AFFIRMATIVE DEFENSE ........ 4

II.    PYLON HAS NOT SHOWN ANY CORROBORATION OF MR. FEHRSEN'S TESTIMONY ......................................................................................... 5

    A.    The Fehrsen Notes Do Not Corroborate Mr. Fehrsen's Testimony ...................... 5

    B.    The Adams Letter Does Not Corroborate Mr. Fehrsen's Testimony .................... 7

    C.    Mr. Olivier's Testimony Does Not Corroborate Mr. Fehrsen's Testimony ........... 9

    D.    Pylon Cannot Show Corroboration of Prior Conception or Disclosure of the Subject Matter of the '434 Patent ......................................................... 11

    E.    Pylon Does Not Assert that Mr. Fehrsen's Testimony Regarding the '905 Patent has been Corroborated .................................................... 12

    F.    Pylon's "Other Evidence" that Purports to Corroborate Mr. Fehrsen's Testimony is Deficient ....................................................................... 13

III.   PYLON CANNOT MEET THE NECESSARY STANDARD TO SUPPORT A FINDING OF INEQUITABLE CONDUCT ............................................. 14

    A.    Bosch Did Not Commit Inequitable Conduct By Not Naming Mr. Fehrsen As An Inventor ................................................................................ 14

    B.    Bosch's Alleged Failure to Disclose the Swanepoel Testing Report Does Not Support an Inequitable Conduct Claim ............................................ 14

        1.    Pylon never pleaded the circumstances regarding the testing report as inequitable conduct ......................................................... 15

        2.    The Swanepoel testing report is not prior art .......................................... 15

        3.    The Swanepoel testing report is not material ......................................... 16

        4.    Pylon has not shown any evidence of intent to deceive ........................... 17

i

C.  Bosch Did Not Commit Inequitable Conduct By Not Disclosing the Fehrsen
    Inclined Beam Idea During the Prosecution of the Bosch Patents at Issue .......... 17

    1.  Pylon never pleaded lack of disclosure of the Fehrsen inclined beam
        as inequitable conduct................................................................................ 17

    2.  The Fehrsen inclined beam is not prior art to the Bosch patents
        at issue....................................................................................................... 17

    3.  The Fehrsen inclined beam is not material to the Bosch patents at
        issue............................................................................................................ 17

    4.  Pylon has not shown any evidence of intent to deceive............................ 18

D.  Bosch Did not Commit Inequitable Conduct With Respect To
    The '434 Patent .................................................................................................... 18

E.  Bosch Did Not Commit Inequitable Conduct With Respect To
    The '905 Patent .................................................................................................... 19

CONCLUSION............................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Colloids Inc. v. Am. Cyanamid Co.,*
  64 F.3d 1570 (Fed. Cir. 1995)................................................................. 15

*Burroughs Wellcome Co. v. Barr Lab., Inc.,*
  40 F.3d 1223 (Fed. Cir. 1994)............................................................. 6, 7

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
  575 F.3d 1312 (Fed. Cir. 2009)........................................................ passim

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
  110 F.3d 1573 (Fed. Cir. 1997)............................................................. 14

*GemStar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n,*
  383 F.3d 1352 (Fed. Cir. 2004)........................................................... 5, 6

*Int'l Rectifier Corp. v. IXYS Corp.,*
  361 F.3d 1363 (Fed. Cir. 2004)............................................................... 4

*Juicy Whip, Inc. v. Orange Bang, Inc.,*
  292 F.3d 728 (Fed. Cir. 2002)........................................................... 9, 10

*Matsushita Elec. Indus. Co.  v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)............................................................................ 13

*Medichem, S.A. v. Rolabo, S.L.,*
  437 F.3d 1157 (Fed. Cir. 2006).......................................................... 8, 11

*Pac. Furniture Mfg. Co. v. Preview Furniture Corp.,*
  800 F.2d 1111 (Fed. Cir. 1986)............................................................. 16

*Robinson v. Johnson,*
  313 F.3d 128 (3d Cir. 2002)................................................................. 15

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.,*
  528 F.3d 1365 (Fed. Cir. 2008) ........................................................... 14

*Singh v. Brake,*
  222 F.3d 1362 (Fed. Cir. 2000)............................................................... 4

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.,*
  537 F.3d 1357 (Fed. Cir. 2008).............................................. 14, 17, 18, 19

*Woodland Trust v. Flowertree Nursery, Inc.*,
148 F.3d 1368 (Fed. Cir. 1998)..................................................................... 9, 10, 11

**Statutes**

35 U.S.C. § 102............................................................................................... 4

35 U.S.C. § 102(b)........................................................................................... 17

35 U.S.C. § 102(f)........................................................................................ 4, 5

**Rules**

Fed. R. Civ. P. 8(c)(1).................................................................................... 15

Fed. R. Civ. P. 9(b) ........................................................................................ 15

## INTRODUCTION

This is a motion for summary judgment dismissing Pylon's defenses of inequitable conduct and derivation.   Pylon's opposition papers, which included nearly 800 pages of exhibits and the entirety of four deposition transcripts and exhibits, were apparently designed to convince the Court that there is a legitimate issue of material fact concerning the issues underlying Pylon's defenses.

But this is not a motion for summary judgment of inequitable conduct and derivation.  It is a motion for summary judgment dismissing those defenses.  Both inequitable conduct and derivation are defenses that must be established by clear and convincing evidence, and the point of Bosch's opening brief was that there is no such evidence in this case.  Pylon's submissions in opposition turn on the uncorroborated testimony of interested witnesses and do not include a collection of evidence that any reasonable fact finder could find to be clear and convincing evidence sufficient to support a finding that Bosch's named inventors lied to the Patent Office about who conceived the inventions claimed in the Bosch patents.  Pylon should not be allowed to waste the Court's time and unfairly attack Bosch's inventors by presenting these accusations of misconduct and Pylon's accompanying "thorny, bramble bush" of evidence (D.I. 206 at 3), when those accusations will not be supported by legally sufficient evidence.  Bosch's motion should be granted.

The issue at hand is very simple.  Pylon has alleged that Johannes Fehrsen, an engineer with the Anglo American Industrial Corporation ("AMIC"), conceived of and disclosed the subject matter of the Bosch patents at issue during a September 17, 1992 meeting where Mr. Olivier, an AMIC business executive, and Messrs. Merkel and Leutsch, two of the named inventors on the '974 patent, were in attendance.  All parties agree that the discussion at that meeting centered on problems with AMIC's Variflex wiper blade at high speed.  All parties

agree that someone proposed placing a flexible spoiler on top of the Variflex blade, and that Mr. Fehrsen apparently copied the idea into his notes. The entire dispute centers around who proposed putting the spoiler on the beam.

Based on Mr. Fehrsen's testimony, Pylon contends that it was he who had the flexible-spoiler idea. But the law requires more than that to justify revoking the patent that was years ago issued to Bosch: it requires that Mr. Fehrsen's testimony be corroborated. Pylon raises, in total, Mr. Fehrsen's notes, a letter written before the meeting, and the vague testimony of Mr. Olivier as corroborating references. As discussed in Bosch's opening brief, these items fail to sufficiently corroborate Mr. Fehrsen's testimony.

Additionally, in its opposition, Pylon raises, for the first time, entirely new allegations of inequitable conduct with respect to (i) a testing report prepared by Adriaan Swanepoel, and (ii) Mr. Fehrsen's "inclined blade" idea. Such late and inadequate allegations run afoul of the pleading requirements of the Federal Rules of Civil Procedure as well as both Third Circuit and Federal Circuit precedent.

Because Pylon, as a matter of law, cannot prove inequitable conduct or derivation regarding the Bosch patents at issue, Bosch respectfully requests that its motion be granted in its entirety.

## FACTUAL BACKGROUND

Pylon asserts that AMIC sought patent protection for its Variflex project. (D.I. 206 at 6). However, AMIC never filed any patent applications on anything disclosed in the Bosch patents at issue. (Ex. 79, Olivier Dep. at 117:12–18 (BOS-SJA963))[1]. ███████████████

---

[1]   Unless otherwise specified, citations to "Ex." refer to exhibits in either (1) the Joint Appendix of Exhibits to the Parties' Opening Claim Construction Briefs, which was previously filed as D.I. 162–166, (2) Bosch's Appendix of Exhibits to Its Summary Judgment Briefs, which (continued...)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████  Indeed, the only party who has ever filed any patent application related to the inventions of the Bosch patents at issue is, not surprisingly, the true owner of same: Bosch.

Pylon has characterized Messrs. Swanepoel, Fehrsen and Olivier as disinterested witnesses who sought to correct an injustice once it was brought to their attention.  However, both Mr. Swanepoel and Mr. Fehrsen examined Bosch prototype blades in December, 1997, which were the same as those Bosch eventually put on the market.  (Ex. 81, Swanepoel Dep. at 99:11–101:2 (BOS-SJA971); ████████████████; Ex. 83, Fehrsen Dep. at 105:18– 105:25 (BOS-SJA982)).  Neither one at the time expressed any concern that Bosch was commercializing their invention.  (Ex. 81, Swanepoel Dep. at 99:11–101:2 (BOS-SJA971)). Indeed, it was after seeing these prototypes that Mr. Fehrsen helped negotiate the sale of AMIC's technology to Trico.  (Ex. 83, Fehrsen Dep. at 61:11–24, 106:21–24 (BOS-SJA979, 982)).  The AMIC/Trico purchase agreement, negotiated by Mr. Fehrsen, contained an express warranty that "Bosch has not made any use of any information disclosed by [AMIC] to Bosch."  (Ex. 42 at ¶ 2.6 (BOS-SJA588)).

---

was previously filed as D.I. 175–176, (3) Bosch's Supplemental Appendix of Exhibits to Its Summary Judgment Briefs, which was previously filed as D.I. 198, and (4) Bosch's Second Supplemental Appendix of Exhibits to Its Summary Judgment Briefs, which is submitted herewith and contains Exhibits 72–86.  Citations to the Joint Appendix are denoted by the pin-cites "JA___," while citations to Plaintiff Bosch's appendices are denoted by the pin-cites "BOS-SJA___."

As noted, Mr. Fehrsen was heavily involved in negotiating the sale of AMIC's technology to Trico. (Ex. 83, Fehrsen Dep. at 61:11–24 (BOS-SJA979)). At the same time, Mr. Swanepoel was negotiating his own contract to work for Trico as a consultant. (Ex. 35, Swanepoel Dep. at 73:4–20 (BOS-SJA541)). Mr. Olivier, another AMIC employee at the September 17 meeting, eventually signed the purchase agreement on behalf of AMIC. (Ex. 79, Olivier Dep. at 106:12–24 (BOS-SJA962)). That purchase agreement, as noted above, contained an express warranty that Bosch was not using any information disclosed by AMIC. At the conclusion of the negotiations, Bosch competitor Trico had purchased all of AMIC's wiper technology and agreed to employ, as consultants, both Messrs. Fehrsen and Swanepoel. (Ex. 42 at ¶ 9.6, Schedule C (BOS-SJA595, 608); Ex. 83, Fehrsen Dep. at 63:20–64:1 (BOS-SJA979); Ex. 35, Swanepoel Dep. at 73:4–20 (BOS-SJA541)). Messrs. Fehrsen and Swanepoel continued to work as consultants for Trico for some years after the purchase—indeed Mr. Swanepoel is still employed as a consultant for Trico. (Ex. 83, Fehrsen Dep. at 119:5–121:11; 122:13–123:9 (BOS-SJA983–84); Ex. 35, Swanepoel Dep. at 73:4–20 (BOS-SJA541)).

In its opposition, Pylon does not dispute that none of the inventors of the '905 or '434 patents was present at the September 17, 1992 meeting where Mr. Fehrsen allegedly disclosed his invention. (D.I. 206 at 7). Indeed, Pylon admits that the attendees at the September 17, 1992 meeting included, Messrs. Fehrsen and Olivier from AMIC, and Messrs. Merkel and Leutsch, two of the named inventors on the Bosch '974 patent. (*Id.*)

## ARGUMENT

## I.    PYLON DID NOT PROPERLY PLEAD ITS 102(F) AFFIRMATIVE DEFENSE

Pylon asserts that its recitation that the Bosch patents at issue are invalid under 35 U.S.C. § 102 generally constitutes proper notice of a § 102(f) defense. (D.I. 206 at 18–19). Pylon further cites to the recitation of facts in Count III of its Counterclaim to support its § 102(f)

4

invalidity defense. Pylon admits, however, that its counterclaim described the alleged

unenforceability of the Bosch patents, not invalidity under 35 U.S.C. § 102(f). (Id.)

Further, Pylon has not provided the requisite evidence to support a finding of invalidity

under 102(f). Invalidity by derivation requires a showing that the supposed prior inventor had a

conception of all elements of the claims. See Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363,

1376–77 (Fed. Cir. 2004); Singh v. Brake, 222 F.3d 1362, 1367 (Fed. Cir. 2000) ("A conception

must encompass all limitations of the claimed invention."). As noted in Bosch's opening brief,

Pylon failed to provide any claim charts or other element by element analysis comparing the

claims of the '974 patent to Mr. Fehrsen's supposed invention and its § 102(f) defense remains

deficient. (D.I. 174 at 18). Bosch's motion should therefore be granted.

## II.   PYLON HAS NOT SHOWN ANY CORROBORATION OF MR. FEHRSEN'S TESTIMONY

### A.   The Fehrsen Notes Do Not Corroborate Mr. Fehrsen's Testimony

Pylon asserts that notes taken by Mr. Fehrsen to memorialize the discussions at the

September 17 meeting (Ex. 40 at 4 (BOS-SJA581) ("the Fehrsen notes")) corroborate Mr.

Fehrsen's testimony. (D.I. 206 at 22–24). Pylon is incorrect. The Fehrsen notes merely indicate

that someone at the September 17, 1992 meeting proposed an idea and Mr. Fehrsen copied it into

his notes. Pylon's opposition is long on conclusions, but short on facts on this point. In similar

circumstances, the Federal Circuit has held that documents that do not identify what subject

matter a supposed co-inventor contributed are not corroborating. GemStar-TV Guide Int'l, Inc.

v. Int'l Trade Comm'n, 383 F.3d 1352, 1382–83 (Fed. Cir. 2004). The supposed inventor's "own

testimony cannot fill in these gaps in the product disclosure documents to establish whether [the

supposed inventor] contributed to the subject matter of the invention claimed" in the patent. Id.

at 1383.

In *Gemstar*, the Federal Circuit reversed a decision of the U.S. International Trade Commission (ITC) which had found a putative co-inventor's testimony corroborated by product disclosures. *Id.* at 1382. There, the supposedly corroborating documentary evidence did not "explicitly state what subject matter" was contributed by the supposed co-inventor. *Id.* at 1382–83. The lack of evidence to show that the supposed co-inventor's "contributions exceeded the prior art or were part of the invention claimed in the" patent-in-suit doomed the inventorship claim. *Id.* at 1382. Pylon has not suggested that the notes somehow indicate who conceived of the spoiler on a wiper blade, merely that they corroborate Mr. Fehrsen's testimony that he drew the figure in his notes. (D.I. 206 at 23). Fehrsen's notes, just like the product disclosures in Gemstar, do not in any way identify who first discussed the invention at issue, and thus cannot serve to corroborate either prior conception or enabling disclosure.

Pylon further argues that the Fehrsen notes corroborate Mr. Fehrsen's testimony that he disclosed the subject matter of the '905 patent at the September 17 meeting. (D.I. 206 at 26). Pylon declines to explain how the notes accomplish this. Instead, it simply cites to Mr. Fehrsen's testimony that he disclosed end caps to Bosch GmbH at the September 17 meeting (and Mr. Olivier's testimony that he "believes" such were disclosed). Pylon further asserts that spoilers with diverging legs were known in the art. (*Id.*) These two assertions, even if true, do not amount to an enabling disclosure of the invention claimed in the '905 patent, as required. *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Pylon makes no attempt to show that every element of the subject matter of the '905 patent was conceived or disclosed and cites to no testimony, document or other source to support Mr. Fehrsen's claim.

6

Pylon has not asserted that the notes reflect the authorship of the spoiler on blade idea, nor has it asserted that the inventions of the '905 and '434 patents are described in the notes. Pylon's conclusory assertions that the notes corroborate Mr. Fehrsen's testimony are unfounded.

### B.       The Adams Letter Does Not Corroborate Mr. Fehrsen's Testimony

Pylon cites to a letter from South African law firm Adams & Adams as corroborating Mr. Fehrsen's testimony. (Ex. 41 (BOS-SJA584)).  Presumably, Pylon believes this letter corroborates a prior conception of the subject matter of the '974 patent by Mr. Fehrsen, as the letter is dated April 1992, months before the September 17, 1992 meeting at issue.  However, as noted in Bosch's opening brief, all the letter corroborates is the idea of a spoiler combined with a beam blade. (D.I. 174 at 20).  It does not state what kind of spoiler was being considered—the flexible, continuous spoiler that is the subject of the '974 patent, or the well-known rigid spoilers previously used on conventional blades that had already been (unsuccessfully) proposed by AMIC to be used on beam blades (*see* section III.B.3 below).  Such sparse details (literally less than a single sentence in the original letter) cannot corroborate that Mr. Fehrsen was in possession of the inventions of the patents at issue. *Burroughs Wellcome*, 40 F.3d at 1228 ("Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.  Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention.").  In any event, the '974 patent does not merely relate to a spoiler on a beam blade, but in particular, a *flexible* spoiler *on top of the* support element of a beam blade. (Ex. 1 (JA5)).  The placement of the spoiler on top of the support element, which raises the profile of the blade, is a key break with the previously accepted conventional wisdom on beam blades, *viz.* that lift off

7

would be minimized by minimizing the profile. (Ex. 53, Dubowsky Rebuttal Report at 9 (BOS-SJA713)).

Pylon makes much of "the likelihood that a letter written in April 1992 reflecting an interest in 'the use of a spoiler or aerofoil' on a beam wiper blade is related to Mr. Fehrsen's disclosure . . . in September, 1992." (D.I. 206 at 27). Such an appeal to "likelihoods" and "common sense" do not rise to the level of clear and convincing evidence of a prior conception, particularly when, as here, the general idea of a spoiler on a wiper blade is decades old. (Ex. 86, Dubowsky Rebuttal at 26–27 (BOS-SJA1021–22).

Pylon seems to argue that Mr. Fehrsen's testimony—testimony which requires corroboration—somehow provides support for the notion that the Adams letter corroborates that same testimony.[2] (D.I. 206 at 27). This circular approach to corroboration finds no support in law or reason. Pylon also argues that Mr. Olivier's testimony indicates that the Adams letter was related to the inventions disclosed in the Fehrsen notes. (*Id.*) This is a fabrication. The cited portions of Mr. Olivier's testimony only support that "there was a discussion in which . . . the use of a spoiler or aerofoil on a beam blade was discussed." (Ex. 79, Olivier Tr. at 27:19–23, 36:9–37:6 (BOS-SJA953–54)). Pylon cites no testimony linking this discussion to the Fehrsen notes. In any event, this letter does not corroborate an enabling disclosure, a necessary element of a 102(f) argument.

---

[2]    Pylon's citation to Mr. Swanepoel's testimony regarding the letter is similarly unavailing. As a putative co-inventor, Mr. Swanepoel's testimony itself requires corroboration. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006). Moreover, Mr. Swanepoel is a consultant for Bosch competitor Trico. (Ex. 35, Swanepoel Dep. at 73:4–20 (BOS-SJA541); ██████████████████████████████████).

### C.   Mr. Olivier's Testimony Does Not Corroborate Mr. Fehrsen's Testimony

Pylon admits, as it must, that there is a very heavy burden in challenging validity based on oral testimony. (D.I. 206 at 28). As shown above and in Bosch's opening papers, neither the Fehrsen notes nor the Adams letter corroborates Mr. Fehrsen's later testimony about who conceived of the flexible-spoiler idea at the 1992 meeting. Further, Pylon admits that of the persons present at the meeting, only Mr. Olivier agrees with Mr. Fehrsen's testimony. (D.I. 206 at 2, 27-29). As noted in Bosch's opening papers, Mr. Olivier's testimony is insufficient to corroborate that of Mr. Fehrsen. (D.I. 174 at 21–22 (citing *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998)).

Pylon asserts that there is "no evidence that Mssrs. [*sic*] Olivier and Fehrsen had anything more than a business relationship that ended over a decade ago." (D.I. 206 at 28). This ignores Mr. Olivier's sworn deposition testimony, wherein he stated that he was still in contact with Mr. Fehrsen, that he himself supplied Mr. Fehrsen's contact information to Pylon in the present matter and that he and Mr. Fehrsen discussed the events at issue in the days before Mr. Olivier's deposition. (Ex. 37, Olivier Dep. at 94:10–96:9 (BOS-SJA570); Ex. 79, Olivier Dep. at 98:18–101:9 (BOS-SJA960)). Moreover, Mr. Olivier was heavily involved in the purchase agreement between Trico and AMIC, and, in fact, signed the document on behalf of AMIC. (Ex. 79, Olivier Dep. at 106:12–24 (BOS-SJA962)). Mr. Olivier thus has an interest in maintaining his personal reputation for fair dealing, which could be injured by a showing that he sold something (AMIC's wiper blade business) that was worth less than advertised. *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002) (finding witness interested because he was previously a salesperson who did business with a party).

Furthermore, Mr. Olivier testified that he was not familiar with the technical details of what was being presented. (Ex. 37, Olivier Dep. at 93:12–94:9 (BOS-SJA570)). Indeed, Mr.

Olivier initially could only speculate about what was disclosed at the September 17 meeting. (Ex. 79, Olivier Dep. at 55:16–21 (BOS-SJA956)) (answering "I would imagine so" when asked whether AMIC personnel disclosed the idea of a spoiler at the meeting)). It was only after rereading Mr. Fehrsen's 2001 declaration **and** Mr. Fehrsen's notes that Mr. Olivier was allegedly able to recall any disclosure. (Ex. 79, Olivier Dep. at 56:5–63:14 (BOS-SJA958)). Such testimony is not corroborative. *See Juicy Whip*, 292 F.3d at 743 (holding oral testimony not corroborative when events were eight and twelve years before the trial and witnesses included customer of defendant).

As noted in Bosch's opening brief, the other *Woodland Trust* factors similarly weigh against a finding of corroboration. (D.I. 174 at 21–22). Pylon's unsupported assertion that there was a "high probability" of a prior use falls flat in light of the fact that there was no successful beam blade product before the Bosch products incorporating the subject matter of the '974 patent. (D.I. 174 at 22). Pylon also asserts that Mr. Fehrsen's supposed invention had a substantial impact on the industry and great commercial value because it was sold to Trico. (D.I. 206 at 28). Pylon is wrong. ██████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████ Indeed, Pylon provides no explanation as to how any beam blade manufactured by Trico incorporates Mr. Fehrsen's supposed invention.

Finally, Pylon includes a list of assertions that it argues obviates the vast time gap between the September 17, 1992 meeting and the current action. (D.I. 206 at 29). The fact that Messrs. Swanepoel and Olivier testified consistently with Mr. Fehrsen is not surprising given that both had access to the 2001 Fehrsen declaration—indeed, Mr. Olivier only testified with any

confidence after reviewing the declaration. (*See supra* at 10). That such testimony is consistent with Mr. Fehrsen's declaration is hardly evidence of reliability. Messrs. Fehrsen and Swanepoel are putative co-inventors, according to Pylon, and therefore are "interested witnesses." *Medichem*, 437 F.3d at 1171. Mr. Olivier, despite Pylon's protestations, is hardly a disinterested witness. As noted above, Mr. Olivier signed the AMIC-Trico purchase agreement on behalf of AMIC and thus has a reputational interest in maintaining its value. (Ex. 79, Olivier Dep. at 106:12–24 (BOS-SJA962)). Testimony "of interested persons and their friends, particularly as to long past events" is exactly what the *Woodland Trust* factors are designed to protect against. *Woodland Trust*, 148 F.3d at 1371. Mr. Olivier's testimony, which Pylon asserts corroborates Mr. Fehrsen's allegations of disclosure at the September 17 meeting, is insufficient to carry the "very heavy burden" of showing, by clear and convincing evidence, that Mr. Fehrsen made an enabling disclosure of the subject matter contained in the Bosch patents at issue. *Id.* Absent such corroboration, Pylon's defense must fail.

### D.     Pylon Cannot Show Corroboration of Prior Conception or Disclosure of the Subject Matter of the '434 Patent

Pylon claims that Mr. Fehrsen's testimony that he conceived of and disclosed an end cap to Bosch GmbH at the September 17, 1992 meeting is corroborated by the testimony of Messrs. Swanepoel and Olivier. (D.I. 206 at 29–30). However, the cited Olivier testimony contains only vague references to end caps or clips that he "believes" were disclosed to Bosch. (Ex. 37, Olivier Dep. at 65:20–23 (BOS-SJA568)). Pylon cites no testimony where Mr. Olivier evinces any familiarity with the design of the end caps supposedly disclosed, such that he can corroborate a prior conception. Similarly, Pylon's citation to Mr. Swanepoel's testimony fails to corroborate as well. In the cited portion, Mr. Swanepoel merely recites that an end cap was disclosed in a terminology sheet and that Mr. Fehrsen had the most knowledge regarding it. (Ex.

11

81, Swanepoel Dep. at 65:1–66:22 (BOS-SJA970)). Such disclaimer of knowledge does not rise to a corroboration of conception. Pylon concludes that the cited testimony, in conjunction with the 2001 Fehrsen declaration, somehow will allow it to show conception. As noted elsewhere, the Fehrsen declaration, made nine years after the events at issue, is inadmissible hearsay. The cited testimony fails to show any evidence of prior conception or disclosure. Mr. Fehrsen's testimony has not been corroborated.

The sole documentary evidence Pylon cites to as corroborating conception or disclosure is the terminology sheet (Ex. 85 (BOS-SJA1001)).[3] As Bosch has explained in its opening brief, the terminology sheet, █████████████████████████████████████████████████████████████████ does not disclose an end cap that utilizes opposing detent shoulders to lock in place, as required by the claims of the '434 patent. (D.I. 174 at 21). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Pylon has therefore failed to corroborate Mr. Fehrsen's testimony regarding the '434 patent.

### E. Pylon Does Not Assert that Mr. Fehrsen's Testimony Regarding the '905 Patent has been Corroborated

Aside from its brief and inaccurate statement that the Fehrsen notes corroborate a disclosure of the subject matter of the '905 patent, as discussed above, Pylon has put forward no evidence to corroborate Mr. Fehrsen's claims of either conception or disclosure of the subject

---

[3]     Pylon states in a heading that Mr. Fehrsen's notes corroborate a disclosure of the subject matter of the '434 patent, but neglects to explain how. (*See* D.I. 206 at 24–26).

matter of this patent. Pylon has therefore failed to carry its burden to show a genuine issue of material fact regarding the '905 patent, and Bosch's motion should be granted as it relates to this patent.

**F.      Pylon's "Other Evidence" that Purports to Corroborate Mr. Fehrsen's Testimony is Deficient**

Pylon includes a laundry list of other purported "evidence," all of which it asserts as having some corroborative value. Without exception, every bit of this supposed "evidence" is either factually or legally deficient. Notably, Pylon does not attempt to illustrate any way in which the evidence is corroborative. The declarations of Swanepoel and Fehrsen, both from 2001, are inadmissible hearsay. Swanepoel's deposition and his testing report are inapplicable, as he was admittedly not present at the September 17 meeting and Pylon has declined to explain how they might corroborate prior conception. Pylon similarly fails to explain how Mr. Fehrsen's patent, with an application date of October 12, 1998, long after the events in question, corroborates prior conception or enabling disclosure of any invention of the Bosch patents at issue. The Bosch GmbH-AMIC correspondence is based on hearsay and, in any event, took place years after the September 17, 1992 meeting. Finally, Pylon asserts that unidentified "admissions" of Messrs. Leutsch, Merkel and Kotlarski supposedly corroborate Mr. Fehrsen's testimony. However, Pylon declines to list a single such admission, despite how beneficial such an admission would be to Pylon's case. Pylon has failed to carry its burden of showing a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Bosch's motion should be granted.

III.   **PYLON CANNOT MEET THE NECESSARY STANDARD TO SUPPORT A FINDING OF INEQUITABLE CONDUCT**

A.   **Bosch Did Not Commit Inequitable Conduct By Not Naming Mr. Fehrsen As An Inventor**

As noted above and in Bosch's opening brief, the proper inventors were named on the Bosch patents at issue.  Therefore, there has been no material omission and there is no inequitable conduct.  *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1582 (Fed. Cir. 1997); *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1375 (Fed. Cir. 2008).  Pylon's argument makes much of the supposed corroboration of Mr. Fehrsen's testimony—shown to be insufficient above—but makes no showing and cites no evidence of any deceptive intent on the part of anyone connected to the prosecution of the '974 patent.  Such a lack of evidence does not make an inference of intent to deceive "the single most reasonable inference able to be drawn from the evidence."  *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

B.   **Bosch's Alleged Failure to Disclose the Swanepoel Testing Report Does Not Support an Inequitable Conduct Claim**

In its opposition, Pylon, for the first time, raises a supposed failure to disclose a testing report made by Mr. Swanepoel in 1991.  (D.I. 206 at 5, 32–35).  Adding an argument at such a late date is improper.[4]  In any event, the testing report is not prior art, not material, and Pylon has not demonstrated any intent to deceive on the part of the Bosch inventors.

---

[4]   Buttressing a failing argument with new, previously undisclosed theories has become Pylon's standard operating procedure. *See, e.g.*, D.I. 191, Bosch's Motion to Strike the Supplemental Report of Franz Buechele.

14

1.    **Pylon never pleaded the circumstances regarding the testing report as inequitable conduct**

As noted, Pylon has never pled the testing report as a basis for inequitable conduct. Such a lack of disclosure is in violation of both Fed. R. Civ. P. 8(c)(1) and 9(b), as well as Third and Federal Circuit precedent. Simply put, Pylon admittedly had notice of any and all information it required to plead inequitable conduct since at least May of 2009. (D.I. 206 at 21). Its failure to make any pleading or interrogatory response describing this defense until the opposition to a motion for summary judgment is not, as required by Third Circuit precedent, raising the defense "at the earliest practicable moment." *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). Pylon's failure to plead also runs afoul of the Federal Circuit's requirement that the "who, what, when, where, and how" must be "pleaded in detail." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Pylon's failure to plead the necessary facts to support its claim of inequitable conduct is fatal to this claim. *Id.* at 1330. To allow Pylon to proceed under this theory would severely prejudice Bosch, as Bosch would now be denied the opportunity to depose Messrs. Swanepoel and Fehrsen, or obtain expert testimony, as regards this document. This failure alone justifies granting Bosch's motion as regards the testing report.

2.    **The Swanepoel testing report is not prior art**

Pylon asserts that the Swanepoel testing report is a material reference that was required to be disclosed. (D.I. 206 at 32-35). However, Pylon does not identify under what provision of the patent statute the testing report qualifies as prior art. In fact, it is not prior art (*e.g.*, it is not a printed publication), and therefore could never have needed to be disclosed. *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995).

15

### 3.   The Swanepoel testing report is not material

Even if the Swanepoel testing report did constitute prior art, which it does not, the report

is not material because ███████████████████████████████ is not relevant to the

claimed subject matter of the '974 patent.  For example, the spoiler is not "mounted directly to"

the support element as required by the claims of the '974 patent.  (Ex. 1, '974 patent, claim 1

(JA5)).  Additionally, the claims of the '974 patent require a spoiler that forms "an acute angle

with a plane that extends parallel to a plane formed by said convex surface."  Such a spoiler must

be flexible so that it can be maintained in parallel with the beam.  A spoiler like Swanepoel's,

███████████████████████████████████████████████████████████

████████████████████.  The use of a flexible spoiler is at the heart of the claims of the '974

patent, and represented a leap over the prior art.  (Ex. 86, Dubowsky Rebuttal Report at 26–27

(BOS-SJA1021–22)).  Such significant unobvious differences between the testing report and the

subject matter of the '974 patent belie Pylon's protestations of materiality.  *Pac. Furniture Mfg.*

*Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 1114 (Fed. Cir. 1986).

Further, Pylon has not shown how the testing report would be anything other than

cumulative to the prior art already in the prosecution history.  Indeed, Pylon "does not identify

the particular claim limitations, or combination of claim limitations, that are supposedly absent

from the information of record. Such allegations are necessary to explain both 'why' the

withheld information is material and not cumulative, and  'how' an examiner would have used

this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30.

Pylon's lack of such allegations, in its pleading or in its opposition, is fatal to its claim of

inequitable conduct. *Id.*

16

### 4.     Pylon has not shown any evidence of intent to deceive

Pylon cannot point to any evidence that the Bosch inventors, by not disclosing a testing report it received almost 6 years prior to the filing date of the patents at issue, regarding a never-realized product that failed to meet operability standards, had the requisite intent to deceive the Patent Office.  Pylon's insinuations are insufficient to raise an inference of such intent that is the "single most reasonable inference able to be drawn from the evidence." *Star Sci.*, 537 F.3d at 1366.

### C.     Bosch Did Not Commit Inequitable Conduct By Not Disclosing the Fehrsen Inclined Beam Idea During the Prosecution of the Bosch Patents at Issue

#### 1.     Pylon never pleaded lack of disclosure of the Fehrsen inclined beam as inequitable conduct

As with the Swanepoel testing report above, Pylon failed to plead any details of supposed inequitable conduct regarding the Fehrsen inclined beam idea.  For the same reasons, the Court should not entertain Pylon's post-hoc attempts to manufacture new arguments.

#### 2.     The Fehrsen inclined beam is not prior art to the Bosch patents at issue

The Fehrsen inclined beam also was not disclosed in any publication, nor patented or in public use in this or any other country.  It therefore does not qualify as prior art under 102(b) and need not be disclosed.  In any event, as discussed below, it is not material to the Bosch patents.

#### 3.     The Fehrsen inclined beam is not material to the Bosch patents at issue

Bosch's patent application concerned the use of a flexible spoiler mounted along the top of the metal spring beam, not Fehrsen's idea of tilting the beam instead of using the flexible spoiler (*see, e.g.*, Ex. 1 at Fig. 3 (JA3)).  Bosch never claimed or attempted to claim Fehrsen's inclined-beam concept, which is not material to the different concept of using a flexible spoiler.

17

It is Pylon's burden to show that the supposedly omitted prior art is material and not cumulative. *Exergen*, 575 F.3d at 1329–30.

### 4.     Pylon has not shown any evidence of intent to deceive

As with the Swanepoel testing report, Pylon has not provided a scintilla of evidence that the Bosch inventors withheld the inclined beam with an intent to deceive the Patent Office. Again, seven years had passed between the September 17, 1992 meeting and the filing of the application that matured into the '974 patent. "[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Exergen*, 575 F.3d at 1330. Moreover, no prototype or any further design work was ever done on the inclined beam idea. These facts do not support an inference of intent to deceive on the part of the Bosch inventors. *Star Sci.*, 537 F.3d at 1366.

### D.     Bosch Did not Commit Inequitable Conduct With Respect To The '434 Patent

As noted in Bosch's opening papers, Pylon has not and cannot meet the inequitable conduct standard most recently set forward by the Federal Circuit in *Exergen*. Pylon states that Mr. Kotlarski, a named inventor on the '434 patent, "had access to files showing AMIC's end caps" and "must have reviewed at least the end caps previously used on the Variflex project." (D.I. 206 at 38). Pylon has not carried its burden of showing materiality in the Variflex end caps, but even if such were material "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Exergen*, 575 F.3d at 1330. Pylon's allegations of deceptive intent regarding Mr. Kotlarski are based solely on his supposed knowledge of the Variflex end caps. Even if these were material, "materiality does not presume intent, which is a separate and essential component of inequitable conduct." *Star Sci.*, 537 F.3d at 1366. Pylon's allegations that Bosch GmbH "tried to hide its

18

deceptive behavior by attempting to purchase the beam blade technology from AMIC and Trico" find no support in the record (and indeed, Pylon cites nothing other than Mr. Fehrsen's self-serving testimony). (D.I. 206 at 39). Pylon has thus failed to provide *anything* other than supposition and innuendo to support its allegations of deceptive intent. When such a "threshold level of intent to deceive *or* materiality is not established by clear and convincing evidence, the district court does not have any discretion to exercise and cannot hold the patent unenforceable. . . ." *Star Sci.*, 537 F.3d at 1367 (emphasis in original).

**E.     Bosch Did Not Commit Inequitable Conduct With Respect To The '905 Patent**

Pylon asserts that "Bosch GmbH and its internal patent counsel" committed inequitable conduct during the prosecution of the '905 patent by withholding "contributions" made by Mr. Fehrsen. (D.I. 206 at 39–40). As noted in Bosch's opening brief, Pylon ignores the Federal Circuit's recent pronouncements that a claim of inequitable conduct must "name the specific individual associated with the filing or prosecution of the application issuing as the [patent at issue], who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329. An organization cannot commit inequitable conduct. *Id.* Pylon has thus failed to meet the *Exergen* standard at the outset.[5]

Similarly, Pylon has failed to plead or argue any facts that would support an intent to deceive. As noted, Pylon has not named a single individual who both knew of the supposed material information and withheld it. With no individual noted, no intent to deceive can arise, and no inequitable conduct can be found.

---

[5]     The Court has noted the paucity of Pylon's allegations regarding the '905 patent. (D.I. 225 at 10 n.35).

## CONCLUSION

For the reasons stated above and in Bosch's opening papers, Bosch respectfully requests

that its motion be granted.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:   /s/ David E. Moore

Michael J. Lennon                    Richard L. Horwitz (#2246)
Mark A. Hannemann                    David E. Moore (#3983)
Jeffrey S. Ginsberg                  Hercules Plaza, 6th Floor
KENYON & KENYON LLP                  1313 N. Market Street
One Broadway                         Wilmington, DE  19801
New York, NY 10004                   Tel:  (302) 984-6000
Tel:  (212) 425-7200                 rhorwitz@potteranderson.com
                                     dmoore@potteranderson.com

Dated:  January 12, 2010
Public Version Dated: January 19, 2010     *Attorneys for Plaintiff Robert Bosch LLC*
 950074 / 33181

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 19, 2010, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on January 19, 2010, the attached document was Electronically Mailed to the following person(s):

Ashley B. Stitzer
Stephen B. Brauerman
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
astitzer@bayardlaw.com
sbrauerman@bayardlaw.com

James A. Gale
Feldman Gale, P.A.
One Biscayne Tower, 30th Floor
2 S. Biscayne Blvd.
Miami, FL 33139
jgale@feldmangale.com

Gregory L. Hillyer
Javier Sobrado
Feldman Gale, P.A.
1420 Montgomery Lane, Suite 400
Bethesda, MD 20814
ghillyer@feldmangale.com
jsobrado@feldmangale.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

890716 / 33181