IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT BOSCH, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 08-542-SLR |
| | ) | |
| PYLON MANUFACTURING CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 30th day of March, 2010, having heard argument on, and
having reviewed the papers submitted in connection with, the parties' proposed claim
construction;

IT IS ORDERED that the disputed claim language of U.S. Patent Nos. 6,292,974
("the '974 patent"), 6,675,434 ("the '434 patent"), 6,944,905 ("the '905 patent"),
6,978,512 ("the '512 patent") and 6,640,380 ("the '380 patent") shall be construed
consistent with the tenets of claim construction set forth by the United States Court of
Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir.
2005), as follows:

1. "**[C]omponent**:"[1] "A single- or multiple-part structure having a cross-section
in the shape of a triangle or wedge." This construction is consistent with the claims as
well as the specification. (col. 2:21-23; col. 3:33; col. 4:41) The court finds no support
for defendant's proposed construction requiring the component to be "solid." Defendant
also seeks to limit this construction according to one embodiment of the invention which

---

[1]'974 patent, claim 1 (and dependent claims).

requires the component to have a hardness no greater than the hardness of the wiper strip. (col. 3:27-28) However, such an interpretation would render superfluous the hardness limitation of dependent claim 6, which requires that the component have "a hardness which is no greater than a hardness of said [] wiper strip." Moreover, in its traversal of Ludwig, the patentee explained the hardness relationship of these two items, noting that the wiper strip and the component "can have different hardnesses, which on the other hand they must not necessarily have as well." (D.I. 162 at JA00190-91)

2. "**[M]ounted to said concave surface of said support element**:"[2] "Secured to." This construction is consistent with the claims as well as the specification. (col. 2:16-19; col. 2:29-30)

3. "**[M]ounted directly to the convex surface of said support element**:"[3] "Secured directly to." This construction is consistent with the claims as well as the specification. (col. 2:16-19; col. 2:29-30)

4. "**[A] leading edge face**:"[4] "The surface of the component [forming an acute angle with the surface of the window] facing into the wind." The parties generally agree that this limitation requires the surface of the component to face into the wind. The bracketed phrase, however, is contained in claim 1 and illuminates the construed phrase.

---

[2] '974 patent, claim 1 (and dependent claims).

[3] '974 patent, claim 1(and dependent claims).

[4] '974 patent, claim 1 (and dependent claims).

2

5. "**[W]herein said leading edge face is disposed on a face of said support element which faces away from the window**:"[5] Insofar as this phrase is unsupported by the specification and has no apparent plain meaning, it will not be construed.

6. "**[W]herein each crosspiece disposed at the end sections of the two spring strips is provided with a covering cap**:"[6] "Crosspieces must be located at the terminal portions of the spring strips." The construction is consistent with the specification of the '512 patent, which does not disclose an embodiment having crosspieces located other than at the terminal portions of the spring strips. It is likewise consistent with the prosecution history, in which the examiner rejected the claims of the '512 patent as anticipated by several prior art wiper blades having crosspieces disposed at the ends of the spring strips. (D.I. 165 at JA01077) The applicant did not traverse this rejection by noting that the crosspieces of the '512 patent could be disposed elsewhere along the spring strips. (*Id.* at JA01106) Nor can plaintiff convincingly invoke the doctrine of claim differentiation in its argument that dependent claim 4, which requires "at least one crosspiece . . . disposed at each end section[,]" mandates a broader interpretation of independent claim 1. *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1367-68 (Fed. Cir. 2000) (written description and prosecution history rebut any presumption arising from the doctrine of claim differentiation).

---

[5]'974 patent, claim 2.

[6]'512 patent, claim 1 (and dependent claims).

3

7. "**[G]roove-like constrictions**:"[7]  "A longitudinal groove wherein the lateral
defining surface opposite the lower band surface of the spring strips is circular."  This
construction is consistent with the only embodiments disclosed by the '512 patent.  (col.
6:58-62; col. 7:24-25; col. 7:56-59)  A construction requiring a circular lateral defining
surface is supported by the prosecution history.  During prosecution, the examiner
rejected original claim 12 (now claim 9) under 35 U.S.C. § 112 as indefinite.  (*Id.* at
JA01077)  In response, the applicant cited the description of the groove-like
constrictions in Figure 6.  (*Id.* at JA01106)  With respect to Figure 6, the specification
explains that "the two lateral defining surfaces of the constrictions are embodied
spherically . . . ."  (col. 6:16-19)  Finally, spherical must be understood to mean circular,
as the lateral surface cannot be spherical in cross section.  (*See* D.I. 165 at JA01216)

8. "**[A] wiper blade part**:"[8]  Having an apparent plain meaning, no construction
is necessary for this limitation.  The parties do not dispute that this limitation is used
interchangeably with "device piece."  There is no intrinsic support for defendant's
proposed construction that would require the wiper blade part to be "directly connected"
to the support element.  Defendant further proposes that the wiper blade part must be
construed to connect to the "middle of the support element."  Such a construction,
however, would render superfluous the portion of claim 13 which states that "the
support element, **in its middle section**, includes a wiper blade part . . . ."  (emphasis
added)

---

[7]'512 patent, claims 9 and 13.

[8]'905 patent, claim 13.

4

9. **[W]ind deflection strip is disposed between and in contact with each respective end cap and the device piece:**[9] This disputed phrase likewise has a plain meaning and requires no construction. Defendant's proposed construction requiring the contact to be "constant, continuous and simultaneous" finds no support in the specification or the prosecution history.

10. **[B]ase body:**[10] "The substantially plate-like section of the termination part." This construction is consistent with the specification, which describes the base body as "plate-like" or "approximately plate-like." (col. 3:28-30; col. 5:11-12; Figs. 3-5, 7, 9, 10)

11. **[B]racing itself on the wiper blade:**[11] "Supporting itself on both the support element and wiper strip." Although claim 1 refers to bracing on both wiper strip (20) and support element (16), the inventive nature of the '434 patent, illuminated by the intrinsic record, does not require that such bracing be simultaneous. (*See* col. 1:52-2:17)

12. **[D]etent shoulder:**[12] "Part of a structure [support element or base body] that secures that structure to another." This construction is consistent with the specification. (col. 4:39-45; Figs. 3-5)

---

[9] '905 patent, claim 13.

[10] '434 patent, claim 1 (and dependent claims).

[11] '434 patent, claim 1 (and dependent claims).

[12] '434 patent, claims 1 (and dependent claims).

13. "**[P]ointing toward the other end portion**:"[13] "Facing toward the other end portion." This construction is consistent with the specification. (col. 5:21-25) The court rejects defendant's proposal that the face be angled toward the other end portion. This construction would read out several embodiments in which the detent shoulders are positioned perpendicular to (and not angled toward) the other end portion. (Figs. 6, 8)

14. "**[C]avities**:"[14] The language of claim 4 sufficiently describes the meaning of this limitation; further parsing would render this language superfluous.

15. "**[P]rotrusions protruding**;" "**[A] protrusion protruding:**"[15] "Structure projecting from the support element." This construction finds support in the specification (col. 7:21-26), which describes a manufacturing process whereby the support elements are cut out of a single wide spring band strip and subsequently separated from each other "by breaking the narrow connecting struts 400, as a result of which the protrusions 44 described in connection with FIG. 4 remain on each side of the support elements." The construction flows from the plain and ordinary meaning of protrude: "to thrust forward" or "to cause to project." Merriam-Webster Online Dictionary (2010). Defendant's proposal that the structure must project "outwardly," is unsupported by the intrinsic and extrinsic evidence of record.

16. "**[L]ong sides;" "long sides of the support element**:"[16] "The longitudinal

---

[13]'434 patent, claim 1 (and dependent claims).

[14]'434 patent, claim 4.

[15]'434 patent, claims 4 and 8.

[16]'434 patent, claims 1, 4, 5, and 7.

side of the support element." Defendant argues that this construction would encompass "sides" that are not "long," and instead proposes a construction with reference to the longitudinal "edge" of the support element. Irrespective of the court's disagreement with the logic of this argument, the '434 patent distinguishes between the long **sides** (claims 1, 4, 5, and 7) and the long **edges** (claim 11) of the support element.

17. "**[H]ook legs**:"[17] "The portion of the hook-like extensions that cross the long side of the support element." This construction finds support in the claims and the specification. (col. 4:32-34; 2:16-17)

18. "**[D]etent tooth that protrudes from the long side of the support element**:"[18] "A protrusion, one surface of which defines a detent shoulder." This construction is supported by the specification. While the specification describes the detent teeth of Figure 6 as having an angular structure (col 5:38-40), the court will not import the requirement that detent teeth have an angular structure based on one embodiment. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

19. "**[R]ecess**:"[19] No construction is needed.

20. "**[T]he face end of the support element**:"[20] "A surface located at one end of the support element facing away from the other end." This construction is consistent

---

[17]'434 patent, claim 4.

[18]'434 patent, claim 7.

[19]'434 patent, claim 8.

[20]'434 patent, claim 8.

7

with the claims as well as the specification.  (col. 2:39, Fig. 8)  Defendant's proposed construction conflates the claimed "face end" with the '434 patent specification's reference to a "face end edge."  While each "face end" has a terminal edge (col. 4:21-22), claim 8 explicitly refers only to the "face end."

21.  **"[I]nside wall**:"[21]  "The wall of the termination part opposite the face end of the support element."  This construction flows from the plain and ordinary meaning of the limitation.  The court rejects defendant's proposed construction, which conflates the "face end" with the "face end edge," for the aforementioned reasons.

22.  **"[P]in passage**:"[22]  "A passage constructed to couple the connector to a wiper arm pin without requiring the use of an adapter."  This construction is consistent with the specification, which discusses the disadvantages of adaptors (col. 1:60-61) and explains that the connector of the present invention "permits coupling of a variety of wiper arms to a blade without requiring the use of adapters."  (col. 4:37-39)  Moreover, the specification does not describe an embodiment employing one.  (*See* col. 1:56-64; col. 4:37-39)

23.  **"[T]ail space**:"[23]  "A space between the bridge and the rail."  The parties do not dispute this construction.

24.  **"[F]orwardmost free end**:"[24]  "Forwardmost end of the rail, which is not

---

[21]'434 patent, claim 8.

[22]'380 patent, claims 1, 23 and 24 (and dependent claims).

[23]'380 patent, claims 1, 23 and 24 (and dependent claims).

[24]'380 patent, claim 1 (and dependent claims).

connected to the central bridge." The court rejects defendant's proposal that construes the "forwardmost free end" as the "front end;" the front end of the rail does not equate to the claimed most forward end.

25. **"[R]earward of said pin passage and said rivet passage**:"[25] "Completely behind the pin and rivet passages." This construction finds support in the specification. (*See* col. 6:43-49; 7:31-33) Defendant, by contrast, argues that the term "rearward of" must be construed to mean "behind the center of the circular hole of the pin and rivet passages." The specification, however, repeatedly explains that "the forwardmost point of the tail rail is positioned entirely rearward of both the pin and rivet passages." (col. 5:61-65; col. 7:13-20; col. 7:31-34) The figures demonstrate this relationship, as in each the forwardmost portion of the rail is positioned completely behind the rivet and pin passages. (Fig. 7, 8-13)

The prosecution history illuminates the meaning of this limitation. The examiner rejected the claims of the '380 patent as anticipated by Figure 5 of U.S. Patent No. 5,611,103 ("the Lee patent"). (D.I. 166, ex. 10 at JA1622) Figure 5 discloses a two passage connector with a rail which was segmented into three portions by the two passages. In their traversal, the applicants distinguished the invention of the '380 patent, noting that "the [] rail in Lee has segments that extend forward of both passages." An inspection of Figure 5 reveals that the two rail segments forward of the passages are **entirely forward** in that no portion of the rail breaches the circumference of the passages' rounded portions. Accordingly, the meaning of "rearwards" (relative to

---

[25]'380 patent, claims 1, 23 and 24 (and dependent claims).

9

the applicant's use of the term "forward") comports with the understanding that the invention of the '380 patent includes a rail located completely behind the passages.

Finally, extrinsic evidence in the form of inventor testimony confirms this understanding. Jerry Rosenstein, one of the named inventors of the '380 patent, testified at this deposition that "[t]he claim says that the forwardmost end of the rail . . . is behind the rivet passage . . . ." (D.I. 161, ex. C at 206:25-207:3)

26. "**[R]ail-free hook insertion space**:"[26]  "A space without a rail, defined as the area that is directly below the bridge, forward of the pin passage, and directly between the side walls." This construction is consistent with the specification and, specifically, with all of the disclosed embodiments of the '380 patent. (col. 4:15-37) Moreover, the claim language explicitly identifies the bridge, pin passage and side walls as the boundaries that define this space.

27. "**[C]avity**:"[27]  "A void in a wing's outer surface adjacent to a locking tab, which accommodates outward displacement and deflection of the locking tab." This construction is supported by the specification. (See col. 6:58-64)

28. "**[E]ngagement tab**:"[28]  "A locking tab or structure on the inside surface of the side walls that assists in the coupling of a hook arm to the connector." This construction finds support in the specification. (See col. 4:15-30) The court rejects plaintiff's proposed construction, which seeks to conflate additional language from the

---

[26]'380 patent, claim 1 (and dependent claims).

[27]'380 patent, claims 9 and 23.

[28]'380 patent, claims 9 and 23.

claims into this limitation, i.e., requiring that the locking tab (1) extend inwardly from the wing, (2) be partially formed by a cut-out in the wing, and (3) whose outward displacement and deflection is accommodated by a cavity in the wing.

29.  "**[O]utward lateral extent**:"[29]  "The outer wing surface."  This construction is consistent with the claims and the specification.  (*See* col. 8:47-51; col. 10:52-55)

United States District Judge

---

[29]'380 patent, claims 9 and 23.

11