# United States Court of Appeals for the Federal Circuit

---

**ROBERT BOSCH, LLC,**
*Plaintiff-Appellant,*

**v.**

**PYLON MANUFACTURING CORP.,**
*Defendant Cross Appellant.*

---

2011-1363, -1364

---

Appeal from the United States District Court for the District of Delaware in No. 08-CV-0542, Judge Sue L. Robinson.

---

Decided: June 14, 2013

---

MARK A. HANNEMANN, Kenyon & Kenyon, LLP, of New York, New York, argued for plaintiff-appellant on rehearing en banc. With him on the brief was JEFFREY S. GINSBERG. Of counsel on the brief was SUSAN A. SMITH, of Washington, DC. Of counsel was RYAN J. SHEEHAN of New York, New York.

GARRET A. LEACH, Kirkland & Ellis, LLP, of Chicago, Illinois, argued for defendant-cross appellant on rehearing en banc. With him on the brief were MARK A. PALS and DENNIS J. ABDELNOUR. Of counsel were GREGORY L. HILLYER, Feldman Gale, P.A., of Miami, Florida, JAVIER

SOBRADO, of Bethesda, Maryland and CHRISTOPHER R. LIRO, Andrus, Sceales, Starke & Sawall, of Milwaukee, Wisconsin.

EDWARD R. REINES, Weil Gotshal & Manges LLP, of Redwood Shores, California, for amicus curiae American Intellectual Property Law Association, on rehearing en banc. With him on the brief was ANDREW L. PERITO. Of counsel on the brief was WILLIAM G. BARBER, President, American Intellectual Property Law Association, of Arlington, Virginia.

ROBERT P. TAYLOR, Arnold & Porter LLP, of San Francisco, California, for amicus curiae Intellectual Property Owners Association on rehearing en banc. With him on the brief were MONTY M. AGARWAL and JAMES A. FOX. Of counsel on the brief were RICHARD F. PHILLIPS, President, and KEVIN H. RHODES, Chair, Intellectual Property Owners Association. Of counsel was HERBERT C. WAMSLEY, JR., of Washington, DC.

CHARLES W. SHIFLEY, Banner & Witcoff, Ltd., of Chicago, Illinois, for amicus curiae The Intellectual Property Law Association of Chicago on rehearing en banc.

ROBERT M. EVANS, JR., Senniger Powers LLP, of St. Louis, Missouri, for amicus curiae MEMC Electronic Materials, Inc. on rehearing en banc. With him on the brief was MARC W. VANDER TUIG.

RAYMOND T. CHEN, Solicitor, United States Patent & Trademark Office, of Alexandria, Virginia, for amicus curiae United States of America on rehearing en banc. With him on the brief were MICHAEL S. FORMAN and THOMAS W. KRAUSE, Associate Solicitors. Of counsel on the brief were STUART F. DELERY, Acting Assistant Attorney General, and MARK R. FREEMAN, Attorney, Appellate

Staff, Civil Division, United States Department of Justice, of Washington, DC.

————————————

Before RADER, *Chief Judge,* NEWMAN, LOURIE, DYK, PROST, MOORE, O'MALLEY, REYNA, and WALLACH, *Circuit Judges.*[*]

Opinion for the court filed by *Circuit Judge* PROST, in which RADER, *Chief Judge*, NEWMAN, LOURIE, and DYK, *Circuit Judges* join.  MOORE, *Circuit Judge* joins Part I of the opinion.

Opinion concurring-in-part and dissenting-in-part filed by MOORE, *Circuit Judge*.

Opinion concurring-in-part and dissenting-in-part filed by REYNA, *Circuit Judge*.

Dissenting opinion filed by O'MALLEY, *Circuit Judge*, in which WALLACH, *Circuit Judge joins*.

PROST, *Circuit Judge*.

We sua sponte took this case en banc to answer two questions.  First, does 28 U.S.C. § 1292(c)(2) confer jurisdiction on this court to entertain appeals from patent infringement liability determinations when a trial on damages has not yet occurred?  Second, does 28 U.S.C. § 1292(c)(2) confer jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided?  We answer both questions in the affirmative and return the case to the panel for disposition on the merits.

————————————

[*]    Circuit Judge Taranto did not participate in this decision.

BACKGROUND

In August 2008, Robert Bosch, LLC ("Bosch") sued Pylon Manufacturing Corp. ("Pylon") for patent infringement. Pylon later asserted patent infringement counterclaims against Bosch. During the pretrial period, Pylon filed a motion requesting that the district court bifurcate the issues of liability and damages. In ruling on the motion, the district court stated that "bifurcation is appropriate, if not necessary, in all but exceptional patent cases," and issues related to a damages trial are "a drain on scarce judicial resources." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 1:08-CV-542, slip op. at 1 (D. Del. Aug. 26, 2009) ("Memorandum Opinion"). With respect to willfulness, the court determined that "willfulness is a damages issue, not a liability issue," and willfulness "requires qualitatively and quantitatively different proof than does infringement." Memorandum Opinion at 3. Accordingly, the district court granted the motion and stayed discovery on damages issues including willfulness. As of this writing, proceedings on damages issues remain stayed in the district court.

Following a jury trial on liability and motions for judgment as a matter of law, the district court entered judgment on the liability issues. Bosch appealed and Pylon cross-appealed. Bosch filed a motion to dismiss both its appeal and Pylon's cross-appeal on the grounds that we lack jurisdiction, which this court denied. Bosch sought reconsideration of its motion, which was also denied. On July 9, 2012, the parties argued the substantive as well as jurisdictional issues before a panel of this court. After oral argument, we sua sponte granted a rehearing en banc to determine whether we have jurisdiction over this appeal under 28 U.S.C. § 1292(c)(2).

DISCUSSION

This court's jurisdiction is governed by the final judgment rule. *See, e.g.*, 28 U.S.C. § 1295(a)(1) (granting

this court jurisdiction over any "appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents"). Under the final judgment rule, a party may not take an appeal "until there has been a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (citations omitted). There are, however, exceptions to the final judgment rule. For instance, § 1292(c)(2) provides one such exception, which is unique to patent cases. Under § 1292(c)(2), an appeal to this court may be made "from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is *final except for an accounting*." The disposition of this case turns on the meaning of "accounting," specifically, whether a trial on damages and willfulness is an accounting for the purposes of § 1292(c)(2).

I

In addressing the question of whether we have jurisdiction to entertain an appeal when a trial on damages has not yet occurred, we first consider the issue of whether an accounting includes the determination of a patentee's damages. We then consider whether an accounting may include a trial on damages or whether it is limited to proceedings before a special master. With respect to the first issue, Bosch presses the argument that an accounting under § 1292(c)(2) is limited to an accounting of an infringer's profits and cannot include a determination of damages. We cannot agree with Bosch. It is clear from the case law and the history of the statute that an accounting includes both the determination of an infringer's profits as well as a patentee's damages. Bosch also argues that whatever an accounting is, it cannot be a trial on damages. Again, we disagree. We find that neither the text nor the history of the statute supports this nar

row interpretation. Rather, an "accounting" within the meaning of § 1292(c)(2) may include a trial on damages.

## A

In accordance with established precedent, we begin our inquiry by ascertaining the historical meaning of an "accounting."

> It is a well-established rule of construction that "'[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L. Ed. 2d 811 (1989)); *see Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L. Ed. 619 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense").

*Neder v. United States*, 527 U.S. 1, 21-22 (1999); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011) (reiterating this principle of statutory construction). Bosch argues that historically an accounting included only the ascertainment of an infringer's profits, while Pylon argues that an accounting included a trial on damages, including the determination of willfulness.

It is true, as Bosch contends, that the meaning of accounting in patent cases once referred only to the equitable accounting of an adjudged infringer's profits.[1] In

---

    [1] An infringer's profits are, of course, no longer an available remedy for the infringement of a utility patent.

1853, the Supreme Court in *Livingston v. Woodworth* examined the traditional accounting proceeding and held that damages could not be awarded in an equitable accounting. 56 U.S. 546, 560 (1853). The special master in *Livingston* admitted "that the account [was] not constructed upon the basis of actual gains and profits acquired by the defendants by the use of the inhibited machine, but upon the theory of awarding damages to the complainants for an infringement of their monopoly." *Id.* at 559. The special master found that the defendants were "trespassers and wrongdoers, in the legal sense" and "double[d] the amount which he had stated to be a compensation to the plaintiffs." *Id.* The *Livingston* Court found this improper, stating, "[w]e are aware of no rule which converts a court of equity into an instrument for the punishment of simple torts." *Id.* The Court questioned whether "the infliction of damages, by way of penalty, [was] ever consistent with the practice of courts of equity" and, accordingly, limited the accounting "to the actual gains and profits of the [infringers]." *Id.* at 560.

It bears mention that these historical accountings were very much true to their name in that they generally applied accountancy principles to ascertain the actual profits of an adjudged infringer. The case of *Providence Rubber Co. v. Goodyear* illustrates this point. 76 U.S. 788 (1869). In that case, "[t]he Circuit Court decreed that the Providence Company was liable 'for all the profits made in violation of the rights of the complainants, under the patent aforesaid, by respondents, by the manufacture, use, or sale of any of the articles named in said bill.'" *Id.* at 801-02. The Court found that "[t]his was in accordance with the rule in equity cases established by this court." *Id.* at 801 (citing *Livingston v. Woodworth*, 56 U.S. 546

---

*See* 35 U.S.C. § 284. Such profits, however, remain available in cases of design patent infringement. *See* 35 U.S.C. § 289.

(1853)).  Justice Swayne, writing for the Court, went on to describe an accounting in detail, stating:

> The profits made in violation of the rights of the complainants' in this class of cases, within the meaning of the law, are to be computed and ascertained by finding the difference between cost and yield.  In estimating the cost, the elements of price of materials, interest, expenses of manufacture and sale, and other necessary expenditures, if there by any, and bad debts, are to be taken into the account, and usually nothing else.  The calculation is to be made as a manufacturer calculates the profits of his business.  'Profit' is the gain made upon any business or investment, when both the receipts and payments are taken into the account.

*Id.* at 804.

Hence, at least from 1853, an accounting applied basic accountancy principles and did not include the calculation of damages, but rather was restricted "to the actual gains and profits of the [infringers]." *Livingston*, 56 U.S. at 560. The rule of *Livingston* was, however, short lived.

Congress nullified this aspect of *Livingston* in the 1870 Patent Act by authorizing the award of damages by a court sitting in equity.  Act of July 8, 1870, Ch. 230, § 55, 16 Stat. 201 ("[T]he *claimant* [complainant] shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby . . . .").  Following the 1870 Patent Act, courts regularly used the terms "account" and "accounting" to refer to the special master's determination of both an adjudged infringer's profits and a patentee's damages.  *See, e.g.*, *Cornely v. Marckwald*, 131 U.S. 159, 160 (1889) (referring to the district court's "ordering a reference to a master to take an account of profits and damages"); *Smith v. Vulcan Iron Works*, 165 U.S. 518, 524

(1897) (upholding the ability of adjudicated infringer to take immediate appeal from an injunction prior to special master's "account of profits and damages"); *Henry v. A.B. Dick Co.*, 224 U.S. 1, 41 (1912) (referring to "an accounting for damages for past infringement" in a patent case); *Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 608 (1912) ("The case was therefore referred to a master to state an account of damages and profits . . . ."); *Lovell-McConnell Mfg. Co. v. Automobile Supply Mfg. Co.*, 235 U.S. 383, 386 (1914) (referring to "an accounting for damages and profits" in a patent case); *Yesbera v. Hardesty Mfg. Co.*, 166 F. 120, 121 (6th Cir. 1908) ("[A] reference to the master to take an account of profits and damages was included in the decree."); *Andrews v. Creegan*, 7 F. 477, 478 (C.C.S.D.N.Y. 1881) ("[T]he act of 1870 (Rev. St. Sec. 4921) provides for an accounting for damages as well as profits, and there may be damages to be accounted for in this case."). Accordingly, after 1870, an accounting included both the determination of a patentee's damages as well as an adjudged infringer's profits.

We note that, during this period, the calculation of a patentee's damages as part of an accounting included lost profits due to diversion of sales or due to price erosion. *See Cornely*, 131 U.S. at 160-61. Likewise, a patentee could also prove its damages by showing established royalties. *Rude v. Westcott*, 130 U.S. 152, 165 (1889) ("It is undoubtedly true that where there has been such a number of sales by a patentee of licenses to make, use, and sell his patents as to establish a regular price for a license, that price may be taken as a measure of damages against infringers.").

An accounting at this time, however, did not allow for the award of a reasonable royalty as the measure of a patentee's damages. In *Rude v. Westcott*, the Court rejected the award of a "conjectural" royalty as part of an accounting, stating:

> "Actual damages must be calculated, not imagined, and an arithmetical calculation cannot be made without certain *data* on which to make it." There was no question in this case of damages arising from lost sales, or injurious competition, for no machines had been manufactured and put on the market by the patentee, or by the complainants, his assignees. No legal ground being shown for the recovery of specific damages for the alleged infringement of the patents, the decree must be reversed.

*Id.* at 167 (quoting *Mayor, Aldermen & Commonalty of City of New York v. Ransom*, 64 U.S. 487, 488 (1859)); *see also Coupe v. Royer*, 155 U.S. 565, 583 (1895). This rule created some mischief because actual damages were then, as they are now, often difficult to prove. Eventually, the courts of appeals began to allow the calculation of a reasonable royalty as part of an accounting. *See U.S. Frumentum Co. v. Lauhoff*, 216 F. 610, 625 (6th Cir. 1914) ("[A] 'reasonable royalty,' if the proper foundation is laid and if the primary measures cannot be adopted, may become the applicable criterion in an action at law. If this is true, the same result follows before a master in determining damages in an action in equity."). This practice was ultimately sanctioned by the Supreme Court in *Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 648-50 (1915). In 1922, Congress expressly allowed for a reasonable royalty to be awarded in a case in equity by amending the statute to state "the court may adjudge and decree the payment by the defendant to the complainant of a reasonable sum as profits or general damages for the infringement." Act of Feb. 21, 1922, Ch. 58, 42 Stat. 392. Accordingly, as early as 1922, Congress had allowed for an accounting to include the determination of an adjudged infringer's profits and a patentee's damages, including lost profits and a reasonable royalty.

It was against this backdrop that Congress, in 1927, enacted the predecessor statute to § 1292(c)(2)—28 U.S.C. § 227a—to confer interlocutory appellate jurisdiction over patent infringement judgments that were final except for "an accounting." The original statute provided that, "when in any suit in equity for the infringement of letters patent for inventions, a decree is rendered which is final except for the ordering of an accounting, an appeal may be taken from such decree to the circuit court of appeals." 28 U.S.C. § 227a (1927). The Senate Report accompanying § 227a indicates that Congress understood an "accounting" to include both the calculation of the defendant's profits and the plaintiff's damages:

> Under the present statutes where an equity suit for infringement of letters patent results in a decree for the plaintiff, if the patent at the time of entry of the decree is still alive, the court orders an injunction to restrain further infringement and refers the cause to a master to ascertain plaintiff's damages and defendant's profits. Upon the entry of such a decree an appeal from the order granting the injunction may be taken immediately, and it is the general practice to suspend all proceedings under the accounting until the court of appeals has determined the questions of validity of the patent and infringement. If the court holds against the plaintiff on either of these questions, it reverses the decree of the lower court, and there is, of course, no accounting.

S. Rep. No. 69-1319, at 1 (1927). Thus, Congress gave the term "accounting" its judicially settled meaning (i.e., proceedings before a special master to determine the infringer's profits and the plaintiff's damages) when it enacted § 227a.

After the enactment of § 227a, the Supreme Court consistently referred to an accounting as a proceeding

that includes the determination of both profits and damages. *See McCullough v. Kammerer Corp.*, 331 U.S. 96, 97 (1947) (recounting that the district court ordered "[a]n accounting for profits and damages"); *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 650 (1983) (stating that the case was "referred to a [s]pecial [m]aster for an accounting," and that the special master "selected a royalty rate by reference to hypothetical negotiations that it found would have taken place if GMC had sought to obtain a license from Devex") (citations omitted); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S. 271, 276 (1949) (noting that the district court "concluded that the respondent was entitled to . . . an accounting for profits and damages"); *Edward Katzinger Co. v. Chi. Metallic Mfg. Co.*, 329 U.S. 394, 398 (1947) (stating that the district court "ordered an accounting to determine royalties due for the period prior to termination of the license contract, and for infringement damages thereafter"). Prior to the creation of this court, the regional courts of appeals also recognized that an accounting included the calculation of damages. *See, e.g.*, *Russell Box Co. v. Grant Paper Box Co.*, 179 F.2d 785, 787 (1st Cir. 1950); *Maxon Premix Burner Co. v. Eclipse Fuel Eng'g Co.*, 471 F.2d 308, 313 n.6 (7th Cir. 1972); *Miller Hatcheries v. Buckeye Incubator Co.*, 41 F.2d 619, 620 (8th Cir. 1930); *Icyclair, Inc., v. Dist. Court of U.S. for S. Dist. of Cal., Cent. Div.*, 93 F.2d 625, 626 (9th Cir. 1937). Finally, this court has likewise repeatedly recognized that an accounting includes the determination of damages. *See, e.g.*, *Special Devices, Inc. v. QEA, Inc.*, 269 F.3d 1340, 1343 n.2 (Fed. Cir. 2001) ("'Accounting,' as used in the statute, refers to infringement damages pursuant to 35 U.S.C. § 284."); *H.A. Jones Co., Inc. v. KSM Fastening Sys., Inc.*, 745 F.2d 630, 631 (Fed. Cir. 1984) (finding that "the judgment is final except for an accounting of damages at a later date") (citations omitted).

The statute's interpretation through history is clear. An "accounting" in the context of § 1292(c)(2) includes the determination of damages and cannot be limited to a traditional equitable accounting of an infringer's profits. In 1927, when Congress first employed the term "accounting" in the context now at issue, an accounting was well-known to include both the calculation of an infringer's profits and a patentee's damages. Accordingly, we must conclude that an accounting as used in § 1292(c)(2) includes both determinations. *See Standard Oil Co. of N.J.*, 221 U.S. at 59.

B

We have established that an accounting includes the calculation of damages, but our inquiry is not yet finished. Bosch further maintains that even if an accounting includes the determination of damages, it cannot be a trial on damages, but rather an accounting must be limited to a special master's determination of damages. According to Bosch, an accounting was a proceeding before a special master—available only in courts of equity—and because juries do not sit in equity, an accounting may not include a modern jury trial on damages. While we agree with Bosch that an accounting was historically available in equity, we do not agree that a trial on damages falls outside the scope of the accounting described in § 1292(c)(2).

We base our conclusion on four points. First, in 1948, Congress expanded jurisdiction over interlocutory appeals from cases in equity to "civil actions for patent infringement which are final except for accounting." Second, the issues which were historically decided in accountings are the same as those decided during damages trials today. Third, the reasons articulated by Congress for allowing interlocutory appellate jurisdiction over patent cases that are final except for an accounting apply with equal force to a modern damages trial. Finally, stare decisis militates

in favor of allowing interlocutory appeals where liability has been established and a damages trial remains.

1

Prior to the merger of law and equity in 1938, an accounting for an infringer's profits and a patentee's damages was available in the courts of equity. *See, e.g.*, Act of July 8, 1870, Ch. 230, § 55, 16 Stat. 201 ("[U]pon bill in equity filed by any party aggrieved . . . the *claimant* [complainant] shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby . . . ."). In 1946, however, Congress removed the remedy of the infringer's profits and ended the practice of requiring a traditional accounting of an infringer's profits before a special master. The amended statute provided that "the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor." Act of August 1, 1946, Ch. 726, 60 Stat. 778, 35 U.S.C. § 70. The legislative history of the amendment indicates that its purpose was to eliminate the necessity of hearings before special masters. The Congressional report states:

> The object of the bill is to make the basis of recovery in patent-infringement suits general damages, that is, any damages the complainant can prove, not less than a reasonable royalty, together with interest from the time infringement occurred, rather than profits and damages. . . . Although the bill would not preclude the recovery of profits as an element of damages, yet by making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits, the measure represents legislation which in the judgment of the committee is long overdue.

*See, e.g.*, H.R. Rep. No. 1587, 79th Cong., 2d Sess. (1946), adopted as the report of the Senate Committee on Patents, S. Rep. No. 1503, 79th Cong., 2d Sess. (1946), at 2; *reprinted in* U.S. Code Congressional Service (1946) at 1386-87; *see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 654 (Fed. Cir. 1985) ("The legislative history of the 1946 amendments clearly indicates that one of its purposes was to eliminate the necessity of the traditional accounting to determine the infringer's profits in all damages determinations, and to deter the use of such proceedings by successful patentees to harass the infringer.").

After the merger of law and equity, and the 1946 revision to the damages statute, Congress amended the interlocutory appeal statute by substituting the phrase "civil actions" for the phrase "suit[s] in equity." H.R. Rep. 308, 80th Cong., 1st Sess. (1948). That change placed the statute in essentially its current form: "The courts of appeals shall have jurisdiction of appeals from . . . . Judgments in civil actions for patent infringement which are final except for accounting." 28 U.S.C. § 1292(4) (1948). Accordingly, despite having eliminated the possibility of recovering an infringer's profits, making it unnecessary to have proceedings before a special master, in 1948, rather than eliminate § 1292's exception to the final judgment rule, Congress extended it to civil actions.

The dissent suggests that the "accounting" referred to in § 1292 identifies not the nature of the issue being adjudicated but the identity of the adjudicator. In the dissent's view, an "accounting" can only be conducted by a special master in equity, and only such proceedings constitute an "accounting" within the meaning of the statute; a damages proceeding before a jury cannot qualify as an accounting. *See* J. O'Malley Dissenting Op. 14-16.

Section 1292 makes no such distinction between a jury trial on damages and an "accounting." It is manifestly incorrect to read such a distinction into the statute. The Supreme Court's decision in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), underscores the point that after the merger of law and equity, the similarity between equitable accountings in infringement cases and traditional damages calculations meant that even if a proceeding was, in the traditional sense, an equitable accounting, a jury trial was nonetheless required. *See Dairy Queen*, 369 U.S. at 477-79. The fact that a jury trial was required did not change the nature of the proceeding from an "accounting" to something else entirely, however. *See id.* at 479 ("The legal remedy [provided by the jury] cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records."). This point is reinforced by the concurring opinion of Justices Harlan and Douglas, who noted explicitly that the jury right attached even though the only "'legal' claim contained in the complaint" was in fact an "'equitable'" claim for "an accounting for alleged trademark infringement." *Id.* at 480-81 (Harlan, J., concurring). As Wright and Miller note, "ordinarily there is [after *Dairy Queen*] a right to jury trial on a claim for an accounting." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2312, at 164 (3d ed. 2008). Thus, the fact that juries must now determine patent damages does not prevent those proceedings from being "accountings" within the meaning of § 1292.

This is exactly the point of the 1948 amendment to subsection 1292(c)(2), which recognized that after the merger of law and equity, an accounting remains an accounting, regardless of the form of the civil action. There is simply no basis for concluding, as the dissent suggests, that Congress in 1948 "narrowed" the scope of subsection 1292(c)(2) to cover only those rare cases in

which an accounting could be had before a special master without a jury trial. *See* J. O'Malley Dissenting Op. 18.

It is clear that Congress sought to eliminate the traditional equitable remedy of an accounting of an infringer's profits, obviating the need for an equitable accounting before a special master.[2] It is likewise clear that Congress intended interlocutory review of cases that are final except for an accounting to remain available. Indeed, interlocutory review of cases that are final except for an accounting was to be available not only in suits in equity, but in civil actions generally. Accordingly, we conclude that the meaning of an "accounting" in § 1292 includes a damages trial.[3]

---

[2]  This is not to say that accountings before special masters disappeared. Special masters continued to hold "accountings" following Congress's elimination of the traditional equitable accounting. *See Gen. Motors*, 461 U.S. at 650-51. However, these accountings no longer bore any resemblance to the traditional equitable accounting of an infringer's profits, but rather included the determination of damages such as a reasonable royalty.

[3]  This conclusion is well-aligned with the holdings of several regional courts of appeals, which, following the merger of law and equity, were faced with the question of whether despite having pled for an accounting in a patent case, a plaintiff was entitled to a jury trial under the Seventh Amendment. *See Kennedy v. Lakso Co.*, 414 F.2d 1249, 1253 (3d Cir. 1969) ("While it is true that equity traditionally has had jurisdiction in actions for an accounting, it has always been recognized that there may be a suit for accounting at law and indeed the essential ingredient of equity's jurisdiction has been the complicated nature of the accounting. . . . There is nothing on the present record to indicate that the accounting between the parties in the determination of profits or damages will be

2

As detailed *supra*, from at least 1922 forward, Congress authorized the determination of an adjudged infringer's profits and a patentee's damages, including lost profits and a reasonable royalty, as part of an accounting proceeding. In 1946, Congress eliminated recovery of an adjudged infringer's profits, "making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits." S. Rep. No. 1503, 79th Cong., 2d Sess., at 2 (1946). In 1952, Congress combined the equitable and legal remedies provisions of the statute with the creation of 35 U.S.C § 284.[4] Section 284 states that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." Thus, were a traditional accounting proceeding before a special master to be held to determine an appropriate remedy under § 284, it

---

so complicated as to be beyond the power of a jury to determine."); *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150 (10th Cir. 1965) (holding jury trial available where complaint in patent infringement case sought an injunction and an "accounting for damages" or treble damages); *Swofford v. B & W, Inc.*, 336 F.2d 406, 409-11 (5th Cir. 1964) (jury trial held available in patent infringement case where requested relief included an accounting for damages).

[4]    Prior to the Patent Act of 1952, R.S. § 4919 provided a remedy at law for damages for patent infringement, while R.S. § 4921 provided for equitable remedies including damages. By the Patent Act of 1952, the former provisions of R.S. 4919 and 4921 relating to damages were combined in § 284. *See* the Reviser's Note *reproduced in* 35 U.S.C.A. following § 284.

would include the determination of a patentee's damages including lost profits or a reasonable royalty, but not the determination of an adjudged infringer's profits. These are the same determinations that are made in a modern damages trial. The fact that whether damages are determined by a master or a jury, the same issues would be decided, supports the position that a modern damages trial may be considered an accounting for the purposes of § 1292(c)(2).

3

Congress first passed the predecessor statute to § 1292(c)(2) because of the high cost of an "accounting." The House Report that accompanies the 1927 amendment states:

> [L]egislation of this nature is needed to prevent a great burden of expense to litigants in actions to determine the validity of patents, where an accounting is involved. Under present procedure appeals may be taken from the interlocutory decree upholding the patent but not until a full accounting has been made to the court. Under this bill such appeal can be taken from such interlocutory decree . . . so as to obviate the cost of an accounting in the event the case is reversed on appeal.

H.R. Rep. No. 1890, 69th Cong., 2d Sess. 1 (1927). The Senate Report underscored this concern stating, "the whole expense of the accounting is wasted" when an appellate court reverses on liability after an accounting. S. Rep. No. 1319, 69th Cong. 2d Sess. (1927); *see also McCullough*, 331 U.S. at 98.

This issue remains relevant today. Modern patent damages trials, with their attendant discovery, are notoriously complex and expensive. As the district court put it, "discovery disputes related to document production on

damages and the *Daubert* motion practice related to damages experts are a drain on scarce judicial resources." Memorandum Opinion at 1. Given the substantial reversal rate of liability determinations on appeal, the whole expense of a damages trial is often wasted. Accordingly, those policy concerns that motivated Congress to grant jurisdiction over cases that are final except for an accounting support our holding today.

### 4

The principle of stare decisis likewise weighs in favor of our holding. To be sure, because the question we consider today has not previously been considered by this court sitting en banc, "the implications of stare decisis are less weighty than if we were [reconsidering] a precedent established by the court en banc." *See McKinney v. Pate*, 20 F.3d 1550, 1565 n.21 (11th Cir. 1994) (en banc); s*ee also United States v. Bailey*, 36 F.3d 106, 110 (D.C. Cir. 1994) (en banc) (citing *McKinney), rev'd on other grounds*, 516 U.S. 137 (1995). Indeed, "[t]he province and obligation of the en banc court is to review the current validity of challenged prior decisions." *United States v. Aguon*, 851 F.2d 1158, 1167 n.5 (9th Cir. 1988) (en banc), *rev'd on other grounds*, *Evans v. United States*, 504 U.S. 255 (1992); *see also United States v. Anderson*, 885 F.2d 1248, 1255 (5th Cir. 1989) (en banc). Nonetheless, "because [our precedent] represents the established law of the circuit, a due regard for the value of stability in the law requires that we have good and sufficient reason to reject it at this late date." *Bailey*, 36 F.3d at 110. Indeed, panel opinions, like en banc opinions, invoke the principle of stare decisis. Panel opinions are, of course, opinions of the court and may only be changed by the court sitting en banc. It has been the law of this court for at least twenty-five years that an "accounting" under § 1292 includes a trial for the determination of damages under § 284. *See, e.g.*, *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988) ("Hence it is clear that the purpose of the legislation, §

1292(c)(2), allowing interlocutory appeals in patent cases was to permit a stay of a damages trial."); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1558 (Fed. Cir. 1984) (following a jury verdict that did not reach the question of damages, "[t]he court entered a judgment, final except for an accounting, that the '497 patent was 'invalid, void and unenforceable,' and that the '099 patent was valid and infringed. . . . [The court] ordered a new trial to determine the damages from infringement of the '099 patent, but postponed such trial pending this appeal."); *Special Devices, Inc. v. QEA, Inc.*, 269 F.3d 1340, 1343 n.2 (Fed. Cir. 2001) ("'Accounting,' as used in the statute, refers to infringement damages pursuant to 35 U.S.C. § 284."); *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007) ("Since the district court's infringement judgment is final as to all issues except for a determination of damages, we have jurisdiction under 28 U.S.C. § 1292(c)(2)."); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1337 (Fed. Cir. 2009) (after a jury trial, "the court entered judgment tracking the jury's verdict. Trial on willfulness and damages was stayed. . . . [W]e have jurisdiction under 28 U.S.C. § 1292(c)(1) and (2).").

We do not take our precedent lightly. As the Supreme Court stated, "*stare decisis* in respect to statutory interpretation has 'special force,' for 'Congress remains free to alter what we have done.'" *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-73 [1989]. This court has long recognized that an "accounting" within the context of § 1292(c)(2) includes a trial on damages. Bosch's exhortations notwithstanding, we decline to depart from that interpretation now.

Nothing in the text or history of the statute, or in the case law, militates that we adopt Bosch's narrow interpretation of the statute. Rather, the statute, its history and policy as well as settled case law indicate—and we now

hold—that § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when a trial on damages has not yet occurred.

## II

We also took this case en banc to determine whether § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided. We hold now that it does.

In bifurcating willfulness from the liability trial, the district court found that willfulness "requires qualitatively and quantitatively different proof than does infringement." Memorandum Opinion at 3. The parties and the amici dispute the propriety of the court's action. While we agree with the district court that willfulness and infringement present different underlying issues and, at least generally speaking, require different proof, the disposition of this case does not turn on the interrelatedness of the willfulness and infringement issues.

Given the nature of the arguments made by the parties and the amici, we take a moment to explain what this case is not about. This case does not involve the question of whether the district court has the authority to bifurcate the willfulness and infringement issues. As a general matter, it does. *See* Fed. R. Civ. P. 42(b). Likewise, we did not take this case en banc to determine whether the issues of infringement and willfulness are so interwoven that trying them separately violates the Seventh Amendment. Precedent of this court, nonetheless, indicates that it does not. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008). Rather, we took this case en banc to determine whether we have jurisdiction when willfulness issues are outstanding and remain undecided. Bifurcation and Seventh Amendment issues are immaterial to this inquiry. Our jurisdiction is set by Congress and

Congress has given us jurisdiction over patent cases that are final except for an accounting. Accordingly, the disposition of this issue turns on whether an "accounting" as described in § 1292(c)(2) includes the determination of willfulness.

As always, we begin with the statute. "[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense." *Standard Oil Co. of N.J.*, 221 U.S. at 59. Our inquiry begins and ends with a determination of the historical meaning of an "accounting." Specifically, we must determine whether at the time the statute was passed, an accounting included the determination of willfulness.

Long before the enactment of § 1292(c)(2)'s predecessor statute in 1927, accounting proceedings included the determination of willfulness by a special master. *See, e.g.*, *Cornely*, 131 U.S. at 160 ("There was an interlocutory decree . . . ordering a reference to a master to take an account of profits and damages. The master reported that the defendant had made a profit of $142.92, by the sale of 26 infringing machines, and that he was not a willful and deliberate infringer."); *Boesch v. Graff*, 133 U.S. 697, 699 (1890) ("After a hearing on the merits, an interlocutory decree was entered, finding an infringment , and referring the case to a master for an accounting. . . . The case then went to the master, who reported that the infringement was willful, wanton, and persistent . . . ."); *Pollock v. Martin Gauge Co.*, 261 F. 201, 202 (7th Cir. 1919) ("The statute (section 9464, U.S. Comp. Stats. 1916) provides for the punishment of the willful violator. But whether damages in excess of the compensatory damages shall be awarded, as well as the amount thereof, must be determined by the District Court upon the accounting."); *K.W. Ignition Co. v. Temco Elec. Motor Co.*, 283 F. 873, 874 (6th Cir. 1922) ("On the accounting the master found that the

profits resulting to defendant from its infringement amounted to $164,431.54 . . . . The master further recommended an award of punitive damages by reason of the 'willful and malicious conduct of the defendants.' The court increased the master's award by adding $50,000 for punitive damages . . . ."); *Reed Roller Bit Co. v. Hughes Tool Co.*, 12 F.2d 207, 209 (5th Cir. 1926) (as part of an accounting, the special master "found on the evidence before him that appellants were willful infringers").

Bosch is unable to point to anything in the text of the statute or in the legislative history that would indicate that when Congress first gave the courts of appeals interlocutory jurisdiction over cases that are final except for an accounting, it intended to disturb the practice of determining willfulness as part of an accounting. Indeed, after the enactment of § 1292(c)(2)'s predecessor statute in 1927, courts continued to determine willfulness as part of an accounting, which occurred after the finding of liability. For example, in *Pyle National Co. v. Lewin*, the district court held the patents valid and infringed, and awarded treble damages prior to conducting an accounting. 92 F.2d 628, 629, 631 (7th Cir. 1937). An appeal was then taken to the Seventh Circuit prior to the accounting. The Seventh Circuit reversed the district court's finding with respect to treble damages, stating:

> Whether the court was justified in awarding treble damages as to the [patentee] prior to an accounting of damages and profits to be stated by a master presents a question not free from doubt. While we are unable to find any case where the question has been directly passed upon, yet it seems to be the universal practice for the District Court to make such determination only after the amount and character of the damages have been stated. A reading of section 70, title 35, U.S.C.A., indicates this to be the proper procedure. It will be noted the section authorizes the court to grant

> injunctions, direct an accounting of profits by the defendant, and assess damages which the complainant has sustained.  This may be done, of course, by reference to a master.  Afterwards in the same section is found the authority to increase such damages.  We are of the opinion that such increase should not be allowed until after an accounting has been had.

*Id.* at 631.  Other post-1927 cases confirm that willfulness may be tried as part of an accounting under § 1292(c)(2).  *See Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co.*, 66 F.2d 361 (2d Cir. 1933) (affirming enhanced damage award based on master's findings that infringement was willful).  The Ninth Circuit summarized these cases in *Patterson-Ballagh Corp. v. Moss*, stating:

> The reason for allowing appeals in patent infringement cases from interlocutory orders under [a predecessor to § 1292(c)(2)] is to prevent useless waste of time and money for an accounting where a patent has been improperly held valid and infringed by a lower court.  Determination of ancillary questions relating to the scope of damages, attorneys' fees and willful infringement can well await final judgment.  A number of cases have established the proposition that it is permissible for the District Court to determine the question of willful infringement subsequent to the report of the Master rather than in the earlier proceedings upon the issues of validity and infringement.  For example, *New England Fibre Blanket Co. v. Portland Telegram*, 9 Cir., 1932, 61 F.2d 648, *certiorari denied* 289 U.S. 752, 53 S.Ct. 696, 77 L.Ed. 1497; [*Pyle*] *Nat. Co. v. Lewin*, 7 Cir., 1937, 92 F.2d 628; *Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co.*, 2 Cir., 1933, 66 F.2d 361, *certiorari denied* 290 U.S. 681, 54 S.Ct. 119, 78 L.Ed. 587; *Anchor Hocking Glass Corp. v. White Cap*

*Co.*, D.C. Del. 1942, 47 F.Supp. 451; *Utah Radio Products Co. v. Delco Appliance Corp.*, D.C.W.D.N.Y. 1938, 24 F.Supp. 328.

201 F.2d 403, 408 (9th Cir. 1953).

In view of the foregoing, it is clear that an accounting, both prior to and after Congress's grant of interlocutory jurisdiction over cases that are final except for an accounting, included the determination of willfulness. We are in no position to change that well settled meaning now. Accordingly, we hold that § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided.

Finally, we wish to make clear that district courts, in their discretion, may bifurcate willfulness and damages issues from liability issues in any given case. District courts have the authority to try these issues together or separately just as they have the authority to try all issues together at the liability stage. They may decide, for example, for reasons of efficiency due to the commonality of witnesses or issues in any particular case, that bifurcation is not warranted. District court judges, of course, are best positioned to make that determination on a case-by-case basis. Today, we answer only the question of whether § 1292(c)(2) grants this court jurisdiction over appeals where the district court has exercised its discretion to bifurcate the issues of damages and willfulness from those of liability.

CONCLUSION

For the reasons outlined above, this court answers each en banc question in the affirmative. We find that 28 U.S.C. § 1292(c)(2) does confer jurisdiction on this court to entertain appeals from patent infringement liability determinations when a trial on damages has not yet occurred. We also find that 28 U.S.C. § 1292(c)(2) confers

jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided. Accordingly, we return this case to the panel for disposition on the merits.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT BOSCH, LLC,**
*Plaintiff-Appellant,*

**v.**

**PYLON MANUFACTURING CORP.,**
*Defendant-Cross-Appellant.*

---

2011-1363, -1364

---

Appeals from the United States District Court for the District of Delaware in No. 08-CV-0542, Judge Sue L. Robinson.

---

MOORE, *Circuit Judge*, concurring-in-part and dissenting-in-part.

I agree with the majority that 28 U.S.C. § 1292(c)(2) provides us with jurisdiction over district court judgments that are final except for a determination of damages. But I cannot join the majority's holding that § 1292(c)(2) gives us jurisdiction when willful infringement remains outstanding. The statute carves out a limited circumstance in which we have jurisdiction over interlocutory appeals—specifically, actions that are "final except for an accounting." No reasonable construction of an "accounting" can encompass the subjective state-of-mind and objective recklessness inquiries that underpin a willful infringe-

ment analysis. Because willfulness remains outstanding before the district court, we lack jurisdiction over this appeal and I respectfully dissent from the majority's contrary holding.

Exceptions to the final judgment rule should be narrowly construed. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867–68 (1994); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978); *Cobbledick v. United States*, 309 U.S. 323, 324-25 (1940). That rule stems from the strong presumption that parties should raise all issues in a single appeal, rather than inefficiently litigate their case in pieces. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

The majority recognizes that in enacting the predecessor to § 1292(c)(2), "Congress gave the term 'accounting' its judicially settled meaning," namely proceedings before a Special Master "to determine the infringer's profits and the plaintiff's damages." Maj. Op. at 11. When Congress codified the predecessor to § 1292(c)(2), an "accounting" was a determination of damages. As the majority explains, prior to enacting the statute, "courts regularly used the terms 'account' and 'accounting' to refer to the special master's determination of both an adjudged infringer's profits and a patentee's damages." Maj. Op. at 8–9. The Senate Report accompanying the statute expressly states that an "accounting" is the referral to a Special Master "to ascertain plaintiff's damages and defendant's profits." S. Rep. No. 69-1319, at 1 (1927). Congress could not have been clearer—an appeal can be had when the case is final but for an accounting—when all that is left "to ascertain plaintiff's damages and defendant's profits." *Id.* This construction is consistent with the general understanding of the term. *See, e.g.,* Irving R. Kaufman, *Masters in the Federal Courts: Rule 53*, 58 COLUM. L. REV. 452, 457 (1958) ("Generally, an accounting involves a mechanical application of general investigatory and accounting principles and is often

required under circumstances where much exploratory
work into books and records is essential."). Hence, when
there has been a determination of infringement liability
and all that remains is an assessment of the amount of
damages due, a patent case can be appealed. Damages
can properly be bifurcated by the district court and an
appeal of the merits of the liability determination can be
had—the statute clearly allows for this.

The majority, however, exceeds its statutory authority
when it allows an appeal to occur even though no decision
has been reached on a claim of willful infringement.
Whether an infringer acted willfully is not, under any
reasonable construction, part of an "accounting." To prove
willfulness, the patentee must show that "the infringer
acted despite an objectively high likelihood that its ac-
tions constituted infringement of a valid patent." *In re
Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)
(en banc). "If this threshold objective standard is satis-
fied, the patentee must also demonstrate that this objec-
tively-defined risk . . . was either known or so obvious
that it should have been known to the accused infringer."
*Id.* The willfulness determination requires the fact finder
to consider the state of mind of the infringer as well as the
reasonableness of the defenses it presented. Certainly the
plain meaning of the term "accounting" does not include a
determination of intent and whether it was reasonable to
rely upon certain noninfringement or invalidity defenses.
The determination of willfulness is no more a calculation
of damages then the determination of infringement liabil-
ity. The plain meaning of "accounting" simply cannot
support what the majority seeks to do and the legislative
history fully supports the plain meaning.

The majority defends its contorted definition of "ac-
counting" on the ground that that a handful of past cases
establish that "willfulness may be tried as part of an
accounting." Maj. Op. at 25. None of those cases, howev-
er, establish that Congress understood that an accounting

4        ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

includes the substantive determinations of knowledge, intent and reasonableness. In fact, none of those cases even hold that a determination of willfulness is part of an accounting. At most, the majority's cases loosely state in the background that a Special Master performed an "accounting" and also determined willful infringement. *E.g.*, *Cornely v. Mackwald*, 131 U.S. 159, 160 (1889) (stating that the district court referred the case to a master to "take an account of profits and damages," and the master reported that the infringement was not "willful and deliberate"). But Special Masters often performed more than a strict "accounting" in patent infringement actions brought in equity. In *Los Angeles Brush Manufacturing v. James*, for example, the Court upheld a district court's referral of "all matters of fact and law" to a Special Master, which could include damages and willful infringement. 272 U.S. 701, 703, 706–08 (1927). And it was not unique for proceedings before a Special Master in patent infringement actions to include more than a strict "accounting." *See Neale, Inc. v. McCormick*, 19 F.2d 320, 321 (9th Cir. 1927) (finding that judges in the Southern District of California had, over a one year period, referred 30 out of 40 patent infringement actions to a Special Master for hearing). In light of this uncertainty, we should not let a handful of cases with loose language cause us to ignore the plain meaning of § 1292(c)(2) and gut the final judgment rule.

The circuit court case upon which the majority principally relies does not show that the plain meaning of "accounting" included a determination of willfulness. The majority asserts that *Pyle National Co. v. Lewin*, 92 F.2d 628 (7th Cir. 1937), shows that willfulness was "part of an accounting." Maj. Op. at 24–25. But *Pyle* does not discuss willfulness. *Pyle* holds that the court should not decide to treble damages until after it has determined how much the damages are. 92 F.2d at 631-32. The *Pyle* court held that the amount to enhance compensatory damages is

part of the accounting.  *Id.* at 632.  I agree.  To determine
how much a compensatory award ought to be enhanced,
you must first know the amount of the compensatory
award and this can properly be considered part of an
accounting.  To be clear, after the fact finder has deter-
mined that the infringer was willful, then the court (not
the fact finder) determines whether to enhance damages
and by how much.  This determination, the amount by
which the damages ought to be enhanced, is separate
from the determination of willfulness.  In fact, in many
cases where the fact finder has found the infringer willful,
the court does not enhance the compensatory damages at
all.  This is the inquiry, how much to enhance damages,
that *Pyle* referred to.[1]  And this inquiry, the amount of
enhanced damages to award, could reasonably be consid-
ered part of an accounting; but not the predicate finding
of willfulness which is like the predicate finding of in-
fringement itself.

Indeed, many cases during the relevant time period
give the term "accounting" its plain and ordinary mean-
ing—the determination of damages.  *See, e.g.*, *Artmoore
Co. v. Dayless Mfg. Co.*, 208 F.2d 1, 2–3 (7th Cir. 1953)
(explaining that the district court referred the case to a
Special Master for "an accounting" after the court first
found that the defendants' actions constituted "willful and

---

[1]    The majority also relies upon *Patterson-Ballagh
Corp. v. Moss*, 201 F.2d 403, 408 (9th Cir. 1953).  Like
*Pyle*, it does not establish that an "accounting" included a
determination of willfulness.  *Patterson-Ballagh* instead
explains that "it is permissible for the District Court to
determine the question of willful infringement *subsequent*
to the report of the Master."  201 F.2d at 408 (emphasis
added) (collecting cases).  Like *Pyle*, *Patterson-Ballagh*
tends to show that a determination of willful infringement
is not part of a Special Master's "accounting."

wanton infringement"); *Helfrich v. Solo*, 59 F.2d 525, 525 (7th Cir. 1932) (stating that the patentee sought, "[i]n addition to . . . an accounting for the infringement," treble damages based on "the wanton and aggravated character of the infringement"); *Rockwood v. Gen. Fire Extinguisher Co.*, 37 F.2d 62, 62–63, 66 (2d Cir. 1930) (treating an accounting as different from the determination to increase the Special Master's determination of damages because "[t]he infringement was not wanton and deliberate"); *Sw. Tool Co. v. Hughes Tool Co.*, 98 F.3d 42, 43, 45–46 (10th Cir. 1938) (upholding the district court's pre-accounting finding that a defendant had "willfully and knowingly participated in the acts of infringement").

Lacking any compelling authority contrary to the plain meaning of § 1292(c)(2), I cannot conclude that an "accounting" includes a determination of willful infringement. An "accounting" entails numerical calculations, not an inquiry into a party's state of mind in the face on an objectively high risk of infringement. Once a finding of willfulness has been made, the determination of whether and how much to enhance damages could certainly be considered part of an accounting. Similarly, once liability has been determined, the amount of damages can be part of an accounting. But just as the underlying liability determination, *i.e.* the finding of infringement, is not part of the accounting, neither is the underlying willfulness determination. If there were any doubt as to the scope of an "accounting," basic principles of statutory construction mandate that we adopt a narrow view of the term.

District courts may in some instances prefer to allow piecemeal appeals, especially given the historically high reversal rate of issues such as claim construction. And I can't say that I blame them for wanting it. But the way to address this problem is by giving proper deference to the district court's claim construction, not to contort the meaning of accounting and ignore the final judgment rule. There is no sound basis upon which to twist the statute

ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.          7

and introduce such inefficiency into the judicial system.
Accordingly, I dissent from the majority's holding that we
have jurisdiction over this appeal.

# United States Court of Appeals
# for the Federal Circuit

---

**ROBERT BOSCH, LLC,**
*Plaintiff-Appellant,*

**v.**

**PYLON MANUFACTURING CORP.,**
*Defendant-Cross-Appellant.*

---

2011-1363, -1364

---

Appeals from the United States District Court for the District of Delaware in No. 08-CV-0542, Judge Sue L. Robinson.

---

REYNA, *Circuit Judge*, concurring-in-part and dissenting-in-part.

The rule of finality is a bedrock principle of the federal judicial system. *See Radio Station WOW v. Johnson*, 326 U.S. 120, 123 (1945). Its function is to "prevent[] the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974); *see also Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003) ("[P]iecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case."). The rule of finality is so fundamental to United States jurisprudence that it has few exceptions.

The question we address en banc pertains to 28 U.S.C. § 1292(c)(2), which grants this court jurisdiction over appeals from judgments in patent infringement cases that are "final except for an accounting." We took this case en banc to determine whether a trial on damages and a trial on willfulness is part of such an "accounting." Part I of the majority opinion concludes that "an 'accounting' in the context of § 1292(c)(2) includes the determination of damages." Majority Op. at 13. Specifically, the majority holds that the term "accounting" encompasses a modern damages trial "and cannot be limited to a traditional equitable accounting of an infringer's profits." I agree with that conclusion.

In Part II, however, the majority holds that § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues remain undecided. With this I cannot agree.

First, the plain language of § 1292(c)(2) does not unambiguously express Congress's intent to exclude willfulness from the finality rule—indeed, it makes no mention of willfulness at all. Second, even if a case can be made that an "accounting" includes damages because both deal with the mechanics of compensation, an accounting bears no relation to the willfulness inquiry, which has little to do with damages and everything to do with liability for infringement. Third, if § 1292(c)(2) is interpreted to allow an appeal before a determination of willfulness is made, Congress's purpose of avoiding needless expense wrought by piecemeal appeals in patent litigation will be frustrated, not achieved. For these reasons, I respectfully dissent.

I

I begin my inquiry not with the historical meaning of "accounting," *see* Majority Op. at 6, but with the language of § 1292(c)(2). *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[I]n interpreting a statute a court

should always turn first to one, cardinal canon before all others . . . that a legislature says in a statute what it means and means in a statute what it says there."); *see also Neder v. United States*, 527 U.S. 1, 20 (1999).

Here, the key language in § 1292(c)(2) is the word "accounting." The statute mentions neither damages nor willfulness. Regarding the former, because an accounting and damages both deal with compensation, I agree with the majority that whether Congress intended "accounting" to encompass damages is sufficiently ambiguous that it is appropriate to look to the "well-known meaning" of the term to illuminate Congress's intent. With regard to willfulness, however, it is plain to me that the modern willfulness inquiry has little to do with the well-known meaning of an accounting or with damages. I see no ambiguity, and therefore no need to inquire further. *Conn. Nat'l Bank*, 503 U.S. at 254 ("When the words of a statute are unambiguous, [the] first canon is also the last: judicial inquiry is complete." (internal quotation marks omitted)). Under the plain meaning of the statute, an appeal may not be taken while willfulness remains undecided.

## II

The majority does not inquire into the plain meaning of § 1292(c)(2). Instead, it begins its analysis at the second step, defining the term "accounting" in terms of its well-known meaning at common law. It identifies cases it claims show that an accounting included the determination of willfulness, but does not look critically at the nature of willfulness in those cases. Even assuming that we may look beyond the plain language of the statute, these cases do not persuade me that the common law meaning of "accounting" encompasses the modern willfulness determination.

To discern the well-known meaning of "accounting," the majority examines eight cases in which willfulness

4        ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

was mentioned in connection with an accounting.  Of these, five were reported prior to the 1927 enactment of § 1292(c)(2)'s predecessor statute.  Each contains one or two sentences explaining that as part of an accounting, a special master made a finding of willfulness.  None, however, contains any significant discussion as to what that finding entailed.  Yet from these five passing references to willfulness, the majority concludes that there was a pre-1927 "practice of determining willfulness as part of an accounting."  Majority Op. at 24.  This conclusion succeeds only in substituting one question for another:  if a pre-1927 accounting included a willfulness determination, what is the modern equivalent of that determination today?  The majority does not answer this question.

The remaining three cases were decided between 1927 and 1953.  In *Pyle National Co. v. Lewin*, the Seventh Circuit reversed a decision in which the district court awarded treble damages prior to conducting an accounting, concluding that "such a determination [could be made] only after the amount and character of the damages have been stated."  92 F.2d 628, 631 (7th Cir. 1937).  In *Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co.*, 66 F.2d 361, 363 (2d Cir. 1933), the Second Circuit upheld an award of enhanced damages where the district court had found the infringer's behavior to be "conscious and deliberate."  And in *Patterson-Ballagh Corp. v. Moss*, the Ninth Circuit relied on *Pyle* and *Overman* for the proposition that a district court could "determine the question of willful infringement subsequent to the report of the [Special] Master rather than in the earlier proceedings upon the issues of validity and infringement."  201 F.2d 403, 408 (9th Cir. 1953).

In light of these cases, the majority concludes that "it is clear that an accounting, both prior to and after Congress's grant of interlocutory jurisdiction over cases that are final except for an accounting, included the determination of willfulness."  Majority Op. at 26.  But the major-

ity does not inquire into the substance of the willfulness inquiry in those cases that it reads into the statute. In my view, the discussion of willfulness in these eight cases could equally have involved the special master's determination of the amount, if any, by which damages should be enhanced—a question that is significantly different from—and should not be confused with—the modern willfulness inquiry. If by willfulness we mean the amount, the numerical factor, *e.g.*, treble, by which damages are enhanced, then willfulness is a damages issue and part of an accounting. But willfulness is more than the amount of enhancement, it is the litigation process that determines whether a factual and legal basis exists to support an enhancement. The factual and legal basis necessary to support a willfulness finding makes clear that willfulness is separate and distinct from damages, including the amount of any enhancement.

## III

Upon a judgment of liability for infringement, a patentee may recover damages adequate to compensate for the infringement. *See* 35 U.S.C. § 284. Section § 284 also provides that "the court may increase the damages up to three times the amount found or assessed." Although the damages statute contains no mention of willfulness, willfulness plays a role in the determining whether damages should be enhanced under § 284, a role that is starkly different today than it was in 1927. The majority conflates this difference.

## A

The cases relied on by the majority show an understanding of willfulness much different than how we understand the term today. In those cases, the willfulness determination appears to have involved an inquiry into the mental state or conduct of the accused infringers. For example, in *Boesch v. Graff*, the special master concluded that the infringement was "willful, wanton, and

6          ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

persistent"; on appeal, the infringer urged that his behavior had been innocent. 133 U.S. 697, 699, 704 (1890). In *Pollock v. Martin Gauge Co.*, the court equated willfulness with "reprehensible" conduct, but concluded that the issue must be determined by the special master in the first instance. 261 F. 201, 202 (7th Cir. 1919). In *K.W. Ignition Co. v. Temco Electric Motor Co.*, the special master awarded punitive damages based on the "willful and malicious conduct" of the defendants. 283 F. 873, 874 (6th Cir. 1922). And in *Reed Roller Bit Co. v. Hughes Tool Co.*, the court affirmed a finding of willfulness because the defendant acted in spite of his knowledge that his actions would infringe. 12 F.2d 207, 210 (5th Cir. 1926).

These cases must be viewed in light of the legal landscape from which they arose. Then, as now, a district court "ha[d] power, *in its discretion*, to increase the damages a plaintiff suffers." *Overman*, 66 F.2d at 362 (emphasis added). In such a case, "[t]he exercise of that discretion [would] not be reversed on appeal if there be justification and reason therefor. Unless it is made clear from the facts that there was no warrant for the increased damages, . . . an increase of damages will not be disturbed." *Id.* (citations omitted); *see also Wallace & Tieman Co. v. City of Syracuse*, 45 F.2d 693, 695 (2d Cir. 1930) (reviewing the decision to enhance damages for abuse of discretion); *Fox v. Knickerbocker Engraving Co.*, 165 F. 442, 444−45 (2d Cir. 1908) (same). Viewed against that backdrop, the discussion of willfulness in the cases relied upon by the majority appears to me to be related more to the enhancement of damages, such as declaring that punitive damages apply, and less to the modern willfulness inquiry.

## B

The definition of willful patent infringement has changed significantly over time. Our most recent formulation of this standard originated in *In re Seagate Tech-*

*nology, LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc). In *Seagate*, we abandoned the affirmative duty of due care from *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389−90 (Fed. Cir. 1983), and held that "proof of willful infringement *permitting* enhanced damages requires at least a showing of objective recklessness." *Seagate*, 497 F.3d at 1371 (emphasis added). *Seagate* established a two-prong test for establishing recklessness. First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* Once the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.*

The first prong of *Seagate* requires proof that overlaps significantly with the question of liability for infringement. For example, this prong may involve questions of claim construction. *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (affirming a finding of no willful infringement because a term was "susceptible to a reasonable construction under which [the accused] products did not infringe"). It can be bound up in the infringement determination itself. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1336−37 (Fed. Cir. 2009) (holding that the first prong was not met when "the record developed in the infringement proceeding . . . , show[ed] that the question of equivalence was a close one," particularly in light of the intensely factual inquiry involved in the doctrine of equivalents analysis). It frequently involves whether the infringer has a reasonable defense to liability. *See, e.g., Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) ("The 'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of

infringement."). None of these issues could reasonably be said to be part of an accounting.

The second prong of *Seagate* is closer to the willfulness inquiry performed by special masters as part of an accounting. This prong considers whether the objective risk from the first prong "was either known or so obvious that it should have been known to the accused infringer." 497 F.3d at 1371. Ultimately, however, because the second prong is defined by reference to the first, this part of the willfulness inquiry cannot be viewed in isolation. This is especially true when induced infringement is at issue, because induced infringement is decided in part on the accused infringer's state of mind. And, as with the first prong, the facts relevant to the infringer's state of mind have little to do with damages or with an accounting.

"[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). The modern willfulness inquiry, as set forth in *Seagate*, was not in the cluster of ideas attached to the either "willfulness" or "accounting" when Congress passed § 1292(c)(2) or its predecessor. The *Seagate* inquiry bears little resemblance to the duty of care that it replaced, and even less resemblance to the special master's willfulness determination in the cases relied on by the majority. I see no basis to retroactively import *Seagate* into § 1292(c)(2)'s exception to the rule of finality.

C

*Seagate* was careful to distinguish between the determination that infringement was willful and the decision of whether damages should be enhanced. *Id.* at 1368

("[A] finding of willfulness does not require an award of enhanced damages; it merely permits it."). *Seagate*'s holding carefully separates willfulness from enhancement: "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Seagate*, 497 F.3d at 1371. This is so because a separate legal standard and standard of review govern the decision to enhance damages.

For example, in deciding how much, if any, to enhance damages, the district court must consider a variety of factors. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826−27 (Fed. Cir. 1992). In particular, this court has identified nine factors that may be relevant to determination of whether damages should be enhanced: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent, investigated the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior in the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the misconduct; (7) the remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Id.* The district court's application of these factors is reviewed for abuse of discretion. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858-59 (Fed. Cir. 2010), *aff'd*, ____ U.S. ____, 131 S. Ct. 2238 (2011).

The majority fails to recognize the distinction between the willfulness determination and the decision to enhance damages. In my view, the distinction is critical. Although it is difficult to discern much about willfulness from the cases upon which the majority relies, I find that the references to willfulness in those cases have more in common with the analysis under *Read* than with the analysis under *Seagate*—the determination of willfulness

in the old cases is made in support of the decision to enhance damages and is reviewed for abuse of discretion.

I acknowledge an overlap between the second prong of *Seagate* and the *Read* factors. But the fact that some overlap exists is of little importance here because ultimately, neither prong of *Seagate* is remotely related to an accounting of damages. For example, objective reasonableness does not depend on the amount of lost profits or the reasonable royalty. The *Read* factors, on the other hand, relate almost exclusively to damages and not to liability. Thus, while there is <u>substantial overlap</u> between the operative facts and law of the liability inquiry and the *Seagate* test, there is <u>virtually no overlap</u> between operative facts and law of the damages inquiry and the *Seagate* test.

I therefore agree with the majority opinion to the extent that it can be read to hold that the term "accounting," as used in § 1292(c)(2), includes the district court's decision to enhance damages. I cannot agree that an "accounting" incorporates the current *Seagate* standard for determining willfulness, a standard that today is far removed from anything Congress might have intended § 1292(c)(2)'s predecessor to encompass in 1927.

## IV

When Congress passed the predecessor to § 1292(c)(2), it expressed its belief that the availability of a preaccounting interlocutory appeal was necessary to "prevent a great burden of expense to litigants in actions to determine the validity of patents." H.R. Rep. No. 1890, 69th Cong., 2d Sess. 1 (1927). The majority believes that this statement of Congressional intent further supports its conclusion that interlocutory appeals should be available prior to a trial on damages, especially "[g]iven the substantial reversal rate of liability determinations on ap-

peal."[1]  Majority Op. at 20.  In the context of willfulness, however, the Congressional intent points to an opposite conclusion.  Allowing appeals prior to a determination on willfulness will force litigants to try and appeal virtually identical sets of facts and issues twice.

At trial, willful infringement is not treated as an "accounting."  To the contrary, juries are asked to decide whether the infringing conduct was carried out in the face of known risks.  To prove infringement, a patentee must show the infringer made, used, or sold a product satisfying each element of the asserted claims.  To prove that infringement was willful, a patentee must further show that the party in possession of the accused product engaged in that conduct despite its awareness of a looming risk of infringement.  As it plays out in the context of a trial, before there is any consideration of compensation, a fact finder typically answers a "yes" or "no" as to whether the patentee has carried its burden in proving liability for infringement.  The same "yes" or "no" question is posed for charges of willful infringement.  In my view, it is not a coincidence that on the jury verdict form, the question for willfulness typically follows immediately after the jury instruction on liability.

The majority expounds its opinion upon theory whereas the reality of practice in the courtroom is in opposite.  In presenting the factual elements of willfulness, the parties build a case that is bundled with proof of

---

[1]    This statement, I find interesting, especially in view that our high reversal rates are purported to be with respect to claim construction and not liability.  Borrowing the majority's reasoning, high reversal rates on liability would support my view that willfulness, as a component of liability, should not be left undecided.  Of course, I do not believe that rates of reversal should be a basis for fashioning exceptions to the finality rule.

infringement. Often, this will include documents from the same technical custodians, testimony from the same witnesses, and attorney arguments that tie the framework set forth in *Seagate* to the actual people, products, and decisions that compel the presence or absence of willful infringement. The *Seagate* determination is inextricably intertwined with liability for infringement—they are two sides of the same coin. The damages issue, on the other hand, is a coin of an entirely different cast.

While the willful infringement inquiry is bound up with *conduct*, the damages inquiry is bound up with *compensation*. Willful infringement exists, or not, regardless of monetary consequences. Its only relation to damages is as a prerequisite to their enhancement. A patentee can prove its case for willful infringement without any mention of damages; it can prove its damages case without mention of liability or willfulness. If it succeeds in proving the former, the latter may be enhanced. This is a critical point of distinction between our modern willfulness framework and the historical "accounting" that is illuminated by the majority where willfulness and enhancement were not carefully separated.

Whether to enhance damages is a post-trial assessment reserved to the discretion of the court. It involves a two-step process.[2]   Before a patentee can sit atop the

---

[2]   It is well-established that the decision whether to grant enhanced damages as allowed under 35 U.S.C. § 284 requires a two-step process. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996). "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Id.*

ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.          13

summit and request a court to award enhanced damages, it must first climb the mountain by showing the objectively-defined risk and how the infringer disregarded that risk. Today, the willfulness inquiry is tied to the liability inquiry in that both must be tried and proved as threshold matters and in complete isolation from any consideration regarding compensation.[3]

To allow appeal of liability prior to infringement is to litigate—and probably to appeal—what are essentially the same facts and the same law twice. I cannot extend § 1292(c)(2)'s limited exception to the rule of finality this far. Under the majority's holding, § 1292(c)(2) will no longer achieve Congress's goal of avoiding unnecessary expense—it will ensure that infringement trials are further delayed and needlessly expensive.

\* \* \*

For the foregoing reasons, I would hold that interlocutory appeal is available prior to a determination on the enhancement of damages but is not available prior to the determination of willfulness. The majority having concluded otherwise, I respectfully dissent.

---

[3]     Of course, district courts maintain their discretion to bifurcate the liability and willfulness portions of a trial when concerns regarding prejudicial evidence or other compelling factors arise and I have complete trust in a district court's ability to do so. It is up to the individual district courts to fashion a trial plan that best accommodates the court, the parties, and the facts of any particular case.

# United States Court of Appeals
# for the Federal Circuit

———————————

**ROBERT BOSCH, LLC,**
*Plaintiff-Appellant,*

**v.**

**PYLON MANUFACTURING CORP.,**
*Defendant-Cross-Appellant.*

———————————

2011-1363, -1364

———————————

Appeals from the United States District Court for the District of Delaware in No. 08-CV-0542, Judge Sue L. Robinson.

———————————

O'MALLEY, *Circuit Judge*, dissenting, with whom WALLACH, *Circuit Judge*, joins.

There is no doubt that § 1292(c)(2) is an exception to the final judgment rule that applies only to patent cases and, thus, expands the normal appellate jurisdiction of this, and only this, court of appeals. On this point, I agree with the majority. The question we address is whether the scope of that exception has the astounding breadth the majority affords it today. I do not believe that it does. Indeed, I believe the majority stretches that statutory provision beyond reasonable bounds, and well beyond anything Congress intended.

Congress created this court pursuant to its authority under Article III of the United States Constitution. Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25. As such, the scope of our jurisdiction is defined by Congress, as are the rules and procedures we are to follow. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("'Courts created by statute can have no jurisdiction but such as the statute confers.'" (quoting *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850))). We may not expand that jurisdiction or differentiate ourselves from other Article III courts based on the subject matter of the cases before us, our own policy views of how best to resolve cases in those subject matter areas, or even the understandable docket-driven concerns of the tribunals from which our appeals arise. The Supreme Court repeatedly has reminded us that the unique nature of our subject matter jurisdiction does not justify our adoption of unique rules—whether procedural or substantive. *See, e.g., Gunn v. Minton*, 133 S. Ct. 1059, 1064, 1068 (2013) (applying general principles of "arising under" and disagreeing with our jurisprudence holding that a state law malpractice claim involving patent disputes arises under federal patent law); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 122, 131, 132 n.11 (2007) (overturning a decision by this court pertaining to a declaratory judgment action by a patent licensee because the legal standards employed conflicted with general declaratory judgment jurisprudence); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006) (rejecting this court's attempt to develop a rule regarding the right to injunctive relief "unique to patent disputes," holding that "the traditional four-factor framework . . . governs the award of injunctive relief").

Despite these reminders, the majority today once again concludes that matters before this court may be treated differently than civil litigation before every other court of appeals in the federal system. The majority

claims that this time, it is authorized to endorse unique procedures for patent litigation coming from district courts—procedures that differ markedly from those employed in our sister circuits—because there is a statutory provision that expressly authorizes it to do so: 28 U.S.C. § 1292(c)(2).  I disagree.

I dissent from both of the majority's conclusions.  I do not believe we are authorized to hear interlocutory appeals of liability judgments where a request for a jury trial on damages remains outstanding or a request for a finding of willful infringement has not yet been addressed.  I believe this appeal should be dismissed because it is a non-final judgment over which we have no jurisdiction.  I would remand the matter to the trial court pending further proceedings and entry of a final judgment.

## I.

The final judgment rule imposes an important limitation on jurisdiction of all Article III courts of appeal.  Under 28 U.S.C. § 1295(a)(1), except in very limited circumstances, this court has jurisdiction only over appeals "from a *final decision* of the district courts . . . in any civil action arising under . . . any Act of Congress relating to patents."  (emphasis added).  The Supreme Court has characterized a final decision as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).  In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981), the Supreme Court explained that the "rule[] that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits[] serves a number of important purposes."  449 U.S. at 374.  According to the Court:

4        ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

> [The final judgment rule] emphasizes the defer-
> ence that appellate courts owe to the trial judge as
> the individual initially called upon to decide the
> many questions of law and fact that occur in the
> course of a trial.  Permitting piecemeal appeals
> would undermine the independence of the district
> judge, as well as the special role that individual
> plays in our judicial system.  In addition, the rule
> is in accordance with the sensible policy of
> avoid[ing] the obstruction to just claims that
> would come from permitting the harassment and
> cost of a succession of separate appeals from the
> various rulings to which a litigation may give rise,
> from its initiation to entry of judgment.  The rule
> also serves the important purpose of promoting ef-
> ficient judicial administration.

*Id.* (second alteration in original) (citations and internal quotation marks omitted).  Thus, "[t]he finality require-ment . . . embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon*, 418 U.S. 683, 690 (1974).

In all other circuits and all other types of cases, the finality requirement plainly applies to outstanding dam-ages determinations.  *See, e.g., F.H. Krear & Co. v. Nine-teen Named Trustees*, 776 F.2d 1563, 1564 (2d Cir. 1985) (per curiam) ("We have held that where attorneys' fees are a contractually stipulated element of damages, a judgment is not final until the fees have been deter-mined."); *Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 358 (4th Cir. 2005) ("[A] judgment on liability that does not fix damages is not a final judg-ment because the assessment of damages is part of the merits of the claim that must be determined."); *Deloach v. Delchamps*, 897 F.2d 815, 826 (5th Cir. 1990) (stating that "a judgment is not final until both liability and damages are determined"); *Maristuen v. Nat'l States Ins. Co.*, 57

F.3d 673, 678 (8th Cir. 1995) ("A judgment awarding damages but not deciding the amount of the damages or finding liability but not fixing the extent of the liability is not a final decision within the meaning of § 1291."); *Rekstad v. First Bank Sys.*, 238 F.3d 1259, 1262 (10th Cir. 2001) (noting "the well-accepted rule that an order deter-mining liability but leaving damages to be calculated is not final unless the correct amount of damages is self-evident and not likely to be the subject of future appeal").

After a jury trial on the liability issues presented in this patent case, and attendant motion practice, the trial court entered judgment on those liability issues.  Recog-nizing that its judgment was not final within the meaning of § 1295(a)(1) and a traditional understanding of the finality requirement, the trial court entered judgment pursuant to Federal Rule of Civil Procedure 54(b) and encouraged the parties to pursue an interlocutory appeal on the basis of that certification.[1]

Correctly contending that Rule 54(b) does not permit certification of judgments which fail to resolve all issues

---

[1]    Under Rule 54(b), "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Although it applies to multiple claims in a single action, Rule 54(b) itself provides no exemption from the rule that each of those claims be finally decided under 28 U.S.C. § 1295.  *See, e.g.*, *Henrietta D. v. Giuliani*, 246 F.3d 176, 181 n.1 (2d Cir. 2001) ("[W]here a district court is considering further relief on a claim, 'final judgment' on the claim ordinarily may not be entered under Rule 54(b)." (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742-43 (1976))).

with respect to a claim or party, Bosch moved to dismiss its own appeal and Pylon's cross appeal. *Robert Bosch LLC v. Pylon Mfg. Corp.*, Nos. 2011-1363, -1364, Dkt. No. 24 (June 24, 2011). In denying that motion, the motions panel did not rely on Rule 54(b).[2] *Robert Bosch LLC v. Pylon Mfg. Corp.*, 426 F. App'x 912, 913 (Fed. Cir. 2011) (citing 28 U.S.C. § 1292(c)(2) as the basis for denying Bosch's motion to dismiss). Instead, in denying Bosch's motion to reconsider this court's denial of Bosch's motion to dismiss, we cited to our 1988 decision in *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988), for the proposition that 28 U.S.C. § 1292(c)(2) is a broad exception to the finality rule, allowing for interlocutory appeals in patent cases even where "a jury trial . . . on the issues of damages and willfulness" remains pending. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 437 F. App'x 947, 948 (Fed. Cir. 2011).

Bosch continued to dispute our jurisdiction over this appeal despite the motions panel's ruling, arguing to the merits panel that § 1292(c)(2) does not apply to jury trials on damages or willfulness determinations; Bosch contends

---

[2]    There is no dispute that a Rule 54(b) certification is not appropriate in the circumstances presented here. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, Nos. 2011-1363, -1364, Dkt. No. 25 (July 8, 2011) (conceding that the jurisdictional issue turns on § 1292(c)(2)); *see also Cadleway Props. v. Ossian State Bank*, 478 F.3d 767, 769 (7th Cir. 2007) ("[T]he district judge has not specified who is entitled to what relief. . . . [A] decision that resolves a dispute about liability while leaving relief to be determined cannot be appealed under Rule 54(b)."); *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 487 (8th Cir. 1992) ("[W]hen the issues of liability and remedy were bifurcated for trial, Rule 54(b) did not provide a basis for an interlocutory appeal of the order entered after the first trial.").

that § 1292(c)(2) does not operate as the broad exception to the finality rule which either *Calmar* or the motions panel described. Because we have an obligation to assess our jurisdiction at all stages of proceedings before us, we agreed to consider the scope and import of § 1292(c)(2) en banc.

## II.

Section 1292(c)(2) grants this court jurisdiction over "an appeal from a judgment in a civil action for patent infringement which . . . is final except for an accounting." As an exception to the final judgment rule, § 1292(c)(2) is to be interpreted narrowly. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867-68 (1994) (stressing the importance of the final judgment rule and expressing concern when a narrow exception threatened to "swallow the general rule"); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978) (stating that "Congress carefully confined" the availability of immediate review of non-final orders); *Cobbledick v. United States*, 309 U.S. 323, 324-25 (1940) ("Finality as a condition of review . . . was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all." (footnotes omitted)).[3] Rather than interpreting § 1292(c)(2) narrowly,

---

[3]      *See also Albert v. Trans Union Corp.*, 346 F.3d 734, 737 (7th Cir. 2003) (statutory exceptions to final judgment rule are to be narrowly construed); *Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc.*, 351 F.2d 552, 553 (1st Cir. 1965) (statutes permitting interlocutory appeals are to be strictly construed); *Florida v. United States*, 285 F.2d 596, 600 (8th Cir. 1960) ("statutes authorizing interlocutory appeals are to be strictly construed," and "[c]hanges in appeal jurisdiction should be made by appropriate legislation, not by judicial modification"). *But see* 28 U.S.C. § 1292(e) authorizing the Supreme Court,

however, the majority grossly expands this court's jurisdictional reach by adopting a broad definition of what constitutes an "accounting" under that rule.  Because I believe the term "accounting" only applies to a limited class of proceedings before special masters or to those instances in which the trier of fact has decided all matters relevant to a damages determination save the application of those decisions to an undisputed set of numbers, I do not believe § 1292(c)(2) justifies the exercise of jurisdiction over this appeal.

As the majority concedes, our statutory analysis must begin "with 'the assumption that the ordinary meaning of the language' chosen by Congress 'accurately expresses the legislative purpose.'" *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245 (2011) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)).  When Congress "uses a common-law term in a statute, we assume the term . . . comes with a common law meaning, absent anything pointing another way." *Id.* (citations omitted).  In discerning the boundaries of such a term, we must look to what was meant by the term at the time the statute was drafted.  *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 21 (1999) ("It is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.") (citations omitted); *Standard Oil Co. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.") (citations omitted).  Thus, what was meant by reference to an

---

but only the Supreme Court, to expand interlocutory jurisdiction of courts of appeals by rule.

"accounting" at the time the exception codified in § 1292(c)(2) was originally enacted is critical to our inquiry.

The majority begins this inquiry by asking and answering the wrong question—whether an "accounting" as of 1927 only permitted consideration of an infringer's profits or also allowed calculation of a patentee's damages. While the majority's discussion of this point is thorough and erudite, it is irrelevant. What we should ask is not what questions may be considered during the course of an "accounting" but whether the procedure that was an "accounting" as of 1927—the one contemplated in § 1292(c)(2)—is the same as or encompasses a jury trial on any of those same questions.[4]

Turning then to what is really at issue here—whether the "accounting" Congress contemplated in § 1292(c)(2) is the same thing as a jury trial on damages—the majority cites "four points" in support of the conclusion that it is: (1) the fact that in 1948, Congress changed the predecessor to § 1292(c)(2) so as to allow for appellate jurisdiction in "civil actions" without deleting the reference to an "accounting"; (2) the majority's belief that juries assessing damages must resolve "the same issues" special masters historically decided in accountings; (3) the majority's belief that allowing appeal of judgments that are final except for a jury trial on damages promotes the same policies that prompted Congress to allow interlocutory appeal of judgments final except for an accounting in equity proceedings; and (4) a general reliance on stare

---

[4]    Admittedly, Bosch invited the court to go down this rabbit hole by arguing that "accountings" never included a calculation of anything other than an infringer's profits, as distinct from an assessment of damages; it remains an essentially irrelevant inquiry nonetheless.

decisis. *See* Maj. Op. at 13-14. I find none of those points persuasive.

## III.

I analyze the majority's justifications for expanding the jurisdictional scope of § 1292(c)(2) in the order in which it reaches them.

## A.

The majority's only attempt at a statutory analysis to support its holding is its claim that, by substituting the phrase "civil actions" for "suit[s] in equity" in the jurisdictional grant of § 1292, Congress somehow intended to expand the concept of an accounting to include jury trials on damages. The disregard for the importance of the right to a jury trial and misunderstanding of what a jury trial entails which is evident in this proposition is stunning.

As the majority concedes, in 1927, "Congress gave the term 'accounting' its judicially settled meaning (i.e., proceedings before a special master to determine the infringer's profits and the plaintiff's damages) when it enacted § 227a," the predecessor to § 1292(c)(2). Maj. Op. at 11. Section 227a expressly pertained only to "suit[s] in equity"—proceedings in which a jury trial on damages was unavailable. And, the accounting employed in those proceedings was one in which *post-trial* the exercise of applying the trial court's findings to the sales of infringing products for purposes of calculating an award to the patent holder occurred. At no point after 1927 did Congress expressly expand the definition of accounting to include anything other than this original construct.

So how does a word with an admitted original meaning and scope morph from one thing into another? How does an equitable proceeding that contemplates a crunching of numbers post-trial now encompass the very different process of a jury trial on damages? The majority says

that Congress dramatically revamped the concept of an accounting without ever actually saying so.  Specifically, the majority concludes that, when Congress revised 28 U.S.C. § 1292 in 1948 to give courts of appeals jurisdiction over judgments in "civil actions for patent infringement which are final except for accounting," Congress really meant to say that they were doing away with the concept of "accountings" contemplated in the 1927 Act and redefining the old word "accounting" to mean *any* procedure, including jury trials, in which *any* decision-maker either awarded or assessed *any* measure of damages in patent cases.  I cannot take that leap of logic with my colleagues.

In 1927, a court hearing a case under the patent laws "according to the course and principles of courts of equity" was permitted, upon a finding of infringement, to allow the complainant to recover "in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby."  Patent Act of 1922, Pub. L. No. 67-147, ch. 58, § 8, 42 Stat. 389, 392; Patent Act of 1870, ch. 280, § 55, 16 Stat. 198, 206.  Thus, in any bill of equity seeking relief from an infringer, a plaintiff was entitled to have a special master perform an accounting to calculate an infringer's profits or a patentee's own lost sales, to the extent provable.  In 1946, 35 U.S.C § 70 was amended to allow a patent holder to recover "general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefore, together with such costs, and interest, as may be fixed by the court."  60 Stat. 778 (1946); *see also* 35 U.S.C. § 284 (2006).  The Supreme Court has explained that the purpose of this statutory change largely was to eliminate the recovery of an infringer's "profits" in most patent actions and to allow only for damages tied directly to the infringement.  *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505-06 (1964).  The legislative history of the 1946 amendments suggests that the purpose of this change was to reduce the cost of ac-

countings before special masters in courts of equity by eliminating the most complex aspects of the task special masters were asked to undertake post-trial.  The Committee on Patents of the House of Representatives noted:

> Frequently a suit for patent infringement involves the infringement of only an improvement in a complex machine, and it is impossible to apportion profits due to the improvement.  In such circumstances the proceedings before masters, which are conducted in accordance with highly technical rules and are always expensive, are often protracted for decades and in many cases result in a complete failure of justice.

> Although the bill would not preclude recovery of profits as an element of general damages, . . . by making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits, the measure represents proposed legislation which in the judgment of the committee is long overdue.

H.R. Rep. No. 1587, 79th Cong., 2d Sess. 1 (Feb. 19, 1946); *see also* 92 Cong. Rec. 9188 (1946) (statement of Sen. Pepper) ("Experience has proven that it is such a difficult accounting matter to determine what the profit of the alleged infringer has been that there is almost always an interminable delay in connection with the recovery sought.  Consequently, the basis laid down by this bill is general compensatory damages which the plaintiff in suit sustains.").  Despite these changes in the remedies available for patent infringement, there is no indication that the meaning of the term "accounting" ever changed.  Congress only was addressing those remedies which could be calculated post-trial in an equitable proceeding.  It was not describing or redefining the nature of that proceeding.

In 1948, § 227a was recodified at 28 U.S.C. § 1292(a)(4) to reflect the 1938 merger of law and equity

and the 1946 revision to the patent damages statute. In relevant part, the phrase "suit[s] in equity" was replaced with the phrase "civil actions." H.R. Rep. 308, 80th Cong., 1st Sess., A111 (1948) ("In subsection (3), which is based on section 227a of title 28, U.S.C., 1940 ed., words 'civil actions' were substituted for 'suits in equity' . . . ."). The majority makes much of this substitution; in fact, it is the only reed upon which the majority attempts to support its statutory analysis. While the reference to "civil actions" in 1948 was necessary to make clear that appellate jurisdiction over patent actions was broad enough to cover actions which *combined* legal and equitable claims, there is nothing in the Act or its legislative history which indicates that the word "accounting" took on an entirely new meaning. As the majority acknowledges, "accountings"—as the term was used in 1927 (i.e., proceedings before a special master that could include the determination of damages)—continued to be available in civil actions following the merger of law and equity and continue to be available in limited circumstances today. Maj. Op. at 17 n.2. If the word "accounting" was really redefined in 1948, it means that the term *both* had to retain its original meaning *and* take on procedures that were not employed in patent cases in 1927.

Rather than alter the concept of an accounting to include a jury trial on damages, the merger of law and equity simply permitted both types of relief to be sought in a single action, while maintaining the essential character of each. *See Kennedy v. Lasko Co.*, 414 F.2d 1249, 1251-52 (3d Cir. 1969) (merger of actions into a single action under Rule 2 of the Federal Rules of Civil Procedure did not obliterate the distinction between them—actions at law can remain triable to a jury; actions in equity are not). The 1948 amendments to § 1292, rightly understood, simply clarified that the actions merged by the Federal Rules in 1938 were collectively appealable when final. In context, the continuing reference to an

14      ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

accounting in § 1292(c)(2) is simply a continuing recognition that actions in equity for infringement continued to the extent a patentee either chose to forgo a right to damages at law or the remedy at law was inadequate. *See AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150, 153 (10th Cir. 1965) (equitable and legal actions combined in single action, but equitable damage remedy must give way to legal one except where legal remedy is wholly inadequate).

In equating an accounting before a special master with a jury trial on damages—and concluding Congress did so as well—the majority not only mischaracterizes the import of the 1948 amendment to § 1292, it also ignores the distinction between juries and special masters as decision-makers, and ignores the distinctions between what each has the authority to decide. Indeed, the proposition that a *jury trial* on damages is different from an *accounting* should be uncontroversial.

The Supreme Court has rejected soundly the contention that an accounting by a special master is a mere substitute for a jury trial on damages. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). Rule 38 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." In *Dairy Queen*, a defendant charged with breach of contract and trademark infringement demanded a jury trial on liability and damages. Relying in part on the fact that the plaintiff's complaint also sought "an accounting of profits illegally obtained by the defendant," the district court struck the defendant's demand for a trial by jury. *McCullough v. Dairy Queen, Inc.*, 194 F. Supp. 686, 687 (E.D. Pa. 1961). The Third Circuit denied the defendant's petition for mandamus to compel the district judge to vacate the order striking the demand for a jury trial, and the Supreme Court granted certiorari. *Dairy Queen*, 369

ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.        15

U.S. at 470.  In reversing both the Third Circuit and the district court, the Supreme Court discounted the importance of the use of the word "accounting" in the plaintiff's prayer for relief, stating that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."  *Id.* at 477-78. According to the Court, to maintain a suit for an equitable accounting, "the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Id.* at 478.  The Court then held that, "[i]n view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met."  *Id.*  Finding that a jury "could readily determine the recovery, if any," the Court concluded that the district court erred in refusing to grant the defendant's demand for a trial by jury.  *Id.* at 479.

Following the Supreme Court's guidance in *Dairy Queen*, in 2009 the Tenth Circuit reversed a district court's decision to appoint a special master to perform an accounting where the plaintiff requested a trial by jury on damages.  *Haynes Trane Serv. Agency v. Am. Std., Inc.*, 573 F.3d 947, 964 (10th Cir. 2009).  While the court in *Haynes* recognized that a narrow exception to the general entitlement to have a jury assess damages exists where there is no adequate remedy at law, it concluded the exception only applies in the rare situation where computational complexities mandate that a jury cannot adequately perform the task. *Id.* at 964-65.  Because it found no support for "the view that a prolonged trial in itself provides an inadequate remedy at law," and that "the damages issue cannot be separated from the merits of the liability claim," the court remanded for a new trial on the

16          ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

entire action.  *Id.* at 965-67; *see also AMF Tuboscope*, 352
F.2d at 153; *Thermo-Stitch, Inc. v. Chemi-Cord Processing
Corp.*, 294 F.2d 486, 491 (5th Cir. 1961) ("It would make
no difference if the equitable cause clearly outweighed the
legal cause so that the basic issue of the case taken as a
whole is equitable.  As long as any legal cause is involved
the jury rights it creates control.").

If a district court violates the Seventh Amendment by
ordering an accounting in the place of a jury trial on
damages, how can a jury trial on damages literally *be* an
"accounting" within the meaning of § 1292(c)(2)?[5]

In equating an accounting with a jury trial on damag-
es, the majority also disregards the determinations which
juries as fact-finders make in the context of a damages
assessment.   In damages trials, juries determine the
entitlement to damages, the nature of the damages recov-
erable (lost profits, reasonable royalty, convoyed sales,
etc.), and the formula to be employed in determining the
measure of those damages (the percentage of profits that

---

[5]    The majority is correct that we did not take this
matter en banc to consider the constitutional implications
of blanket bifurcation orders requiring damages to be
tried to a different jury than the one that considered the
liability issues in the case.   That fact does not mean we
can ignore those issues, however, when interpreting the
jurisdictional reach of § 1292(c)(2).   *See Gasoline Prods.
Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931) (find-
ing that a partial retrial of damages violated the Seventh
Amendment where "the question of damages . . . is so
interwoven with that of liability that the former cannot be
submitted to the jury independently of the latter without
confusion and uncertainty, which would amount to a
denial of a fair trial").   We should not assume Congress
ignored the possible Seventh Amendment implications of
its actions when it revised § 1292(c) in 1948.

represents a reasonable royalty; whether that percentage should be applied against the entire market value of the infringing product or some incremental portion thereof, etc.). To aid them in assessing the right to and appropriate measure of damages, we instruct the jury to consider a broad range of factors. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing relevant considerations including "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity"; "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results"; and "[t]he amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement"). None of these decisions was made by special masters in suits in equity.

In suits in equity, a special master's services were only invoked once the court determined that a patentee was entitled to a monetary remedy. Initially, the award only took the form of an infringer's profits on infringing sales—which then were calculated without consideration of apportionment. *See, e.g.*, *Livingston v. Woodworth*, 56 U.S. (15 How.) 546 (1853) (holding that damages cannot be awarded in an equity proceeding and any award was limited to an infringer's profits). Later, when damages became a permissible consideration, the court would either instruct the special master which calculation to employ (profits or damages or some combination), and what formula to employ, including what percentage of sales would represent a reasonable royalty, or would consider *recommendations* from special masters as to those matters. *Boesch v. Graff*, 133 U.S. 697, 699 (1890) ("Exceptions were filed to [the special master's] report [including damages of $2,970.50], *and overruled*, and a final decree entered in favor of Graff and Donnell . . . from

which decree this appeal has been prosecuted." (emphasis added)); *K.W. Ignition Co. v. Temco Electric Motor Co.*, 283 F. 873, 874 (6th Cir. 1922) (stating that the special master *recommended* an award damages, a portion of which the district court overruled). At no point was the special master given the authority to make those final determinations, or to decide a patentee's entitlement to any particular remedy. The right to have the court, the only trier of fact available then, make those determinations remained inviolate.

The fact that the jury was given the right to make these decisions in civil actions indicates that Congress equated juries with the court of equity, not with a special master whose only authority was to apply the findings given to him to a set of data. Thus, the fact that Congress failed to redefine the term accounting in 1948 is meaningful, but it is not meaningful in the way the majority believes. Rather than broaden the importance of an accounting in patent cases, Congress narrowed the circumstances in which § 1292(c) would justify disregard of the finality requirement to that narrow class of cases in which an equitable accounting might still be necessary—cases which the Supreme Court explained are both "exceptional" and "rare." *Dairy Queen*, 369 U.S. at 478 ("In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met."). I just cannot understand the majority's conclusion to the contrary.[6]

---

[6]   The majority's discussion of *Dairy Queen* is confounding. It begins with a mischaracterization of this opinion, ends with a mischaracterization of Wright and Miller's description of *Dairy Queen*, and sandwiches an

## B.

The majority's next point in support of its ruling is its claim that, because the special master and the jury decide the "same issues" when serving their respective functions, a modern damages trial rightly should be considered an accounting for purposes of § 1292(c)(2). Maj. Op. at 19. I have already explained why I believe the majority's fundamental premise is wrong—a special master is simp-

incorrect reading of *Dairy Queen* in between. While who the decision maker is in an accounting is relevant to the inquiry, the relevant inquiry is one that asks whether the *procedure* that is an accounting is the same as the *procedure* that is a jury trial on damages. The Supreme Court not only did not equate the two in *Dairy Queen*, it emphasized the difference between the two; it simply found the right to the latter to be too important to be lost by sloppy references to the former. What it said is "[t]he respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen*, 369 U.S. at 477-78. Consistent with this reading of *Dairy Queen*, Wright and Miller note "[l]abeling the claim as one for an accounting also does not defeat the right to a jury." 9 Charles Alan Wright & Arthur R. Miller, 9 *Federal Practice and Procedure: Civil* § 2312, at 165 (3d ed. 2008). If either the Supreme Court or Wright and Miller believed—as does the majority—that the procedure that is an accounting *is the same as* the procedure that is a jury trial, one would think they would have said so, thereby avoiding any need to be concerned with "labeling" or word "choices" in pleadings. Rather than support the majority's strained reading of the term accounting, the authorities to which it cites suggest the contrary.

20      ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

ly not in the same class of decision-maker as a jury and does not decide the same issues a jury is authorized to decide. And, I have explained why I believe the majority's point is irrelevant in any event because the inquiry we undertake should not be what questions a special master might be entitled to ask in an accounting, but what an accounting—the procedure itself—actually is.

On the latter point, it is notable that the majority does not contend, nor could it, that any common understanding of the term "accounting" would ever justify the broad meaning it believes Congress ascribed to it. *See* The Oxford English Dictionary 87 (2d ed. 1989) (defining "accounting" as "[t]he action or process of reckoning, counting, or computing; numeration, computation, calculation"). This common understanding aligns directly with that used in the Federal Rules of Civil Procedure. For instance, Federal Rule of Civil Procedure 53(a)(1)(B)(ii) allows the appointment of a master to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if the appointment is warranted by[] the need to perform an accounting or resolve a difficult *computation of damages*." (emphasis added). The 2003 Advisory Committee Notes further indicate that Rule 53(a)(1)(B)(ii) relates to "ministerial determinations that require mastery of much detailed information but that do not require extensive determinations of credibility."

I see nothing about a jury trial on damages which can be characterized as the "same" as a special master's role in an accounting other than the fact that both, at some point, involve calculations.

## C.

The majority's next point is its policy argument—that, since Congress passed § 1292(c)(2) to address the extraordinary expense involved in the process of an accounting, we should use § 1292(c)(2) to save parties from the ex-

penses involved in damages trials. Putting aside the question of whether allowing interlocutory appeals in all patent cases would truly result in cost savings—a premise the finality rule itself soundly rejects—there is simply no comparison between the equitable accountings of old and a modern jury trial on damages. Presenting a damages case may add to the length of a patent trial, but the added time is measured in hours and days, not the many years that prompted the exception for appeals of judgments that are "final except for an accounting." *See* George P. Dike, *The Trial of Patent Accountings in Open Court*, 36 Harv. L. Rev. 33, 36 n.7 (1922) (describing the elaborate procedure employed when attempting to calculate an infringer's profits and explaining that in a "typical case" "the proceedings before the master alone extended over five years"). The average patent trial, with a full damages presentation, lasts approximately 7 to 14 days, not the half a decade accounting procedures spanned.[7] *See* Timothy J. Malloy, *1 Size Doesn't Fit All in Patent Trials*, Law360 (October 28, 2010), http://www.law360.com/articles/203660/1-size-doesn-t-fit-all-in-patent-trials.

Even accepting the majority's conclusion that the policies advanced by its result today align with those which prompted Congress to pass the predecessor to § 1292(c)(2) in 1927, it is not our role to expand what Congress did to

---

[7] Notably, the complexities involved in trying damages issues in patent cases are no different from those entailed in other complex civil actions. Antitrust cases, those involving securities fraud, and even those concerning multi-layer insurance claims are just a few examples of actions where damages presentations to juries must be both sophisticated and lengthy. No one would presume to exempt those cases from the normal rules governing actions in Article III courts based on that reality. We should not exempt patent cases from those rules either, in the absence of a *clear* congressional intention to do so.

22      ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

address a very specific problem into an entirely different realm. *See, e.g., Ebert v. Poston*, 266 U.S. 548, 554 (1925) ("The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. A *casus omissus* does not justify judicial legislation. . . . [C]are and particularity in treatment preclude expansion of the Act in order to include transactions supposed to be within its spirit, but which do not fall within any of its provisions.") (internal citations omitted); Frank H. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev. 533, 548 (1983) ("Judicial interpolation of legislative gaps would be questionable even if judges could ascertain with certainty how the legislature would have acted. . . . What each Congress does binds the future until another Congress acts, but what a Congress might have done, had it the time, is simply left unresolved. The unaddressed problem is handled by a new legislature with new instructions from the voters."). Absent any indication to the contrary, we must assume that Congress contemplated an "accounting" when it used the term "accounting," and we should not broaden that term's definition to cover something as fundamentally different as a jury trial, no matter what policy reasons we might cite to justify such an expansion.

While I recognize that § 1292(c)(2) was expressly designed to provide an exception for patent cases, Congress has not indicated, nor do I believe that it is true, that a determination of damages in a patent case is so burdensome that it is to be treated differently than a determination of damages in every other kind of case. Rather, it is far more plausible that the exception in § 1292(c)(2) was enacted to address the unique burdens of a single onerous type of proceeding in a patent case—one that has been the focus of the exception since 1927 and is still today reserved for the "rare" case involving incredibly complicated determinations that a jury cannot be expected to handle

alone. *See Dairy Queen*, 369 U.S. at 478; *see also* Fed. R. Civ. P. 53.

## D.

The majority last points to the concept of stare decisis, which it says "weighs in favor of [its] holding." Maj. Op. at 20. It says that, since we have exercised jurisdiction over interlocutory appeals in the past, we should continue to do so until Congress tells us not to. While stare decisis is an important principle, it cannot serve as an excuse to continue, ad infinitum, fundamentally incorrect legal conclusions. This is especially so, moreover, where the prior case law to which the majority points contains no reasoned basis for their holdings regarding the scope of § 1292(c)(2). Indeed, in many of those cases we exercised jurisdiction over the appeal before us without discussion or even citation to § 1292(c)(2). To the extent our prior cases *do* address the issue, they suffer from the same flaws which pervade the majority opinion today—the failure to distinguish adequately between an accounting and a jury trial on damages. This en banc proceeding provides us with the opportunity and authority to revisit our prior case law and reasoning, and to correct the errors therein.

The only definitive statements of this court regarding our jurisdiction under § 1292(c)(2) pending a damages trial come from *In re Calmar, Inc.*, 854 F.2d 461 (Fed. Cir. 1988). It is this case upon which the motions panel relied and to which the majority today says we must adhere. In *Calmar*, a petitioner sought a writ of mandamus directing the district court to vacate a sanctions order. 854 F.2d at 462. The district court determined that the petitioner had misrepresented the law by stating that, "in a patent case, you can appeal as of right from a holding of liability or no liability" and that "it is very common to have a trial on liability and have it go up on appeal, if the party is going to appeal; and then after liability has been determined at

the appellate level, come down for a trial on damages."
*Id.* at 462-63. The district court concluded that, "contrary
to [petitioner's] assertions, 28 U.S.C. § 1292(c)(2) is silent
with respect to the timing of the damage phase of the trial
where liability has been found" and that, pursuant to
Rule 62(a), the damage phase should not be stayed unless
the court in its discretion determines a stay to be desira-
ble. *Id.*

Finding counsel's broad reading of § 1292(c)(2) to be
so absurd as to be sanctionable, the district court fined
counsel for having made the argument. When reviewing
the sanctions order on appeal, we examined the petition-
er's statements and determined that the statements were
neither incorrect nor misleading. *Id.* at 463-64. We based
this holding on the panel's understanding of the Supreme
Court's decision in *McCullough v. Kammerer Corp.*, 331
U.S. 96 (1947), and its determination that the purpose of
§ 1292(c)(2) was to "*permit* a stay of a damages trial."
*Calmar*, 854 F.2d at 464. Thus, in *Calmar*, we stated:

> [T]here is no conflict between § 1292(c)(2) and
> Rule 62(a)'s grant of the discretion to stay or to
> proceed with the damages trial during the appeal.
> Indeed, in recognition of the district court's discre-
> tion, this court has repeatedly denied, in un-
> published opinions, motions to stay damages
> trials during appeals in patent cases.

*Id.* at 464. It is this language that has been repeated
throughout our case law, and used, without further analy-
sis, to justify interlocutory appeals pending a full trial on
damages or a determination of willfulness.

Despite the conclusion to the contrary in *Calmar*,
*McCullough* neither addressed the issue presented here
nor justified the conclusion that an "accounting" is equiva-
lent to a *jury trial* on damages. The patent infringement
suit in *McCullough* was brought in equity. There, the
district court had imposed the equitable remedy of an

injunction, along with the accounting it was required to provide under the law at that time. *Kammerer Corp. v. McCullough*, 39 F. Supp. 213, 214 (S.D. Cal. 1941) (stating that "plaintiffs are entitled to a permanent injunction against the defendants and an accounting"). Thus, *McCullough* did not involve a jury trial on patent damages. And, the Court in *McCullough* did not at any time suggest that a jury trial on damages is interchangeable with an accounting. Further, the panel in *Calmar* did not explain where it got its conclusion that *McCullough* indicated that the purpose of § 1292 was "to *permit* a stay of a damages trial" during the appeal of a judgment on liability, something *McCullough* never said or considered. *Calmar*, 854 F.2d at 464. Thus, it appears that *McCullough* does not stand for the principle that § 1292(c)(2) was enacted to allow appeals when damages trials have yet to occur, and *Calmar* provides no basis for concluding otherwise.

Subsequent precedential case law from our court has similarly failed to address or provide any reasoning supporting the conclusion that jurisdiction arises under § 1292(c)(2) when a jury trial for damages remains. For example, in *H.A. Jones Co., v. KSM Fastening Systems, Inc.*, 745 F.2d 630 (Fed. Cir. 1984), we found we had jurisdiction when the issue of damages remained in an action finding a party in contempt of a consent decree signed several years earlier. No explanation or analysis was provided, however, regarding why damages should be treated the same as an accounting under § 1292(c)(2).[8]

---

[8]    The decision in *H.A. Jones* is actually reconcilable with a correct reading of § 1292(c)(2) if we assume the court's reference to "damages" there simply involved the application of a previously determined royalty rate to new sales, as to which the earlier infringement finding applied—i.e., what remained was a simple "accounting," and

26          ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

745 F.2d at 631-32.  Likewise, in *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984), we exercised jurisdiction over what the court described as "a judgment, final except for an accounting" where the trial on damages had been stayed, but we provided no discussion of jurisdiction and did not even cite to § 1292(c)(2).  750 F.2d at 1558.

In *Majorette Toys (U.S.) Inc. v. Darda, Inc. U.S.A.*, 798 F.2d 1390 (Fed. Cir. 1986), an interlocutory appeal was permitted pending a determination of attorney fees, but the court cited no cases except *McCullough*.  In *Johannsen v. Pay Less Drug Stores Northwest, Inc.*, 918 F.2d 160 (Fed. Cir. 1990), we discussed *Majorette* and *Calmar*, but based our determination that we lacked jurisdiction under § 1292(c)(2) on the outstanding issue of liability for unfair competition.  Similarly, in *Pods, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007), we approvingly cited to *Majorette Toys* for the proposition that an appeal can be taken prior to determining damages, but ultimately found jurisdiction under § 1295, making our discussion of *Majorette Toys* dicta.

In *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340 (Fed. Cir. 2001), drawing the distinction between the appeal of an infringement finding and that of an "exceptional case," we stated that "'[a]ccounting,' as used in the statute, refers to infringement damages pursuant to 35 U.S.C. § 284" as opposed to attorney fees, but cited to no authority for this interpretation.  In *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007), we stated that we have jurisdiction where "the district court's infringement judgment is final as to all issues except for a determination of damages," citing to *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573 (Fed. Cir. 1994).  But the hold-

---

no determination regarding the right to, type, or scope of damages remained.

ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.          27

ing in *Mendenhall* does not relate to the interpretation of § 1292(c)(2) at issue here, and merely refers back to statements made in *Calmar*. 26 F.3d at 1581. Finally, in *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331 (Fed. Cir. 2009), we stated that we possessed jurisdiction under 28 U.S.C. § 1292(c)(1) and (2) without citation or explanation, where a trial on damages and willfulness was stayed.

In sum, our past decisions lack any reasoned assessment of whether we have jurisdiction over appeals of judgments that are final except for a trial on damages. We should not afford such decisions undue weight in considering the issue presently before this court en banc. Saying something repeatedly does not make it correct for that reason alone.

***

For these reasons, I find none of the four points upon which the majority relies to be persuasive predicates for the court's holding today, either singly or collectively. I do not believe these points justify the expansive reading we give to § 1292(c)(2). Patent actions in which jury trials on damages remain pending should not be appealable to this court barring alternative procedural mechanisms to justify such appeals.[9]

---

[9]  *See, e.g.*, 28 U.S.C. § 1292(a)(1) (granting jurisdiction to courts of appeals over appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court"); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1300 (Fed. Cir. 2005) ("Section 1292(a)(1) provides that the court of appeals has jurisdiction over appeals from interlocutory orders 'grant-

## IV.

The majority's conclusion that the pendency of a request for a willfulness determination does not affect the finality of a court's other rulings in patent cases suffers the same flaws its conclusion regarding the pendency of a jury trial on damages suffers. Indeed, it is even less defensible. Rather than assess whether a finding of willfulness is an "accounting" under § 1292(c)(2), the majority again asks only whether the fact of willfulness was ever considered by special masters when assessing the appropriate measure of an award to a patent holder in a suit in equity. For reasons already explained, that is simply not the relevant inquiry. This is so for all the structural reasons I previously have discussed.

First, it violates the basic tenet that exceptions to the finality requirement are to be narrowly construed. *Digital Equipment Corp.*, 511 U.S. at 868 ("But we have also repeatedly stated that the [collateral order doctrine is a] 'narrow' exception [and that it] should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of a district court error at any stage of the litigation may be ventilated." (citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 270 (1982)); *Jones v. Nicholson*, 431 F.3d 1353, 1358, n.3 (Fed. Cir. 2005) ("The Supreme Court has emphasized that the exception to the rule of finality is narrow . . . ."); *Tele-Communications, Inc. v. Comm'r*, 12 F.3d 1005, 1007 (10th Cir. 1993) ("The policies behind the general rule and its narrow exceptions include respect for the court, unfair surprise to the other party, and the need for finality in litigation and conservation of judicial resources."); *Way v. Reliance Ins. Co.*, 815

---

ing, continuing, modifying, refusing or dissolving injunction, or refusing to dissolve or modify injunctions.'").

F.2d 1033, 1034 n.4 (5th Cir. 1987) ("*Narrow* exceptions to the finality rule do exist." (emphasis added) (citing 9 J. Moore & B. Ward, Moore's Federal Practice ¶¶ 110.08-110.13[12] (2d ed. 1986))).  The notion that Congress used a term which commonly connotes number crunching to encompass inquiries regarding the objective reasonableness of an infringer's actions in light of the risks a patent presents *and* that same party's subjective motivations, has an expansive rather than narrow reach.

Next, even if the question of whether a special master's "consideration" of the willful character of a party's infringement were relevant to the statutory analysis in which we engage, the majority again ignores what it was a special master had the authority to consider with regard to willfulness.  While it may be true that special masters could consider issues of willfulness, and make *recommendations* with respect thereto, they did not have the authority to make willfulness findings—those were left to the court.  Indeed, a careful review of the cases the majority cites reveals that, in none of those, did the special master make a binding willfulness finding.  *See Cornely v. Marckwald*, 131 U.S. 159, 160 (1889) (stating that the "court" overruled objections and affirmed the special master's report); *see also Cornely v. Marckwald*, 23 Blatchf. 163, 32 Fed. Rep. 292, 292 (C.C.N.Y. 1885) (court overruling "exceptions" to the special master's ruling); *Boesch*, 133 U.S. at 699 ("Exceptions were filed to [the special master's] report, *and overruled*, and a final decree entered in favor of Graff and Donnell . . . from which decree this appeal has been prosecuted." (emphasis added)); *Pollock v. Martin Gauge Co.*, 261 F. 201 (7th Cir. 1919) (the decree of infringement originated from a *district judge*, *see Martin Gauge Co. v. Pollock*, 251 F. 295, 300 (D.C. Ill. 1918), and was returned to said judge for an accounting); *K.W. Ignition*, 283 F. at 874 (stating that the special master *recommended* an award of punitive damages for willful infringement and that the district court

30          ROBERT BOSCH, LLC v. PYLON MANUFACTURING CORP.

overruled a portion of the recommended damages); *Reed Roller Bit Co. v. Hughes Tool Co.*, 12 F.2d 207, 209 (5th Cir. 1926) (noting that the special master *recommended* his willfulness finding to the district court, and the *district court*, "by way of punishment for willful infringement assessed the cost of auditing the books of appellants, amounting to $10,555" and entered a decree in favor in appellee). Just as the court in equity was charged with making the predicate findings necessary to a damages calculation—findings now left to the jury—the court in equity retained the authority and obligation to make findings regarding both whether willfulness was proven and the propriety of enhancing damages. Today, the authority to make those findings is split between the court and the jury. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012). Nothing about those determinations—other than the final calculation of the authorized enhancement—can be considered part and parcel of the ministerial calculations involved in an accounting.

While it is true that a trial court ultimately may choose to enhance damages based on a finding that infringement has been willful, the underlying finding itself is not about numbers. It is about the objective reasonableness of the infringer's actions in light of the risks of infringing a valid patent, and that infringer's intent vis-à-vis the patentee's rights. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc); *Bard*, 682 F.3d at 1105-06. Those predicate inquiries do not impact the damages calculation unless a trial court, in its discretion, later chooses to enhance damages based upon them. *Seagate*, 497 F.3d at 1368 ("[A] finding of willfulness does not require an award of enhanced damages; it merely permits it."); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999) ("[T]he decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the

totality of the circumstances."). While, at times, special masters in equity proceedings may have made recommendations regarding the question of whether to enhance damages, they had no authority to make the findings necessary to give rise to such enhancement.

The majority's reliance on claimed efficiencies from lumping willfulness determinations into an accounting is unpersuasive, moreover. Under our case law, a determination of willfulness overlaps considerably with issues of infringement and validity. Under *Seagate*, we made clear that the objective risks of infringing a valid patent are "determined by the record developed in the infringement proceeding." 497 F.3d at 1371. And, in *Bard*, we explained that "the threshold determination of recklessness . . . entails an objective assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity . . . ." 682 F.3d at 1006. In cases where indirect infringement is alleged, the overlap between willfulness and infringement is even more pronounced. In *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), the Supreme Court held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement," but that this requirement of knowledge can be met when an infringer has been willfully blind to the fact that induced acts constitute infringement. 131 S. Ct. at 2068. According to the Court, "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 2070-71. Thus, assessing "willful blindness" is very similar to assessing recklessness under *Seagate*.

Allowing an appeal of liability issues and then allowing a separate appeal of willfulness would thus require revisiting many of the same facts and issues in two sepa-

rate proceedings. The cause of efficiency would not only *not* be served, it would be thwarted.

The fact that these two proceedings would be before two separate juries raises serious constitutional questions, moreover. *See Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931) (A partial new trial violates the Seventh Amendment "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."); *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986) ("[I]t is inappropriate, in light of the evidence presented and arguments made at this trial, to have one jury return a verdict on the validity, enforceability and contract questions while leaving the infringement questions to a second jury."); *see also Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (indicating that damages and liability should be retried together when, *inter alia*, "there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable" (citations and internal quotation marks omitted)); *FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1534 (11th Cir. 1989) (determining that a partial retrial of damages alone was inappropriate where evidence related to damages also "related to the alleged intent of the insured for intentionally causing [a] fire"); *Stanton v. Astra Pharm. Prods., Inc.*, 718 F.2d 553 (3d Cir. 1983) (determining that "allowing a second jury to determine the issue of damages in isolation from the whole of the circumstances surrounding the case" would result in injustice (citation and internal quotation marks omitted)). A bifurcation order which requires that two *different* juries visit the interwoven issues and overlapping facts involving infringement and validity on the one hand and willfulness on the other would violate the defendant's Seventh Amendment right to a jury trial.

Again, while the majority is correct that we did not order this en banc to answer the question of whether bifurcation of willfulness questions in such a way as to assure that they be tried to separate juries raises constitutional issues, the fact that it does is not irrelevant. Although the majority feels comfortable ignoring this reality, the real questions are whether Congress would have done so, or would have had the authority to do so, in 1948. The answer to both of those inquiries must be no.[10]

---

[10] The majority cites to *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008), for the proposition that sending the willfulness determination to a different jury than the one that assessed validity and infringement does not violate the Seventh Amendment. The entirety of the constitutional analysis in *Voda* is set out in one sentence: "Additionally, we reject Cordis's argument that, under the Seventh Amendment, a new trial on willfulness would require a new trial on infringement." *Voda*, 536 F.3d at 1329. There is no citation to the Supreme Court's decision in *Gasoline Products*, to our own earlier decision in *Witco* endorsing and following the principles of *Gasoline Products*, or to the myriad cases from the regional circuits doing the same. To the extent *Voda* purported to answer the Seventh Amendment question for all cases and in all circumstances in that one sentence, as the majority implies, it should be revisited. The question of whether issues are sufficiently separable and distinct to permit trial to different juries is to be determined on a case by case basis considering the totality of circumstances. *See Witco Chem. Corp.*, 787 F.2d at 1549, and cases collected therein (determining that a partial new trial is inappropriate "after considering the totality of the circumstances"). Where the circumstances confirm that the issues to be addressed in the separate trials are as interwoven as they are whenever willful infringement allegations are bifurcated, a separate trial of that claim alone would

***

I see nothing in the majority's decision that a modern willfulness determination is encompassed within the meaning of an accounting under § 1292(c) to commend it; once more, it just cannot be correct.

## V.

Absent any justification—let alone a compelling one—that a jury trial on damages or a determination of willfulness is literally an "accounting" within the meaning of § 1292(c)(2), I must dissent from the majority's determination that we possess jurisdiction over this appeal. This matter is non-final and must be remanded to the district court.

---

rarely, if ever, pass constitutional muster under such an analysis.